# ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 17 2011

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk



### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| ALLIANT TAX CREDIT FUND 31-A, LTD. a Florida limited partnership; ALLIANT TAX CREDIT 31, INC., a Florida corporation; ALLIANT TAX CREDIT FUND XXVII, LTD., a Florida limited partnership; ALLIANT TAX CREDIT XXVII, INC., a Florida corporation; ALLIANT TAX CREDIT XI, INC., a Florida corporation; and ALLIANT TAX CREDIT XI, LTD. a Florida limited partnership,<br><br>     Plaintiffs,<br><br>v.<br><br>M. VINCENT MURPHY, III, MARILYN MURPHY, PATRICK CARROLL, MULTIFAMILY HOUSING DEVELOPERS, L.L.C., a Georgia limited liability company, COMMUNITY MANAGEMENT SERVICES, INC., a Georgia corporation, GAZEBO PARK APARTMENTS OF ACWORTH, LLC, a Georgia limited liability company, and AFFORDABLE REALTY MANAGEMENT INCORPORATED, a Georgia corporation,<br><br>    Defendants. | CIVIL ACTION<br>FILE NO._____<br>1:11-CV-0832 |

## COMPLAINT TO AVOID FRAUDULENT
## TRANSFERS AND FOR CIVIL CONSPIRACY

Plaintiffs, Alliant Tax Credit Fund 31-A, Ltd., a Florida limited partnership, Alliant Tax Credit 31, Inc., a Florida corporation, Alliant Tax Credit Fund XXVII, Ltd., a Florida limited partnership, Alliant Tax Credit Fund XXVII, Inc., a Florida corporation, Alliant Tax Credit Fund XI, Inc., a Florida corporation, and Alliant Tax Credit XI, Ltd., a Florida limited partnership (collectively referred to herein as "Alliant" or "Plaintiffs"), hereby file suit against Defendants, M. Vincent Murphy, III, Marilyn Murphy, Patrick Carroll, Multifamily Housing Developers, L.L.C., a Georgia limited liability company, Community Management Services, Inc., a Georgia corporation, Gazebo Park Apartments of Acworth, LLC, a Georgia limited liability company, and Affordable Realty Management Incorporated, a Georgia corporation (collectively referred to hereinafter as "Defendants"), to avoid fraudulent transfers pursuant to OCGA § 18-2-70 *et seq*. and other applicable law, and alleges as follows:

## JURISDICTION, VENUE AND PARTIES

1.    This is a claim against Defendants to avoid transfers between and among them and Defendant, M. Vincent Murphy (the "Judgment Debtor"), that were fraudulent and for the sole purpose of hindering, delaying, or defrauding Alliant and other creditors.

2.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 on the grounds that this civil action constitutes a controversy between citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest, attorneys' fees and costs.

3.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action to enforce a final judgment from a United States District Court.

4.     This Court has personal jurisdiction over Defendants because Defendants reside in or do business in Georgia and because they committed tortious or wrongful acts or omissions in Georgia.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this action occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.   Venue is further proper because the Defendants reside or transact business in this District.

6.     Plaintiff, Alliant Tax Credit Fund 31-A, Ltd. is a Florida limited partnership, and is a judgment creditor by virtue of a Judgment from the United States District Court for the Eastern District of Kentucky, dated August 31, 2010, against the Judgment Debtor in the amount of $1,478,489.00 (E.D. K.Y., Case No.

3

5:07-CV-00388-KKC). The Judgment has been registered in the United States District Court for the Northern District of Georgia (N.D. G.A., Case No. 1:10-mi-00189-UNA) and domesticated in Cherokee County, Fulton County, and Cobb County, Georgia.

7.      Plaintiff, Alliant Tax Credit 31, Inc. is a Florida corporation, and is a judgment creditor by virtue of a Judgment from the United States District Court for the Eastern District of Kentucky, dated August 31, 2010, against the Judgment Debtor in the amount of $1,478,489.00 (E.D. K.Y., Case No. 5:07-CV-00388-KKC). The Judgment has been registered in the United States District Court for the Northern District of Georgia (N.D. G.A., Case No. 1:10-mi-00189-UNA) and domesticated in Cherokee County, Fulton County, and Cobb County, Georgia.

8.      Plaintiff, Alliant Tax Credit Fund XXVII, Ltd. is a Florida limited partnership, and is a judgment creditor by virtue of a Judgment from the United States District Court for the Eastern District of Kentucky, dated August 31, 2010, against the Judgment Debtor in the amount of $7,181,752.00 (E.D. K.Y., Case No. 5:07-CV-00388-KKC). The Judgment has been registered in the United States District Court for the Northern District of Georgia (N.D. G.A., Case No. 1:10-mi-00189-UNA) and domesticated in Cherokee County, Fulton County, and Cobb County, Georgia.

4

9.      Plaintiff, Alliant Tax Credit XXVII, Inc. is a Florida corporation, and is a judgment creditor by virtue of a Judgment from the United States District Court for the Eastern District of Kentucky, dated August 31, 2010, against the Judgment Debtor in the amount of $7,181,752.00 (E.D. K.Y., Case No. 5:07-CV-00388-KKC).   The Judgment has been registered in the United States District Court for the Northern District of Georgia (N.D. G.A., Case No. 1:10-mi-00189-UNA) and domesticated in Cherokee County, Fulton County, and Cobb County, Georgia.

10.     Plaintiff, Alliant Tax Credit XI, Inc. is a Florida corporation, and is a judgment creditor by virtue of a Judgment from the United States District Court for the Eastern District of Kentucky, dated August 31, 2010, against the Judgment Debtor in the amount of $266,402.00 (E.D. K.Y., Case No. 5:07-CV-00388-KKC). The Judgment has been registered in the United States District Court for the Northern District of Georgia (N.D. G.A., Case No. 1:10-mi-00189-UNA) and domesticated in Cherokee County, Fulton County, and Cobb County, Georgia.

11.     Plaintiff, Alliant Tax Credit XI, Ltd. is a Florida  limited partnership, and is a judgment creditor by virtue of a Judgment from the United States District Court for the Eastern District of Kentucky, dated August 31, 2010, against the Judgment Debtor in the amount of $266,402.00 (E.D. K.Y., Case No. 5:07-CV-

00388-KKC).   The Judgment has been registered in the United States District Court for the Northern District of Georgia (N.D. G.A., Case No. 1:10-mi-00189-UNA) and domesticated in Cherokee County, Fulton County, and Cobb County, Georgia.

12.    The Judgment Debtor is an individual residing in the State of Georgia and can be served at his residence located at 4694 Cowan Road, Acworth, Georgia, 30101.

13.    Defendant, Marilyn Murphy ("Marilyn Murphy"), is an individual residing in the State of Georgia and can be served at her residence located at 410 Society Street, Alpharetta, GA, 30022-1583.  Marilyn Murphy now is the ex-wife of the Judgment Debtor, and she serves as the Managing Member of Defendant, Gazebo Park Apartments of Acworth, LLC.   At the time of certain transfers referenced herein, the Judgment Debtor and Marilyn Murphy were married and lived as husband and wife.

14.    Defendant, Patrick Carroll ("Carroll"), is an individual residing in the State of Georgia and can be served at his residence located at 8440 Holcomb Bridge Rd 540, Alpharetta, GA  30022-1822.  Carroll is the CEO of Defendant, Affordable Realty Management, Inc.

15.     Defendant, Community Management Services, Inc. ("CMS"), is a Georgia corporation doing business in Fulton County, Georgia and can be served via its Registered Agent, Stanley Kreimer, 2100 The Equitable Building, 100 Peachtree Street, Atlanta, GA, 30303-1912.   CMS is wholly-owned by the Judgment Debtor.   A copy of the State of Georgia 2010 Corporate Annual Registration for CMS is attached as **Exhibit A**.

16.     Defendant, Multifamily Housing Developers, L.L.C. ("Multifamily Housing"), is a Georgia limited liability company doing business in Fulton County, Georgia and can be served via its Registered Agent, Affordable Realty Management I, 5755 North Point Parkway, Suite 67, Alpharetta, GA, 30022.

17.     Defendant, Affordable Realty Management, Incorporated ("ARM"), is a Georgia corporation doing business in Fulton County, Georgia and can be served via its Registered Agent, Carroll Organization, LLC, 260 Peachtree Street, Suite 2700, Atlanta, GA, 30303.   Defendant Carroll serves as ARM's CEO, and the Judgment Debtor serves as the CFO and Secretary of ARM.   A copy of the State of Georgia 2010 Corporate Annual Registration for ARM is attached as **Exhibit B**.

18.     Defendant, Gazebo Park Apartments of Acworth, LLC ("Gazebo Park") is a Georgia limited liability company and can be served via its Registered Agent, Affordable Realty Management I, 5755 North Point Parkway, Suite 67,

7

Alpharetta, GA, 30022.  Marilyn Murphy is the Managing Member of Gazebo

Park, and ARM is the Property Manager for Gazebo Park.  A copy of the Property

Management Agreement between Gazebo Park and ARM is attached as **Exhibit C**.

## BACKGROUND FACTS

### The Kentucky Litigation

19.    The Judgment Debtor, along with other named defendants, was

adjudged to be jointly and severally liable to Alliant in the total amount of

$8,946,643.00 by operation of a March 22, 2010 Final Judgment executed by

United States District Judge Karen K. Caldwell, United States District Court of the

Eastern District of Kentucky (the "Kentucky Litigation") (E.D. K.Y., Case No.:

5:07-CV-00388-KKC-JBT, Dkt. No 190).  The March 22, 2010 Final Judgment

subsequently was amended. (Id. at Dkt. No. 204).  A copy of the Amended

Judgment is attached hereto as **Exhibit D** and will be referred to hereinafter as the

"Final Judgment."

20.    The Final Judgment was registered in the Northern District of

Georgia, (N.D. Ga., Case No. 1:10-mi-00189-UNA) on November 12, 2010.  A

copy of the Clerk's Certification of a Judgment to be Registered in Another

District is attached hereto as **Exhibit E**.

8

21.     The Kentucky Lawsuit arose from the Judgment Debtor's breach of certain partnership agreements and personal guaranties among him, the other named defendants in the Lawsuit, and Alliant.

22.     Specifically, the Judgment Debtor, Robert. A. McMaster ("McMaster"), and Ironwood Development, LLC ("Ironwood"), served as guarantors of a series of six (6) Guaranty Agreements executed between December 2003 and May 2004 associated with six (6) Limited Partnerships devoted to the development, construction, and operation of high-quality, low-income rental housing for senior citizens.   The Judgment Debtor and McMaster served as General Partners of the Limited Partnerships.

23.     The business purpose of the Limited Partnerships was to acquire, develop, construct, own, and operate apartments as tax credit qualifying low income housing.   The apartments were developed and were to be operated under the low-income housing tax credit program qualifying for issuance of federal low income housing tax credits under Section 42 of the Internal Revenue Code.   The Limited Partnerships and the apartments that they operated were part of a highly-regulated federal government program designed to encourage private investors to invest in low income properties by providing them with tax credits created by federal statutes.

24.   The Limited Partnerships did, in fact, acquire, develop, and begin to construct six (6) apartment complexes in Kentucky (the "Kentucky Projects").

25.   To secure its investment in the Limited Partnerships, and as a condition of its entry into the Limited Partnerships, Alliant required the Judgment Debtor to enter into personal guaranty agreements on each of the six (6) Limited Partnerships.

26.   Construction of five (5) of the Kentucky Projects was completed between December 2004 and June 2005, however, construction of one project, Renaissance Apartments, remained uncompleted.

27.   At that time, the management company owned and controlled by the Judgment Debtor, CMS, took over management of the five (5) completed Kentucky Projects in September 2005.

28.   By December 2005, the Judgment Debtor and McMaster ceased funding the construction Renaissance Apartments to seek loan modifications. When they were denied the loan modifications, the Judgment Debtor ceased funding the Renaissance Apartments construction completely.

29.   In or around January 2007, the Judgment Debtor refused to continue to advance or to release funds to pay interest and other expenses, including the Bank of America Loan, in connection with the Kentucky Projects.

30.    In or around February 2007, the Judgment Debtor also refused to cooperate in bringing in a third-party investor or to otherwise be involved in facilitating new financing through resyndication to cure the ongoing defaults with Bank of America and Alliant.

31.    Additionally, in or around February 2007, the Judgment Debtor advised Bank of America that he did not intend to honor his personal guaranty and that he no longer had the assets that he had disclosed to Bank of America when he initially gave his personal guaranty.

32.    In or about April 2007, Bank of America declared the loans in default and sued to foreclose the mortgages.

33.    The Judgment Debtor and McMaster were removed lawfully in May 2007 as General Partners of the Limited Partnerships.

34.    On November 20, 2007, Alliant filed its Complaint against the Judgment Debtor for breach of the guaranty in the United States District Court for the Eastern District of Kentucky and subsequently obtained the Amended Judgment in its favor against the Judgment Debtor, as referenced above.

**The Debtor's Personal Guaranty and Certification of Assets to Alliant**

35.    As part of the creation of the Limited Partnerships, Alliant sought financial information from the Judgment Debtor.  The Judgment Debtor provided a

11

certified financial statement, as of October 31, 2003, reflecting a material net worth of approximately $25 million. (The Judgment Debtor's April 22, 2004 Financial Statement Affidavit and April 29, 2004 Certification will be filed under seal as **Exhibit F**).

36.     The Judgment Debtor certified that he was aware that Alliant was relying upon his financial information "in rendering investment and/or financing decisions" and agreed to "notify Plaintiffs immediately in the event there is any material adverse change" in his financial conditions.

37.     On April 22, 2004, the Judgment Debtor represented by sworn affidavit that his financial condition had not changed.  (See April 22, 2004 Financial Statement Affidavit).

38.     On August 30, 2006, Judgment Debtor certified updated financial information showing his net worth as being in excess of $27 million. (The Judgment Debtor's August 30, 2006 Personal Financial Statement with email certification will be filed under seal as **Exhibit G**).

### The Judgment Debtor's Liquidation and Transfer of His Non-Exempt Assets

39.     Between August 30, 2006, when he submitted his personal financial statements to Alliant, and March 22, 2010, the date of the original Judgment in the Kentucky Litigation, the Judgment Debtor's claimed net worth decreased from

over $27 million in assets to practically nothing, as a result of the fraudulent acts alleged herein.

40. The Judgment Debtor knew that his assets were at risk in December 2005 when he ceased funding some of the construction on the Kentucky Projects and specifically, Renaissance Apartments, and, at the latest in January 2007, when he ceased funding payments altogether on Bank of America's $10,000,000.00 construction loan, which led to the foreclosure and to his personal exposure as a guarantor.

41. The Judgment Debtor, with the assistance of Marilyn Murphy, his family members, insiders, and affiliates, liquidated and divested his assets in such a way so as to allow the Judgment Debtor to maintain continued direct control, access, use, and enjoyment of the assets at his discretion, while permitting him to disclaim title and/or ownership in the assets and avoid auditors by various methods including, but not limited to:

a. Fraudulently liquidating or transferring his interests in real and personal property or corporately-held assets by way of stock redemption, asset sales, and transfers to successor entities, insiders, or affiliates;

b. Fraudulently transferring personally held funds by use of loans to insiders, affiliates, and alter-egos;

13

      c.     Hiding and secreting his assets and interests via the use of multiple shell entities, affiliates, and subsidiaries.

      d.     Fraudulently transferring his interests in his home to Marilyn Murphy;

      e.     Fraudulently divesting himself of his remaining personal fortune by means of an uncontested property settlement agreement pursuant to a divorce with Marilyn Murphy including but not limited to:

      i.     Mountain Cabin with a value of approximately  $62,000 as of 2006;

      ii.     Shares of Stock with a value of  approximately  $4.1 million as of 2006;

      iii.     Furniture with a value of approximately  $115,000 as of 2006;

      iv.     Life Insurance with a value of approximately $50,000 as of 2006.

### The Judgment Debtor's Fraudulent Transfer of the Marital Residence

42.     During their marriage, the Judgment Debtor and his wife Marilyn Murphy resided at 410 Society Street, Alpharetta, Georgia (the "Marital Residence"), which they owned outright, jointly, in fee simple, free and clear of all

liens, mortgages, or encumbrances. A copy of the Warranty Deed conveying the Martial Residence to the Judgment Debtor and Marilyn Murphy, including the Legal Description of the Marital Residence, is attached hereto as **Exhibit H**.

43. On March 23, 2007, after his decision to cease funding the Bank of America Loan and to breach his agreements with Alliant, the Judgment Debtor transferred his interest in the 410 Society Street marital property to Marilyn Murphy, by deed (the "Marital Residence Transfer"). A copy of the Quitclaim Deed transferring title from the Judgment Debtor to Marilyn Murphy is attached hereto as **Exhibit I**.

44. Marilyn Murphy gave no consideration for the Marital Residence Transfer, and the Judgment Debtor received nothing of value in return for the transfer of the Judgment Debtor's interest in the Marital Residence.

45. Upon information and belief, the Judgment Debtor still resides at the Marital Residence. A copy of his bank records for 2010, listing his address as the Marital Residence address, is attached hereto as **Exhibit J**.

## The Judgment Debtor's Fraudulent Property Transfers
## Pursuant to the Uncontested Divorce Decree

46.     In late 2007, after the Marital Residence Transfer, Marilyn Murphy filed a Complaint for divorce in Fulton County, Georgia. The divorce was uncontested.

47.     The Judgment Debtor and Marilyn Murphy mutually agreed upon a Property Settlement Agreement, which they executed on November 16, 2007. The Property Settlement Agreement was incorporated into the Final Judgment and Decree of Divorce entered on January 9, 2008. A copy of the Final Judgment and Decree of Divorce are attached hereto is **Exhibit K**.

48.     Pursuant to the Final Judgment, the Judgment Debtor voluntarily agreed to transfer all of his assets to Marilyn Murphy, including but not limited to the following:

    i.      Mountain Cabin, with a value of approximately $62,000 as of 2006;

    ii.     Shares of Stock, with a value of approximately $4.1 million as of 2006;

    iii.    Furniture, with a value of approximately $115,000 as of 2006;

16

iv.    Life Insurance, with a value of approximately $50,000 as

of 2006

(the "Marital Asset Transfers").

49.    The Marital Asset Transfers were made for no consideration, and the Judgment Debtor received no value for the transfer of his interest in the Marital Assets.

50.    Upon information and belief, the divorce was a sham, as the Judgment Debtor and Marilyn Murphy continued to operate businesses together and to share property.  Moreover, it appears that the Judgment Debtor continues to reside at the Marital Residence.  (See Exh. I).

### The Judgment Debtor's Fraudulent Transfer of Apartment Complex From Park Bridge Acworth, LLC to Gazebo Park Apartments of Acworth, LLC

51.    In 2006, Park Bridge Acworth LLC ("Park Bridge") owned a 216-unit apartment complex (the "Apartment Complex").    The Judgment Debtor's ownership interest in Park Bridge was 99.99%, and the Apartment Complex had an estimated Value of $8,760,000.  (See August 30, 2006 Financial Statement of Murphy filed under seal).  At this time, Defendant CMS, served as Park Bridge's property manager.

52.    On February 22, 2007, after he stopped funding the Bank of America Loan and defaulted on his obligations to Alliant, the Judgment Debtor executed an

17

application for the incorporation of Gazebo Park Apartments of Acworth, LLC ("Gazebo Park"), identifying himself as Gazebo Park's incorporator, registered agent, and member. A copy of the Application for Incorporation for Gazebo Park is attached hereto as **Exhibit L**.

53. On March 8, 2007, just prior to the Marital Residence Transfer, the Judgment Debtor prepared Gazebo Park's Articles of Organization, which was executed by Marilyn Murphy as Gazebo Park's managing member. Gazebo Park formerly was incorporated on March 9, 2007. A copy of the Articles of Organization is attached hereto as **Exhibit M**.

54. Using this corporate shell, on April 30, 2007, the Judgment Debtor effectuated a transfer of the $8,760,000 Apartment Complex Asset from Park Bridge to Gazebo Park, thereby removing himself as an owner of the Apartment Complex Asset (the "Apartment Complex Transfer").

55. The Judgment Debtor maintained control of the Apartment Complex Asset and continued to serve, either individually, or through Defendant CMS, as its agent, as late as Gazebo Park's February 13, 2008 Annual Registration filing. A copy of the February 13, 2008 Annual Registration filing is attached hereto as **Exhibit N**.

56.     Later, in Gazebo Park's February 6, 2009 Annual Registration renewal, the Judgment Debtor replaced himself and listed Affordable Realty Management I as Gazebo Park's registered agent, which also shared the same address as CMS, Park Bridge, and Gazebo Park.   Copies of the February 6, 2009 Annual Registration and 2010 Limited Liability Annual Registration are attached hereto as **Exhibits O** and **P** respectively.

57.     Despite said transfers and changes in ownership interest, the Judgment Debtor, as managing agent for Gazebo Park, has continued to exercise an unbroken chain of control over the Apartment Complex Asset.

## The Judgment Debtor's Fraudulent Transfer of Assets From Community Management Services, Inc. to Affordable Realty Management, Inc.

58.     On November 12, 2003, the Judgment Debtor was the sole owner of an apartment property management company, known as Defendant, CMS, which had, at that time, a market value of $1,162,085.   (See Judgment Debtor's November 12, 2003 Financial Statement to be filed under seal).

59.     Judgment Debtor also was the sole owner of Defendant CMS's subsidiary, Defendant, Multifamily Housing, a "low income tax credit developer," which had, at that time, a market value of $187,820.  (Id.).

60.     On August 30, 2006, the Judgment Debtor again certified being the sole owner of CMS, whose market value had risen to $1,862,310 at that time.  (See

Judgment Debtor's August 30, 2006 Certification and Financial Statement to be filed under seal).

61.    The Judgment Debtor identified himself as CEO, CFO, and Secretary of CMS.  (Id.).

62.    The Judgment Debtor again certified being the sole owner of CMS's wholly-owned subsidiary, Multifamily Housing, which had a market value of $24,460 at that time.  (Id.).

63.    The Judgment Debtor, through CMS, managed, operated, and controlled the various apartment complexes owned, in whole or in part, by the Judgment Debtor through his other corporate entities, which include Sandpiper Apartments of Casselberry LLC, Autumn Hills Apartments of Union City, LLC, Park Bridge, Colonial Square Apartments, Victory Crossing and Summerdale Phases 1 and 2, among others.

64.    CMS entered into written management agreements with his various apartment complex entities.  In exchange for the Judgment Debtor's management services, CMS would receive a percentage of the revenues generated and collected at the various properties (the "CMS Assets").

65.    In addition, using a procedure for fraudulent transfer, as the Judgment Debtor had done earlier with Park Bridge, Judgment Debtor incorporated

Defendant ARM on August 30, 2007, for the purpose of transferring CMS's assets out of his wholly-owned entity and into ARM, a shell entity also owned and controlled by the Judgment Debtor.

66.    ARM's Articles of Incorporation identified the Judgment Debtor and Marilyn Murphy as ARM's Initial Board of Directors, both at 5755 North Point Parkway, Suite 67, Alpharetta, Georgia, 30022, the same business address as CMS and Multifamily Housing.  A copy of ARM's Articles of Incorporation is attached hereto as **Exhibit Q**.

67.    ARM's 2008 and 2009 Annual registrations list Judgment Debtor as the CEO and agent and Marilyn Murphy as the CFO and Secretary.  Copies of ARM's 2008 and 2009 Annual Registrations are attached hereto as **Exhibits R** and **S**.

68.    Using ARM as a shell, the Judgment Debtor subsequently effectuated a transfer of the CMS Assets to ARM, thereby removing himself as an owner of the CMS Assets (the "CMS Asset Transfer").

69.    The Judgment Debtor maintained control of the assets and continues to serve, either individually, or through ARM, as the managing agent of the CMS Assets and so acted to hinder, delay, and defraud his creditors, including Alliant.

## The Judgment Debtor's Fraudulent Transfer
## of $986,000.00 in Personal Funds

70.    On March 29, 2010, the Judgment Debtor, through one of his corporate entities, Multifamily Housing, made a personal loan of $986,000 to Carroll.  A copy of the Secured Promissory Note is attached hereto as **Exhibit T**.

71.    Pursuant to the terms of the Note, Carroll is to make equal monthly installment payments of $24,071.14 on the first day of every month for 47 months to Multifamily Housing.

72.    The Judgment Debtor has sole control over and is the sole signatory on the Multifamily Housing bank account.

73.    Carroll makes the monthly payment to Multifamily Housing, who in turn transfers that payment to Mr. Murphy.

## COUNT I
### Avoidance of Fraudulent Transfer and Related Injunctive Relief
### (As to and Against the Judgment Debtor and Marilyn Murphy
### to Avoid the Marital Residence Transfer)

74.    Alliant realleges and incorporates by reference its allegations contained in Paragraphs 1 through 56 of its Complaint as if set forth fully herein.

75.    This is a claim against the Judgment Debtor and Marilyn Murphy to avoid the Marital Residence Transfer as a fraudulent transfer.

76.    The Marital Residence Transfer is avoidable pursuant to the Georgia Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70 *et seq.* (the "UFTA") and other applicable law.

77.    The Marital Residence Transfer was made at a time when Judgment Debtor had actual knowledge of Alliant's claims against him.

78.    The Marital Residence Transfer is fraudulent because it was made with the actual intent to hinder, delay, or defraud the Judgment Debtor's creditors, including Alliant, in violation of OCGA § 18-2-74.

79.    Alternatively, the Marital Residence Transfer is fraudulent because it was made with the intent to hinder, delay, or defraud creditors in that the Marital Residence Transfer was made without receiving a reasonably equivalent value, and the Judgment Debtor intended to incur on behalf or should have reasonably believed that he would incur debts beyond his ability to pay as they became due.

80.    Alliant's claims against the Judgment Debtor arose prior to the Martial Residence Transfer.

81.    The Marital Residence Transfer is fraudulent because the Judgment Debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or the obligation, and the Judgment Debtor was insolvent or became insolvent as a result of the transfer.

82.    To the extent that Marilyn Murphy is an insider of the Judgment Debtor, the Marital Residence Transfer was fraudulent because it was made to an insider for an antecedent debt, the Judgment Debtor was insolvent, and Marilyn Murphy had reason to believe that the Judgment Debtor was insolvent.

83.    The Marital Residence Transfer either was made to or for the benefit of the Judgment Debtor.

84.    The Marital Residence Transfer is voidable as a fraudulent conveyance, in violation of O.C.G.A. §§ 18-2-74 and 18-2-75 and other applicable law.

85.    Pursuant to O.C.G.A. § 18-2-78 and other applicable law, Alliant is entitled to: (i) avoid the Marital Residence Transfer to the extent necessary to satisfy its claims; (ii) an attachment on other provisional remedy against the Marital Residence; and (iii) an injunction against further disposition of the Marital Residence by the Judgment Debtor or Marilyn Murphy.

WHEREFORE, Alliant respectfully requests that the Court enter judgment in favor of Alliant:  (i) avoiding the Marital Residence Transfer to the extent necessary to satisfy Alliant's claims; (ii) granting an attachment or other provisional remedy against the Marital Residence; (iii) enjoining the disposition of

the Marital Residence; (iv) an award of reasonable attorneys' fees and court costs;

and (v) any further and other relief that the Court deems just and proper.

### COUNT II
### Avoidance of Fraudulent Transfer and Related Injunctive Relief
### (As to and Against the Judgment Debtor and Marilyn Murphy to Avoid the Marital Asset Transfers)

86.     Alliant realleges and incorporates by reference its allegations

contained in Paragraphs 1 through 56 of its Complaint as if set forth fully herein.

87.     This is a claim against the Judgment Debtor and Marilyn Murphy to

avoid the Marital Asset Transfers as fraudulent transfers.

88.     The Marital Asset Transfers are avoidable pursuant to the Georgia

Uniform Fraudulent Transfers Act O.C.G.A. § 18-2-70 *et seq.* (the "UFTA") and

other applicable law.

89.     The Marital Asset Transfers were made at a time when Judgment

Debtor had actual knowledge of Alliant's claims against him.

90.     The Marital Asset Transfers are fraudulent because they were made

with the actual intent to hinder, delay, or defraud the Judgment Debtor's creditors,

including Alliant, in violation of O.C.G.A. § 18-2-74.

91.     Alternatively, the Marital Asset Transfers are fraudulent because they

were made without receiving a reasonably equivalent value, and the Judgment

Debtor intended to incur on behalf or should have reasonably believed that he would incur debts beyond his ability to pay as they became due.

92.     Alliant's claims against the Judgment Debtor arose prior to the transfer of the Martial Assets.

93.     The Marital Asset Transfers are fraudulent because the Judgment Debtor made the transfers or incurred the obligations without receiving a reasonably equivalent value in exchange for the transfers or the obligations, and the Judgment Debtor was insolvent or became insolvent as a result of the transfers.

94.     To the extent that Marilyn Murphy is an insider of the Judgment Debtor, the Marital Asset Transfers are fraudulent because they were made to an insider for an antidecedent debt, the Judgment Debtor was insolvent, and Marilyn Murphy had reason to believe that the Judgment Debtor was insolvent.

95.     Each of the Marital Asset Transfers either were made to or for the benefit of the Judgment Debtor.

96.     Each of the Marital Asset Transfers is voidable as a fraudulent conveyance, in violation of O.C.G.A. §§ 18-2-74 and 18-2-75 and other applicable law.

97.     Pursuant to O.C.G.A. § 18-2-78 and other applicable law, Alliant is entitled to: (i) avoid the Marital Asset Transfers to the extent necessary to satisfy

Plaintiffs' claims; (ii) an attachment or other provisional remedy against the Marital Assets; and (iii) an injunction against further disposition of the Marital Assets by the Judgment Debtor or Marilyn Murphy.

WHEREFORE, Alliant respectfully requests that the Court enter judgment in favor of Alliant:  (i) avoiding the Marital Assets Transfer; (ii) granting an attachment or other provisional remedy against the Marital Assets; (iii) enjoining the disposition of the Marital Assets; (iv) an award of reasonable attorneys' fees and court costs; and (v) any further and other relief that the Court deems just and proper.

### COUNT III
### Avoidance of Fraudulent Transfer and Related Injunctive Relief
### (As to and Against the Judgment Debtor and Patrick Carroll
### to Avoid the Carroll Loan Transfer)

98.    Alliant realleges and incorporates by reference its allegations contained in Paragraphs 1 through 73 of its Complaint as if set forth fully herein.

99.    This is a claim against the Judgment Debtor and Carroll to avoid the Carroll Loan as a fraudulent transfer.

100.   The Carroll Loan Transfer is avoidable pursuant to the Georgia Uniform Fraudulent Transfers Act O.C.G.A. § 18-2-70 *et seq.* (the "UFTA") and other applicable law.

101.   The Carroll Loan Transfer was made on March 29, 2010, while the Kentucky litigation was pending and one week after the original Final Judgment was entered.

102.   The Carroll Loan Transfer is fraudulent because it was made with the actual intent to hinder, delay, or defraud the Judgment Debtor's creditors, including Alliant, in violation of O.C.G.A. § 18-2-74.

103.   Alternatively, the Carroll Loan Transfer is fraudulent because it was made without receiving a reasonably equivalent value, and the Judgment Debtor intended to incur on behalf or should have reasonably believed that he would incur debts beyond his ability to pay as they became due.

104.   Alliant's claims against the Judgment Debtor arose prior to the Carroll Loan Transfer.

105.   The Carroll Loan Transfer is fraudulent because the Judgment Debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or the obligation, and the Judgment Defendant was insolvent or became insolvent as a result of the Carroll Loan Transfer.

106.   To the extent that Carroll is an insider of the Judgment Debtor, the transfer is fraudulent because it was made to an insider for an antecedent debt, the

28

Judgment Debtor was insolvent, and Carroll had reason to believe that the Judgment Debtor was insolvent.

107.   The Carroll Loan Transfer either was made to or for the benefit of the Judgment Debtor.

108.   The Carroll Loan Transfer is voidable as a fraudulent conveyance in violation of O.C.G.A. §§ 18-2-74 and 18-2-75 and other applicable law.

109.   Pursuant to O.C.G.A. § 18-2-78 and other applicable law, Alliant is entitled to (i) avoid the Carroll Loan Transfer to the extent necessary to satisfy Alliant's claim; (ii) an attachment or other provisional remedy against the Carroll Loan Asset; and (iii) an injunction against further disposition of the Carroll Loan Asset by the Judgment Debtor or Carroll.

WHEREFORE, Alliant respectfully requests that the Court enter judgment in favor of Alliant: (i) avoiding the Carroll Loan Transfer to the extent necessary to satisfy Alliant's claims; (ii) granting an attachment or other provisional remedy against the Carroll Loan Asset; (iii) enjoining the disposition of the Carroll Loan Asset; (iv) an award of reasonable attorneys' fees and court costs; and (v) any further and other relief that the Court deems just and proper.

<u>**COUNT IV**</u>
**<u>Avoidance of Fraudulent Transfer and Related Injunctive Relief</u>**
**(As to and Against the Judgment Debtor and Multifamily Housing**
**to Avoid the Carroll Loan Transfer)**

110.   Alliant realleges and incorporates by reference its allegations contained in Paragraphs 1 through 73 of its Complaint as if set forth fully herein.

111.   This is a claim against the Judgment Debtor and Multifamily Housing to avoid the Carroll Loan Transfer as a fraudulent transfer.

112.   The Carroll Loan Transfer is avoidable pursuant to the Georgia Uniform Fraudulent Transfers Act O.C.G.A. § 18-2-70 *et seq.* (the "UFTA") and other applicable law.

113.   The Carroll Loan Transfer was made on March 29, 2010, while the Kentucky litigation was pending and one week after the Final Judgment was entered.

114.   The Carroll Loan Transfer is fraudulent because it was made with the actual intent to hinder, delay, or defraud the Judgment Debtor's creditors, including Alliant in violation of O.C.G.A. § 18-2-74.

115.   Alternatively, the Carroll Loan Transfer is fraudulent because it was made with the intent to hinder, delay, or defraud creditors in that the Carroll Loan Transfer was made without receiving a reasonably equivalent value, and the

30

Judgment Debtor intended to incur on behalf or should have reasonably believed that he would incur debts beyond his ability to pay as they became due.

116.   Alliant's claims against the Judgment Debtor arose prior to the Carroll Loan Transfer.

117.   The Carroll Loan Transfer is fraudulent because the Judgment Debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or the obligation and the Judgment Debtor was insolvent or became insolvent as a result of the transfer.

118.   To the extent that Multifamily Housing is an insider of the Judgment Debtor, the transfer is fraudulent because it was made to an insider for an antecedent debt, Judgment Debtor was insolvent, and it had reason to believe that the Judgment Debtor was insolvent.

119.   The Carroll Loan Transfer either was made to or for the benefit of the Judgment Debtor or Multifamily Housing.

120.   The Carroll Loan Transfer is voidable as a fraudulent conveyance, in violation of O.C.G.A. §§ 18-2-74 and 18-2-75 and other applicable law.

121.   Pursuant to O.C.G.A. §18-2-78 and other applicable law, Alliant is entitled to (i) avoid the Carroll Loan Transfer to the extent necessary to satisfy Alliant's claim; (ii) an attachment or other provisional remedy against the Carroll

31

Loan Asset; and (iii) an injunction against further disposition of the Carroll Loan Asset by the Judgment Debtor or Multifamily Housing.

WHEREFORE, Alliant respectfully requests that enter judgment in favor of Alliant: (i) avoiding the Carroll Loan Transfer to the extent necessary to satisfy Alliant's claims; (ii) granting an attachment or other provisional remedy against the Carroll Loan Asset; (iii) enjoining the disposition of the Carroll Loan Asset; (iv) an award of reasonable attorneys' fees and court costs; and (v) any further and other relief that the Court deems just and proper.

**COUNT V**
**Avoidance of Fraudulent Transfer and Related Injunctive Relief**
**(As to and Against the Judgment Debtor and CMS**
**to Avoid the CMS Asset Transfers)**

122. Alliant realleges and incorporates by reference its allegations contained in Paragraphs 1 through 69 of its Complaint as if set forth fully herein.

123. This is a claim against the Judgment Debtor and CMS to avoid the CMS Asset Transfers as fraudulent transfers.

124. The CMS Asset Transfers are avoidable pursuant to the Georgia Uniform Fraudulent Transfers Act O.C.G.A. § 18-2-70 *et seq.* (the "UFTA") and other applicable law.

125. The CMS Asset Transfers were made at a time when the Judgment Debtor had actual knowledge of Alliant's claims against him.

32

126.  The CMS Asset Transfers are fraudulent because they were made with the actual intent to hinder, delay, or defraud the creditors of the Judgment Debtor, including Alliant, in violation of O.C.G.A. § 18-2-74.

127.  Alternatively, the CMS Asset Transfers are fraudulent because they were made with the intent to hinder, delay, or defraud creditors in that the CMS Asset Transfers were made without receiving a reasonably equivalent value, and the Judgment Debtor intended to incur on behalf or should have reasonably believed that he would incur debts beyond his ability to pay as they became due.

128.  Alliant's claims against the Judgment Debtor arose prior to the transfer of the CMS Assets.

129.  The CMS Asset Transfers are fraudulent as to Alliant because the Judgment Debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or the obligation and the Judgment Debtor was insolvent or became insolvent as a result of the transfer.

130.  To the extent that CMS is an insider of the Judgment Debtor, the CMS Asset Transfers were fraudulent because it was made to an insider from an antecedent debt, the Judgment Debtor was insolvent, and CMS had reasonable time to believe that Judgment Debtor was insolvent.

131.   Each of the CMS Asset Transfers either was made to or for the benefit of Judgment Debtor.

132.   To the extent that any transfers occurred prior to February 2007, the statute of limitations should be equitably tolled because any failure to exercise reasonable diligence to discover the fraudulent nature of the CMS Asset Transfers are excused in light of the Judgment Debtor's actions in secreting or concealing assets and in light of the Judgment Debtor's actions in depleting his personal fortune.

133.   Each of the CMS Asset Transfers are voidable as a fraudulent conveyance in violation of O.C.G.A. §§ 18-2-74 and 18-2-75, and other applicable law.

134.   Pursuant to O.C.G.A. § 18-2-78 and other applicable law, Alliant is entitled to (i) avoid the CMS Asset Transfer to the extent necessary to satisfy Alliant's claims; (ii) an attachment or other provisional remedy against the CMS Assets; and (iii) an injunction against further disposition of the CMS Assets by the Judgment Debtor or CMS.

WHEREFORE, Alliant respectfully requests that the Court enter judgment in favor of Alliant:  (i) avoiding the CMS Asset Transfers to the extent necessary to satisfy Alliant's claims; (ii) granting an attachment or other provisional remedy

34

against the CMS Assets; (iii) enjoining the disposition of the CMS Assets; (iv) an award of reasonable attorneys' fees and court costs; and (v) any further and other relief that the Court deems just and proper.

**COUNT VI**
**Avoidance of Fraudulent Transfer and Related Injunctive Relief**
**(As to and Against the Judgment Debtor and ARM**
**to Avoid the CMS Asset Transfers)**

135.   Alliant realleges and incorporates by reference its allegations contained in Paragraphs 1 through 69 of its Complaint as if set forth fully herein.

136.   This is a claim against the Judgment Debtor and ARM to avoid the CMS Asset Transfers as fraudulent transfers.

137.   The CMS Asset Transfers are avoidable pursuant to the Georgia Uniform Fraudulent Transfers Act O.C.G.A. § 18-2-70 *et seq.* (the "UFTA") and other applicable law.

138.   The CMS Asset Transfers were made while the Kentucky Litigation was pending and at a time when the Judgment Debtor had actual knowledge of Alliant's claims against him.

139.   The CMS Asset Transfers are fraudulent because they were made with the actual intent to hinder, delay, or defraud the Judgment Debtor's creditors, including Alliant, in violation of O.C.G.A. § 18-2-74.

140.   Alternatively, the CMS Asset Transfers are fraudulent because they were made with the intent to delay, hinder, or defraud creditors in that the CMS Asset Transfers were made without receiving a reasonably equivalent value, and the Judgment Debtor intended to incur on behalf or should have reasonably believed that he would incur debts beyond his ability to pay as they became due.

141.   Alliant's claims against the Judgment Debtor arose prior to the transfer of the CMS Assets.

142.   The CMS Asset Transfers are fraudulent because the Judgment Debtor made the transfers or incurred the obligations without receiving a reasonably equivalent value in exchange for the transfers or the obligations, and the Judgment Debtor was insolvent or became insolvent as a result of the transfer of the CMS Assets.

143.   To the extent that ARM is an insider of Judgment Debtor, the transfer is fraudulent because it was made to an insider from an antecedent debt, Judgment Debtor was insolvent, and ARM had reason to believe that the Judgment Debtor was insolvent.

144.   The CMS Asset Transfers either were made to or for the benefit of Judgment Debtor or ARM.

145.   To the extent that the CMS Asset Transfers occurred prior to February 2007, the statute of limitations should be equitably tolled because any failure to exercise reasonable diligence to discover the fraudulent nature of the CMS Asset Transfers are excused in light of the Judgment Debtor's efforts in secreting and concealing the transfers and the Judgment Debtor's actions in plundering his assets at the expense of creditors;

146.   The CMS Asset Transfers are voidable as a fraudulent conveyance or in violation of O.C.G.A. §§ 18-2-74 and 18-2-75, and other applicable law.

147.   Pursuant to O.C.G.A. § 18-2-78 and other applicable law, Alliant is entitled to (i) avoid the CMS Asset Transfers to the extent necessary to satisfy Alliant's claim; (ii) an attachment or other provisional remedy against the CMS Assets; and (iii) an injunction against further disposition of CMS Assets by the Judgment Debtor or ARM.

WHEREFORE, Alliant respectfully requests that the Court enter judgment in favor of Alliant:  (i) avoiding the CMS Asset Transfers to the extent necessary to satisfy Alliant's claims; (ii) granting an attachment or other provisional remedy against the CMS Assets; (iii) enjoining the disposition of the CMS Assets; (iv) an award of reasonable attorneys' fees and court costs; and (v) any further and other relief that the Court deems just and proper.

37

## COUNT VII
## Avoidance of Fraudulent Transfer and Related Injunctive Relief
### (As to and Against the Judgment Debtor and Gazebo Park Apartments of Acworth, LLC to Avoid the Apartment Complex Transfer)

148.  Alliant realleges and incorporates by reference its allegations contained in Paragraphs 1 through 57 of its Complaint as if set forth fully herein.

149.  This is a claim against the Judgment Debtor to avoid the Apartment Complex Transfer as a fraudulent transfer.

150.  The Apartment Complex Transfer is avoidable pursuant to the Georgia Uniform Fraudulent Transfers Act O.C.G.A. § 18-2-70 *et seq.* (the "UFTA") and other applicable law.

151.  The Apartment Complex Transfer was made at a time when Judgment Debtor had actual knowledge of Alliant's claims against him.

152.  The Apartment Complex Transfer is fraudulent because it was made with the actual intent to hinder, delay, or defraud the creditors of Judgment Debtor, including Alliant, in violation of O.C.G.A. § 18-2-74.

153.  Alternatively, the Apartment Complex Transfer is fraudulent because it was made with the intent to hinder, delay or defraud creditors in that the Apartment Complex Transfer was made without receiving a reasonably equivalent

38

value and Judgment Debtor intended to incur on behalf or should have reasonably believed that he would incur debts beyond his ability to pay as they became due.

154.    Alliant's claims against Judgment Debtor arose prior to the transfer of the Apartment Complex Asset.

155.    The Apartment Complex Transfer is fraudulent as to Alliant because the Judgment Debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or the obligation and the Judgment Debtor was insolvent or became insolvent as a result of the transfer.

156.   To the extent that Gazebo Park is an insider of the Judgment Debtor, the transfer is fraudulent because it was made to an insider from an antecedent debt, the Judgment Debtor was insolvent and Gazebo Park had reasonable time to believe that Judgment Debtor was insolvent.

157.   The Apartment Complex Transfer either was made to or for the benefit of the Judgment Debtor.

158.   The Apartment Complex Transfer is voidable as a fraudulent conveyance in violation of O.C.G.A. §§ 18-2-74 and 18-2-75 and other applicable law.

159.   Pursuant to O.C.G.A. § 18-2-78 and other applicable law, Alliant is entitled to (i) avoid the Apartment Complex Transfer to the extent necessary to

satisfy Alliant's claim; (ii) an attachment or other provisional remedy against the Apartment Complex Asset; and (iii) an injunction against further disposition of Apartment Complex Asset by the Judgment Debtor or Gazebo Park.

WHEREFORE, Alliant respectfully requests that the Court enter judgment in favor of Alliant:  (i) avoiding the Apartment Complex Transfer to the extent necessary to satisfy Alliant's claims; (ii) granting an attachment or other provisional remedy against the Apartment Complex Asset; (iii) enjoining the disposition of the Apartment Complex Asset; (iv) an award of reasonable attorneys' fees and court costs; and (v) any further and other relief that the Court deems just and proper.

## COUNT IX
## CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

160.   Alliant realleges and incorporates by reference its allegations contained in Paragraphs 1 through 73 of its Complaint as if set forth fully herein.

161.   This is a claim for civil conspiracy against all Defendants.

162.   All of the Defendants have willfully joined, planned, and conspired to embark upon a scheme, plan, artifice, or conspiracy to transfer fraudulently assets and value from the Judgment Debtor to or for the benefit of themselves, as set forth specifically in Paragraphs 1 through 73 above.

163.   Defendants' wrongful actions included overt acts in furtherance of the conspiracy.

164.   Defendants' wrongful actions are without privilege or justification.

165.   As a direct and proximate result of Defendants' conspiracy, the Judgment Debtor's creditors, including Alliant, have been damaged.

WHEREFORE, Alliant respectfully requests that the Court enter judgment against Defendants, jointly and severally, for all damages resulting from their conspiracy to fraudulently transfer assets and value from the Judgment Debtor, plus pre- and post-judgment interest and costs associated with this action, along with such other relief as may be just and proper under the circumstances.

## COUNT X
## CLAIM FOR ATTRONEYS' FEES AGAINST ALL DEFENDANTS

166.   Alliant realleges and incorporates by reference its allegations contained in Paragraphs 1 through 73 of its Complaint as if set forth fully herein.

167.   This is a claim for attorneys' fees and litigation expenses against all Defendants.

168.   Defendants have acted stubbornly litigious, have acted in bad faith, and have caused Alliant unnecessary trouble and expense. Accordingly, Alliant is entitled to recover its attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Alliant respectfully requests that the Court enter judgment against Defendants and in favor of Alliant, awarding to Alliant all of its reasonable attorneys' fees and litigation costs incurred in bringing this lawsuit pursuant to O.C.G.A. § 13-6-11, along with such other relief as may be just and proper under the circumstances.

Respectfully submitted, this 17th day of March, 2011

PARKER, HUDSON, RAINER, & DOBBS, LLP

David B. Darden
Georgia Bar No. 250341
V. Justin Arpey
Georgia Bar No. 023753

1500 Marquis Two Tower
285 Peachtree Center Avenue N.E.
Atlanta, G.A.   30303
Tel:  (404) 523-5300
Fax:  (404) 522-8409
ddarden@phrd.com
jarpey@phrd.com

*Attorneys for Plaintiffs*

complaint final-5326373v1

29_1

# EXHIBIT A



**Control No: K408125**
Date Filed: 01/21/2010 03:43 PM
Wesley B. Tailor
Deputy Secretary of State

## STATE OF GEORGIA
## 2010 Corporation Annual Registration

### OFFICE OF SECRETARY OF STATE
Annual Registration Filings
P.O. Box 23038
Columbus, Georgia 31902-3038

**Wesley B. Tailor**
Secretary of State

**Chauncey Newsome**
Director

### Information on record as of: 1/21/2010

**Entity Control No. K408125**        **Amount Due: $30.00**        **Amount Due AFTER April 1, 2010: $55.00**

COMMUNITY MANAGEMENT SERVICES, INC.
2100 The Equitable Building
100 Peachtree Street
Atlanta GA, 30303-1912

**Each business entity registered or filed with the Office of Secretary of State is required to file an annual registration.** Amount due for this entity is indicated above and below on the remittance form. Annual fee is $30. If amount is more than $30, the total reflects amount(s) due from previous year(s) and any applicable late fee(s). **Renew by April 1, 2010.** Your Annual Registration must be postmarked by April 1, 2010. If your registration and payment are not postmarked by April 1, 2010, you will be assessed a $25.00 late filing penalty fee.

For faster processing, we invite you to file your Annual Registration online with a credit card at www.georgiacorporations.org. The Corporations Division accepts Visa, MC, Discover, American Express and ATM/Debit Cards with the Visa or MC logo for online filings only. Annual Registrations not processed online require payment with a check, certified bank check or money order. **We cannot accept cash for payment.**

You may mail your registration in by submitting the bottom portion of this remittance with a check or money order payable to "Secretary of State". **All checks must be pre-printed with a complete address in order to be accepted by our offices for your filing. Absolutely, no counter or starter checks will be accepted.** Failure to adhere to these guidelines will delay or possibly reject your filing. Checks that are dishonored by your bank are subject to a $30.00 NSF charge. Failure to honor your payment could result in a civil suit filed against you and/or your entity may be Administratively Dissolved by the Secretary of State. [See O.C.G.A. § 13-6-15 and Title 14, respectively.]

Officer, address and Agent information currently of record is listed below. Please verify "county of registered office." If correct and complete, detach bottom portion, sign, and return with payment. Or, enter changes as needed and submit. Complete each line, even if the same individual serves as Chief Executive Officer, Chief Financial Officer, and Secretary of the corporation.

**Note: Registered Agent address must be a street address in Georgia where the agent may be served personally. A mail drop or P.O. Box does not comply with Georgia law for registered office. P.O. Boxes may be used for principal office and officers' addresses.**

Any person authorized by the entity to do so may sign and file registration (including online filing). Additionally, a person who signs a document submits an electronic filing he or she knows is false in any material respect with the intent that the document be delivered to the Secretary of State for filing shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished to the highest degree permissible by law. [O.C.G.A. § 14-2-129.]

Please return ONLY the original form below and applicable fee(s). For more information on Annual Registrations or to file online, visit www.georgiacorporations.org. Or, call 404-656-2817. **PLEASE PRINT LEGIBLY.**

Current information printed below. Review and update as needed. Detach original coupon and return with payment.

| CORPORATION NAME | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|
| COMMUNITY MANAGEMENT SERVICES, INC. | 2100 The Equitable Building 100 Peachtree Street | Atlanta | GA | 30303 |
| CEO: M Vincent Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| CFO: M Vincent Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| SEC: Vincent Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| AGT: Kreimer, Stanley | 2100 The Equitable Building | Atlanta | GA | 30303 |
| IF ABOVE INFORMATION HAS CHANGES, TYPE OR PRINT CORRECTIONS BELOW: | | | | |
| CORPORATION ADDRESS: | | | | |
| CEO: | | | | |
| CFO: | | | | |
| SEC: | | | | |
| AGT: | | | GA | |

| I CERTIFY THAT I AM AUTHORIZED TO SIGN THIS FORM AND THAT THE INFORMATION IS TRUE AND CORRECT. | P O BOX NOT ACCEPTABLE FOR REGISTERED AGENT'S ADDRESS | COUNTY OF REGISTERED OFFICE: Fulton | COUNTY CHANGE OR CORRECTION: |
|---|---|---|---|
| AUTHORIZED SIGNATURE: Stan Kreimer | | DATE: 1/21/2010 | **Total Due:** |
| TITLE: Filer | EMAIL: | | **$30.00** |

BR201 2010 Corporation Annual Registration

108 K408125¼ 0030004 COMMUNITYMAN                    20100401        $30.00

# EXHIBIT B



Control No: 07084615
Date Filed: 01/21/2010 03:31 PM
Wesley B. Tailor
Deputy Secretary of State

## STATE OF GEORGIA
## 2010 Corporation Annual Registration

OFFICE OF SECRETARY OF STATE
Annual Registration Filings
P.O. Box 23038
Columbus, Georgia 31902-3038

**Wesley B. Tailor**
Secretary of State

**Chauncey Newsome**
Director

### Information on record as of: 1/21/2010

**Entity Control No. 07084615**          **Amount Due: $30.00**          **Amount Due *AFTER* April 1, 2010: $55.00**

AFFORDABLE REALTY MANAGEMENT
INCORPORATED
5755 North Point Parkway
Suite 67

**Each business entity registered or filed with the Office of Secretary of State is required to file an annual registration.** Amount due for this entity is indicated above and below on the remittance form. Annual fee is $30. If amount is more than $30, the total reflects amount(s) due from previous year(s) and any applicable late fee(s). **Renew by April 1, 2010.** Your Annual Registration must be postmarked by April 1, 2010. If your registration and payment are not postmarked by April 1, 2010, you will be assessed a $25.00 late filing penalty fee.

For faster processing, we invite you to file your Annual Registration online with a credit card at www.georgiacorporations.org. The Corporations Division accepts Visa, MC, Discover, American Express and ATM/Debit Cards with the Visa or MC logo for online filings only. Annual Registrations not processed online require payment with a check, certified bank check or money order. **We cannot accept cash for payment.**

You may mail your registration in by submitting the bottom portion of this remittance with a check or money order payable to "Secretary of State". **All checks must be pre-printed with a complete address in order to be accepted by our offices for your filing. Absolutely, no counter or starter checks will be accepted. Failure to adhere to these guidelines will delay or possibly reject your filing.** Checks that are dishonored by your bank are subject to a $30.00 NSF charge. Failure to honor your payment could result in a civil suit filed against you and/or your entity may be Administratively Dissolved by the Secretary of State. [See O.C.G.A. § 13-6-15 and Title 14, respectively.]

Officer, address and Agent information currently of record is listed below. Please verify "county of registered office." If correct and complete, detach bottom portion, sign, and return with payment. Or, enter changes as needed and submit. Complete each line, even if the same individual serves as Chief Executive Officer, Chief Financial Officer, and Secretary of the corporation.

**Note: Registered Agent address must be a street address in Georgia where the agent may be served personally. A mail drop or P.O. Box does not comply with Georgia law for registered office. P.O. Boxes may be used for principal office and officers' addresses.**

Any person authorized by the entity to do so may sign and file registration (including online filing). Additionally, a person who signs a document submits an electronic filing he or she knows is false in any material respect with the intent that the document be delivered to the Secretary of State for filing shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished to the highest degree permissible by law. [O.C.G.A. § 14-2-129.]

Please return ONLY the original form below and applicable fee(s). For more information on Annual Registrations or to file online, visit www.georgiacorporations.org. Or, call 404-656-2817. **PLEASE PRINT LEGIBLY.**

Current information printed below. Review and update as needed. Detach original coupon and return with payment.

| CORPORATION NAME | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|
| AFFORDABLE REALTY MANAGEMENT INCORPORATED | 5755 North Point Parkway Suite 67 | Alpharetta | GA | 30022 |
| CEO: Marilyn W Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| CFO: M Vincent Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| SEC: M Vincent Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| AGT: M. VINCENT MURPHY | 5755 Northpoint Parkway | Alphretta | GA | 30022 |

| IF ABOVE INFORMATION HAS CHANGES, TYPE OR PRINT CORRECTIONS BELOW: | | | | |
|---|---|---|---|---|
| CORPORATION ADDRESS: | | | | |
| CEO: Patrick Carroll | 5755 North Point Parkway, Suite 68 | Alpharetta | GA | 30022 |
| CFO: | | | | |
| SEC: | | | | |
| AGT: CARROLL ORGANIZATION LLC | 260 Peachtree Street | Atlanta | GA | 30303 |

| I CERTIFY THAT I AM AUTHORIZED TO SIGN THIS FORM AND THAT THE INFORMATION IS TRUE AND CORRECT. | P O BOX NOT ACCEPTABLE FOR REGISTERED AGENT'S ADDRESS | COUNTY OF REGISTERED OFFICE: Fulton | COUNTY CHANGE OR CORRECTION: Fulton |
|---|---|---|---|

| AUTHORIZED SIGNATURE: Vincent Murphy | | DATE: 1/21/2010 | **Total Due:** |
|---|---|---|---|
| TITLE: Filer | EMAIL: | | **$30.00** |

BR201 2010 Corporation Annual Registration

108 070846154 0030004 AFFORDABLER          20100401     $30.00

# EXHIBIT C

# PROPERTY MANAGEMENT AGREEMENT for
# Gazebo Park Apartments of Acworth , LLC

THIS AGREEMENT is made effective as of January 1, 2008 by and between Gazebo Park Apartments of Acworth, LLC with a mailing address of 5755 North Point Parkway, Ste. 67; Alpharetta, GA 30022 and Affordable Realty Management, Inc. a Georgia Corporation with a mailing address of 5755 North Point Parkway, Ste. 67; Alpharetta, GA 30022 (hereinafter referred to as "Agent").

WHEREAS, Owner owns certain property with residential apartment buildings located thereon; and

WHEREAS, Owner desires the services of Agent for the management of the Property (as hereinafter defined), and Agent is willing and able to provide such services, upon the terms and conditions hereinafter set forth;

IT IS THEREFORE AGREED as follows:

1.  **APPOINTMENT / AGENCY.** Owner hereby appoints Agent as its exclusive agent for the management and leasing of the Property (as hereinafter defined), and Agent accepts said appointment, subject to the terms and conditions hereinafter set forth.  Except as expressly provided in the Agreement, everything done by Agent in the performance of its obligations hereunder, and all property expenses incurred pursuant hereto, shall be for and on behalf of Owner and for its account, and all debts and liabilities incurred to third parties in the ordinary course of business of operation of the Property shall be the obligations of Owner.

2.  **DESCRIPTION OF PROPERTY.**  The Property to be managed by Agent herein under is the apartment community known as Gazebo Park Apartments and is located at the address of 4694 Old Cowan Road, Acworth, GA 30101.

3.  **TERM.**    The term of this Agreement shall commence on January 1, 2008 and shall end on December 31, 2008 unless sooner terminated as provided in Paragraph 25 herein below.  After the ending date of the initial term, this Agreement shall continue in full force and effect upon the same terms and conditions as provided herein unless and until either party provides not less then thirty (30) days written notice to the other party of its intention to terminate this Agreement.

4.  **THE UNIT RENTALS.**  Agent will offer for rent and will rent the dwelling units and other rental facilities in the Property on behalf and of and for the account of Owner.  Agent shall use reasonable efforts and means in determining the eligibility of prospective tenants.  Incident thereto, Agent shall cause the units to be shown to prospective tenants, shall take and process applications for rentals, maintain a current file of prospective tenants, prepare and obtain execution by tenants of tenant leases and rental contracts, and execute leases and rental contacts as Agent for Owner.  Agent shall collect, deposit, and disburse security deposits, if required, in accordance with the terms of each tenant's lease and applicable state law.

5.  **COLLECTION OF RENTALS AND SECURITY DEPOSITS.**  Agent shall collect when due all rents, charges, and amounts receivable in connection with the dwelling units in the Property including tenant security deposits.  The receipts for the Property will be deposited in a separate account with a bank selected by Agent and carried in Agent's name, and designated hereunder as the "Property Operating Account"; provided, however, that [as agent for Owner] tenant security deposits be deposited in a separate account Agent shall deposit said security deposits for the Property in an account designated as the "Security Deposit Account."



6.      **OTHER SERVICES.**  Agent shall manage and supervise the laundry operations and other income producing facilities, if any, provided at the Property, on behalf of and of and for the account of Owner.  Agent shall be responsible for all planning, purchasing, pricing, and administration of said operations. Agent shall collect all receipts of said operations and deposit them in the Property Operating Account, unless the same are to be collected by a third-party vendor.

7.      **PROPERTY EXPENSES.**  Those items identified hereunder as "Property Expenses" shall be treated as operating costs of Owner for all purposes and shall be administered and paid by Agent as described herein.  Those items not identified as Property Expenses shall be considered overhead costs of either Owner or Agent as the case may be.

8.      **MANAGEMENT FEES.**  Agent will be paid Management Fees for its services hereunder on a monthly basis, to be paid out of the Property Operating Account and treated as Property Expenses. Such Management Fees will be payable on the 5th of accounting month  for the same month's services.  The monthly Management Fee will be calculated by multiplying the Gross Collections for the month by five percent (5 %).  Gross collections include, without limitation, rent receipts, late and legal fees, and revenues from other sources such as coin operated laundry equipment and other income producing facilities, if any.

9.      **EMPLOYEES.**  Agent shall cause to be employed at all times a sufficient number of capable employees to properly, adequately, safely, and economically manage, operate, maintain, and account for the Property. All matters pertaining to employment, supervision, compensation, promotion and discharge of such employees shall be the responsibility of the Agent; provided however, that "on-site" employees (such as maintenance personnel or building management or leasing personnel) may be designated either as employees of Owner or Agent, at Agent's sole discretion.  Agent shall comply with all applicable laws and regulations having to do with worker's compensation, social security, unemployment insurance, hours of labor, wages, working conditions, and other employer/employee related subjects. Agent represents that it is and will continue to be an equal opportunity employer.  Notwithstanding the designation of such employees, the salaries, wages, and other compensation, fringe benefits, and employer's expenses payable with respect to all such employees (except Agent's executive and central office accounting personnel) shall be Property Expenses and shall be reimbursed to Agent (if such expenses are paid by Agent) or paid to such employees out of the Property Operating Account.

10.      **DISBURSEMENT FROM PROPERTY OPERATING ACCOUNT.** From the funds collected and deposited by Agent in the Property Operating Account, Agent shall make the following disbursements promptly when due (provided sufficient funds are available from property operations or provided by Owner):

(a)      Payment of (or reimbursement to Agent for) wages, state, and federal taxes, unemployment expense, workmen's compensation, FICA and any other charges payable to local, state and federal authorities in connection with the employment by Agent or Owner of the people employed pursuant to paragraph 9.

(b)      ··If so indicated by Owner, payments to contract for deed vendors, mortgages, or the holders of other encumbrances.

(c)      Agent's Management Fees under Paragraph 8 hereof, and any amounts payable to Agent under Paragraph 20 hereof.

(d)      If so directed by Owner, tax and insurance payments.

(e)      All costs to correct any violation of federal, state, and municipal laws, ordinances, regulations and orders relative to the leasing, use, repair, and maintenance of

the Property, or relative to the rules, regulations or orders of the local Board of Fire Underwriters or other similar body.

(f)     All reasonable costs of maintenance, repairs, decorations, and alterations.

(g)     All costs incurred in connection with all service contracts.

(h)     All costs of collections of delinquent rentals collected through a collection agency or law firm.

(i)     All legal fees of attorneys.

(j)     All costs of capital expenditures, subject to the restrictions in Paragraph 12.

(k)     All costs of printed checks for each bank account established hereunder.

(l)     All costs of computers, adding machines and other equipment and software of such type and use at a Property.

(m)     All utility costs.

(n)     All costs of advertising.

(o)     All administrative or office expenses for the Property, including without limitation, costs of printed forms and supplies required for use at the Property and photocopying and postage charges.

(p)     All other Property Expenses authorized to be incurred by the approved budget or as deemed an emergency by the Agent and paid by Agent hereunder.

In the event the balance in the Property Operating Account is at any time insufficient to pay disbursements when due, Agent shall inform Owner of that fact and Owner shall remit to Agent sufficient funds to cover the deficiency. In no event shall Agent be required to use its own funds to pay such disbursements.

After the payments or disbursements required hereunder, together with a reserve of $5000 to cover unexpected operating expenses and contingencies, all excess funds relative to the Property shall be distributed to Owner.

11.     **LEASE ENFORCEMENT.**     Agent shall use reasonable efforts to secure full compliance by each tenant with the terms of his or her lease. Nevertheless, Agent may lawfully terminate any tenancy when, in Agent's judgment, sufficient cause (including, but not limited to nonpayment of rent) for such termination occurs under the terms of the tenant's lease. For this purpose, Agent is authorized to consult with legal counsel to bring actions for eviction, to execute notices to vacate and to bring judicial pleadings incident to such actions. Attorney's fees and other necessary costs incurred in connection with such actions shall be paid from the property Operating Account as Property Expenses.

12.     **MAINTENANCE AND REPAIR.**     Agent will use its best efforts to maintain the Property in good repair and condition and in compliance with local codes, including but not limited to, cleaning, painting, decorating, plumbing, carpentry, grounds care, and such other maintenance and repair work as may be necessary, provided sufficient funds to effectuate the foregoing are provided from Property operations by Owner. Special attention shall be given to preventive maintenance. Agent shall have the option of using regular housekeeping and maintenance staff who are on site employees, if any, or

contracting with independent contractors for services and repairs. Agent shall promptly investigate all request and complaints from tenants and take such action as may be justified, and shall keep records thereof. Not withstanding the foregoing, Owner's prior approval shall be required for any expenditure which exceeds $2500.00 in any one instance for labor, materials, or otherwise in connection with maintenance, improvement or repair of the Property, except for recurring expenses within the operating or capital improvements budget or emergency repairs involving manifest danger to persons or property or required to avoid suspension of any necessary service to the Property. In the latter events, Agent shall inform Owner of the facts as promptly as possible. All maintenance, improvements and repairs shall be Property Expenses.

13. **UTILITIES AND SERVICE CONTRACTS.** Agent shall make arrangements for water, electricity, gas, fuel oil, sewage, and trash disposal, vermin extermination, laundry facilities, telephone services, and such other utilities and services as may be required for the Property and shall enter into such contracts on Owner's behalf as may be appropriate with respect thereto; provided, however, that Agent shall not enter into any service contract which cannot be terminated upon 30 days' notice or less without Owner's prior consent. All such utilities and services shall be Property Expenses.

14. **INSURANCE.** If requested by Owner, Agent shall cause all applicable insurance coverage to be placed and kept in effect at all times with respect to the Property and its operations, in accordance with the terms of any mortgages or contracts for deed encumbering the Property and after consultation with Owner. All such insurance premiums shall be Property Expenses. Public liability coverages shall name Agent as additional insured. Agent will investigate all accidents, claims and potential claims for damages relating to the Property and will cooperate with the insurers in connection therewith.

If Owner and Agent so agree, the Properties covered by this Agreement may be insured under the "master" insurance policies of the Manager. Owner agrees that any insurance placed for its benefit within said master policies will terminate as of the date of termination of this Agreement with respect to any Property.

15. **TAXES.** If requested by Owner, Agent shall monitor and pay as Property Expenses all real property taxes, personal property taxes, special assessments and other levies or charges of local or state authorities, sales taxes, use taxes, permit and license fees on taxes, and other such taxes and charges due with respect to the Property, or before the dates said payments are due, and shall prepare and file on Owner's behalf all necessary documents in connection with such taxes and charges. Owner shall notify Agent if it wishes to employ a tax consultant at property expense to contest any assessment or tax or to claim exemption therefrom. Unless Owner and Agent otherwise agree, Agent shall have no responsibility with respect to such contests or claim proceedings.

16. **RECORDS AND REPORTS.** In addition to any general requirements hereunder, Agent shall have the following responsibilities with respect to records and reports for the Property:

(a)   Agent shall establish and maintain separate records and books for the Property. all records and books shall be subject to examination at reasonable times by Owner or any authorized representative of Owner.

(b)   Agent shall, with the assistance of Owner, prepare operating and capital improvement budget for the property for the next succeeding calendar year prior to the end of each year.

(c)   With respect to each fiscal year of Owner ending during the term of this Agreement, Agent will prepare, or arrange for preparation of, an annual financial report for the Property. If Owner requests, the annual financial report will be certified by an independent Certified Public Accountant. All expenses of such financial reports and certified audits will be Property Expenses.

(d)     Agent will prepare monthly reports to Owner for receipts and disbursements and will submit each such report within 30 days after the end of each month. If an accounting service is utilized to prepare those reports, such accounting expenses shall be Property Expenses.

(e)     Agent shall furnish such additional information, including occupancy reports, to Owner or to other parties designated by Owner, from time to time, as requested by Owner respecting the financial, physical, or operational condition of the Property.

17.     **MARKETING.**   .Agent shall use reasonable efforts with respect to marketing the Property to prospective tenants and maintaining occupancy at the highest level practicable. All direct costs of advertising shall be Property Expenses and paid from the Property Operating Account.

18.     **GOVERNMENTAL ORDERS.**   Agent shall take all necessary actions to comply promptly with any and all governmental orders or requirements affecting the Property, whether imposed by federal, state, or local authorities, subject to the limitations on repairs set forth in Paragraph 12 above. Agent shall keep Owner informed of any such orders and Owner shall notify Agent in advance of compliance dates, if it wishes to contest or claim exemption from any orders, and Agent shall have no responsibility with respect to such contests or claim proceedings.

19.     **AGENT'S OVERHEAD.**   Except as may be otherwise provided herein, all salaries and compensation of Agent's executive, and central office accounting personnel and other management overhead expense of Agent, shall be borne by Agent out of its own funds and as part of the Management Fees payable hereunder, and shall not be treated as Property Expenses.

20.     **MAJOR IMPROVEMENT/FIRE RESTORATION.**   For its services rendered in connection with providing supervision of Major Improvement (which are defined as capital improvements, repairs, or fire restoration work in excess of $10,000 the Agent will receive a fee equal to ten percent (10%) of the cost of these improvements. Prior written approval from the Owner is required.

21.     **INDEMNIFICATION AND LIABILITY OF AGENT.**   Agent agrees to use a degree of care that would be exercised by a prudent property manager in the same or similar circumstances in performance of the duties and obligations hereunder. Owner agrees to indemnify, defend, and save harmless Agent from and against any and all loss, damage, or expense, including court costs and reasonable attorney's fees, arising out of or resulting from, the good faith exercise of Agent's judgment, consistent with said standard of care, with respect to such duties and obligations, and Owner shall have no claim against Agent by reason of any act or omission in such exercise of its judgment relative to the performance of said duties and obligations, provided Agent was not grossly negligent or guilty of willful misconduct.

22.     **OTHER ACTIVITIES OF AGENT.**   Agent may engage for its own account or for the account of others, in other business ventures, including management of other residential apartment projects for other individuals or entities. Notwithstanding the foregoing, Agent shall retain sufficient staff personnel to be fully capable of discharging its responsibility to Owner.

23.     **ASSIGNMENT AND DELEGATION.**   Neither party may assign its rights nor delegate its duties hereunder to any other entity, without the prior written consent of the other party, which consent will not be unreasonably withheld.

24.     **NONDISCRIMINATION.**   In the performance of its obligations hereunder, Agent shall comply with the provisions of any federal, state, or local law prohibiting discrimination in housing on the grounds of race, color, sex, creed, or national origin.

25.   **TERMINATION.**  This Agreement shall continue in full force and effect until the expiration date as provided in paragraph 3 above unless sooner terminated as described herein under.  The Owner shall have the right to terminate this Agreement upon 30 days prior written notice if a sale of other disposition of the Property.  The Owner shall have the right to terminate this Agreement if the Agent fails to keep, observe, or perform any covenant, agreement, term or provision of this Agreement and if diligent steps to cure such default have not been commenced within 10 days after written notice to Agent specifying such default and thereafter diligently followed through to completion, then, upon giving ten days (10 days) prior written notice to Agent.

26.   **ADDENDUMS.**  The approved Management Plan for the property is attached hereto and made a part of this Management Agreement.  The approved Operating Budget for the property is attached hereto and made a part of this Management Agreement.

27.   **CONSTRUCTION.**  This Agreement constitutes the entire agreement between the parties and cannot be modified except by subsequent written agreement of both parties.  This agreement shall be governed by Georgia law and shall bind and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, as of the effective date first above written, by their duly authorized representatives.

OWNER:          Gazebo Park Apartments of Acworth, LLC

By:             Marilyn W. Murphy

Its:            Managing Member

AGENT:          **AFFORDABLE REALTY MANAGEMENT, INC.**

By:             M. Vincent Murphy

Its:            President

# EXHIBIT D

Eastern District of Kentucky
**FILED**

AUG 3 1 2010

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION AT LEXINGTON
### CASE NO.: 5:07-CV-00388-KKC

**ELECTRONICALLY FILED**

ALLIANT TAX CREDIT FUND 31-A, LTD.;
ALLIANT TAX CREDIT 31, INC.;
ALLIANT TAX CREDIT FUND XXVII, LTD.;
ALLIANT TAX CREDIT XXVII, INC.;
ALLIANT TAX CREDIT XI, LTD.; and
ALLIANT TAX CREDIT XI, INC.

      Plaintiffs,

v.

NICHOLASVILLE COMMUNITY HOUSING, LLC.,
JESSAMINE COMMUNITY HOUSING, LLC;
PRINCETON COMMUNITY HOUSING, LLC;
BOWLING GREEN COMMUNITY HOUSING, LLC;
WARREN COUNTY COMMUNITY HOUSING, LLC;
HOPKINSVILLE COMMUNITY HOUSING, LLC;
IRONWOOD DEVELOPMENT, LLC; ROBERT A.
MCMASTER; and M. VINCENT MURPHY, III,

      Defendants.

### AMENDED JUDGMENT

In accordance with the opinions and orders entered in this matter on September 30, 2009 and March 22, 2010, the Court hereby ORDERS and ADJUDGES as follows:

1.      Judgment is hereby entered in favor of Plaintiffs, Alliant Tax Credit Fund 31-A, Ltd. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA 91367 and Alliant Tax Credit 31, Inc. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA 91367, and against Defendants, Jessamine Community Housing, LLC whose address is 4390 Earney Rd., Suite 120, Woodstock, GA 30188; Ironwood Development , LLC whose address is



4390 Earney Rd., Suite 120, Woodstock, GA 30188; Robert A. McMaster whose last known address is 502 East Wesley Ct., Woodstock, GA 30188, and M. Vincent Murphy, III whose last known address is 28115 Mill Creek, Alpharetta, GA 30022, jointly and severally, for compensatory damages in the amount of $525,745.00, which shall hereafter draw the legal rate of interest in effect as of the date of this Amended Judgment, compounded daily and annually, until paid in full, for which let execution issue, *forthwith and instanter*.

2.     Judgment is hereby entered in favor of Plaintiffs, Alliant Tax Credit Fund 31-A, Ltd. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA 91367 and Alliant Tax Credit 31, Inc. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA 91367, and against Defendants, Princeton Community Housing, LLC whose address is 4390 Earney Rd., Suite 120, Woodstock, GA 30188; Ironwood Development, LLC whose address is 4390 Earney Rd., Suite 120, Woodstock, GA 30188; Robert A. McMaster whose last known address is 502 East Wesley Ct., Woodstock, GA 30188, and M. Vincent Murphy, III whose last known address is 28115 Mill Creek, Alpharetta, GA 30022, jointly and severally, for compensatory damages in the amount of $585,758.00; which shall hereafter draw the legal rate of interest in effect as of the date of this Amended Judgment, compounded daily and annually, until paid in full, for which let execution issue, *forthwith and instanter*.

3.     Judgment is hereby entered in favor of Plaintiffs, Alliant Tax Credit Fund 31-A, Ltd. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA 91367 and Alliant Tax Credit 31, Inc. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA 91367, and against Defendants, Nicholasville Community Housing, LLC whose address is 4390 Earney Rd., Suite 120, Woodstock, GA 30188; Ironwood Development, LLC whose address is 4390 Earney Rd., Suite 120, Woodstock, GA 30188; Robert A. McMaster whose last known address is 502 East Wesley Ct., Woodstock, GA 30188, and M. Vincent Murphy, III whose last

2

known address is 28115 Mill Creek, Alpharetta, GA  30022, jointly and severally, for compensatory damages in the amount of $366,986.00; which shall hereafter draw the legal rate of interest in effect as of the date of this Amended Judgment, compounded daily and annually, until paid in full, for which let execution issue, *forthwith and Instanter.*

4.      Judgment is hereby entered in favor of Plaintiffs, Alliant Tax Credit XI, Ltd. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA  91367 and Alliant Tax Credit XI, Inc. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA  91367, and against Defendants, Hopkinsville Community Housing, LLC whose address is 4390 Earney Rd., Suite 120, Woodstock, GA  30188; Ironwood Development, LLC whose address is 4390 Earney Rd., Suite 120, Woodstock, GA  30188; Robert A. McMaster whose last known address is 502 East Wesley Ct., Woodstock, GA  30188, and M. Vincent Murphy, III whose last known address is 28115 Mill Creek, Alpharetta, GA  30022, jointly and severally, for compensatory damages in the amount of $226,402.00; which shall hereafter draw the legal rate of interest in effect as of the date of this Amended Judgment, compounded daily and annually, until paid in full, for which let execution issue, *forthwith and Instanter.*

5.      Judgment is hereby entered in favor of Plaintiffs, Alliant Tax Credit XXVII, Ltd. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA  91367 and Alliant Tax Credit XXVII, Inc. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA 91367, and against Defendants, Bowling Green Community Housing, LLC whose address is 4390 Earney Rd., Suite 120, Woodstock, GA  30188; Ironwood Development, LLC whose address is 4390 Earney Rd., Suite 120, Woodstock, GA  30188; Robert A. McMaster whose last known address is 502 East Wesley Ct., Woodstock, GA  30188, and M. Vincent Murphy, III whose last known address is 28115 Mill Creek, Alpharetta, GA  30022, jointly and severally, for compensatory damages in the amount of $169,622.00; which shall hereafter draw the legal rate

3

of interest in effect as of the date of this Amended Judgment, compounded daily and annually, until paid in full, for which let execution issue, *forthwith and instanter*.

6.     Judgment is hereby entered in favor of Plaintiffs, Alliant Tax Credit Fund XXVII, Ltd. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA 91367 and Alliant Tax Credit XXVII, Inc. whose address is 21600 Oxnard Street, Suite 1200, Woodland Hills, CA 91367, and against Defendants, Warren County Community Housing, LLC whose address is 4390 Earney Rd., Suite 120, Woodstock, GA 30188; Ironwood Development, LLC whose address is 4390 Earney Rd., Suite 120, Woodstock, GA 30188; Robert A. McMaster whose last known address is 502 East Wesley Ct., Woodstock, GA 30188, and M. Vincent Murphy, III whose last known address is 28115 Mill Creek, Alpharetta, GA 30022, jointly and severally, for compensatory damages in the amount of $7,072,130.00; which shall hereafter draw the legal rate of interest in effect as of the date of this Amended Judgment, compounded daily and annually, until paid in full, for which let execution issue, *forthwith and instanter*.

7.     This matter is STRICKEN from the active docket of this Court; and

8.     This Amended Judgment is FINAL and APPEALABLE.

Dated _____ 8/31/10 _____.

Signed by:

Karen K. Caldwell
United States District Judge

LBXLibrary 0110817 . 0543643   427959v1

4

# EXHIBIT E

# UNITED STATES DISTRICT COURT
### for the
### EASTERN DISTRICT OF KENTUCKY
at Lexington

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 1 2 2010

JAMES N. HATTEN, Clerk
By Deputy Clerk

ALLIANT TAX CREDIT FUND 31-A, LTD.; et al.

    Plaintiffs,

v.

NICHOLASVILLE COMMUNITY HOUSING, LLC, et al,

    Defendants.

Civil Action No. 5:07-CV-00388-KKC

**1. 10-MI-018,9**

## CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on August 31, 2010.

I also certify that, as appears from this court's records, although an appeal is pending, the court found good cause exists to allow this judgment to be registered in the Northern District of Georgia

Date: _10/26/2010_

LESLIE G. WHITMER, CLERK

By Jackie Seltsam D.C.

5009631-v1



# EXHIBIT G

**Trepner, Norman H**

| | |
|---|---|
| **From:** | Vincent Murphy [vince@comgtsvc.com] |
| **Sent:** | Wednesday, August 30, 2006 11:16 AM |
| **To:** | Trepner, Norman H |
| **Subject:** | RE: Ironwood – Personal Financial Statement |

I affirm that the statement is accurate to the best of my knowledge as of the stated dates.

M. Vincent Murphy
President
Community Management Services, Inc.
Phone 770/594-5220
Fax 770/594-7973

**From:** Trepner, Norman H [mailto:norman.trepner@bankofamerica.com]
**Sent:** Wednesday, August 30, 2006 10:10 AM
**To:** Vincent Murphy
**Subject:** RE: Ironwood – Personal Financial Statement

Thank you for sending me the info. I will follow-up with Robert shortly about his statement and copy you, so please be on the lookout for it.

Can you either sign the statement and fax it to me at 203/423-4003 or send me a quick e-mail affirming the words on your statement, "I certify the above and the statements contained in the attached Sections to be true and accurate as of the stated dates."

*Please note that if you send me a fax, it is to private machine which is not shared with any other parties.*

**From:** Vincent Murphy [mailto:vince@comgtsvc.com]
**Sent:** Wednesday, August 30, 2006 9:59 AM
**To:** Trepner, Norman H
**Subject:** RE: Ironwood - Personal Financial Statement

Here you go.

M. Vincent Murphy
President
Community Management Services, Inc.
Phone 770/594-5220
Fax 770/594-7973

**From:** Trepner, Norman H [mailto:norman.trepner@bankofamerica.com]
**Sent:** Wednesday, August 30, 2006 8:35 AM
**To:** Vince Murphy
**Subject:** Ironwood - Personal Financial Statement

Vince,

Thanks for speaking with me a few minutes ago, and I appreciate your sending me your updated statement. My e-mail address is as follows:

norman.trepner@bankofamerica.com

Once again, thank you.

Norman

8/30/2006



BA 000068

Norman Trepner
Bank of America, N.A.
187 Danbury Road
Wilton, CT 06897
Phone: 203/423-4067
E-Mail: norman.trepner@bankofamerica.com
Fax: 203/423-4003

BA 000069

BA 000070

REDACTED

## PERSONAL FINANCIAL STATEMENT

As of Date: 12/31/06

| NAME | M. Vincent Murphy III | RESIDENCE PHONE NUMBER | (770) 360-7877 |
| RESIDENCE ADDRESS | 410 Society Street | SOCIAL SECURITY NUMBER | -7629 |
| CITY, STATE, ZIP CODE | Alpharetta, Georgia 30022 | DATE OF BIRTH | 1947 |
| EMPLOYER | Community Management Services | BUSINESS PHONE NUMBER | (770) 594-5220 |

| ASSETS | | AMOUNT |
|---|---|---|
| Cash on Hand | | $126 |
| Savings & Checking Accounts | Schedule A | $502,869 |
| Retirement Accounts | Schedule B | $979,589 |
| Accounts & Notes Receivable | Schedule C | $2,728,393 |
| Life Insurance-Cash Surrender Value | Schedule D | $318,362 |
| Stocks & Bonds | Schedule E | $7,572,354 |
| Personal Real Estate Owned | Schedule F | $862,000 |
| Investment Real Estate Owned | Schedule G | $24,256,928 |
| Business Interests | Schedule H | $5,713,938 |
| Personal Property & Other Assets | Schedule J | $538,111 |
| **TOTAL ASSETS** | | **$43,462,669** |

| LIABILITIES | | AMOUNT |
|---|---|---|
| Loans Against Personal Property | Schedule J | $0 |
| Unpaid Taxes | Schedule K | $30,000 |
| Accounts & Notes Payable | Schedule L | $0 |
| Loans on Life Insurance | Schedule M | $0 |
| Mortgages on Personal Real Estate | Schedule N | $0 |
| Mortgages on Investment Real Estate | Schedule P | $16,301,580 |
| Other Liabilities | Schedule Q | $3,934 |
| **TOTAL LIABILITIES** | | **$16,335,514** |
| | | |
| **NET WORTH** | | **$27,127,155** |

| SOURCES OF INCOME | | AMOUNT |
|---|---|---|
| Salary | Schedule R | $156,000 |
| Interest, Dividends & Capital Gains | Schedule R | $234,270 |
| Investment Real Estate Income | Schedule G | $128,496 |
| Business Interests Income | Schedule R | $59,324 |
| Pension & Other | Schedule R | $27,036 |
| **TOTAL SOURCES OF INCOME** | | **$605,126** |

| CONTINGENT LIABILITIES | | AMOUNT |
|---|---|---|
| Operating Deficit Guaranties | Schedule S | $1,150,000 |
| Guaranteed or Construction Loans | Schedule S | $8,159,979 |
| Tax Credit Guaranties | Schedule S | $25,578,698 |
| Developer Fee Notes Guaranties | Schedule S | $618,853 |
| Pending Litigation | Schedule S | $1,770,000 |
| **TOTAL CONTINGENT LIABILITIES** | | **$37,275,530** |

I certify the above and the statements contained in the attached Sections to be true and accurate as of the stated dates. These statements are made either to obtain or guarantee a loan.

SIGNATURE _____

DATE _____

REDACTED

## SCHEDULE A
Savings & Checking Accounts                                              12/31/05

| TYPE OF ACCOUNT | NAME OF DEPOSITORY ADDRESS | ACCOUNT NUMBER | ACCOUNT BALANCE |
|---|---|---|---|
| Checking Account | Wachovia Bank<br>11180 Alpharetta Highway | :5621 | $18,708 |
| Checking Account | Bank of America<br>PO Box 25118, Tampa, Fl | ;2164 | $26,989 |
| Savings Account | Wachovia Bank<br>11180 Alpharetta Highway | ·8276 | $73,190 |
| Savirgs Account | Bank of America<br>PO Box 25118, Tampa, Fl | :9099 | $103,983 |
| USAA Savings Acct | USAA Subscriber's Savings Account<br>9800 Fredericksburg Rd, San Antonio TX | ;-45-82 | $5,714 |
| Bank Sweep Money Market Fund | Wachovia Securities<br>945 East Paces Ferry Rd Atlanta Ga 30326 | -9436 | $274,285 |
| TOTAL | | | $502,869 |

## SCHEDULE B
Retirement Accounts

| TYPE OF ACCOUNT | NAME OF DEPOSITORY ADDRESS | ACCOUNT NUMBER | ACCOUNT BALANCE |
|---|---|---|---|
| IRA | Wachovia Securities<br>945 East Paces Ferry Rd Atlanta Ga 30326 | -3311 | $428,804 |
| IRA Inherited | Wachovia Securities<br>945 East Paces Ferry Rd Atlanta Ga 30326 | ·5235 | $490,787 |
| CMSI Pension Fund | CMSI Pension Fund<br>601 W. Crossville Rd, Roswell, Ga 30075 | | $59,998 |
| TOTAL | | | $979,589 |

## SCHEDULE C
Accounts & Notes Receivable

| DESCRIPTION OF RECEIVABLE | NAME OF PAYOR ADDRESS | DATE(S) DUE | AMOUNT DUE |
|---|---|---|---|
| Acquisition Loan | Community Management services<br>601 W. Crossville Rd, Roswell, Ga 30075 | from cash flow | $90,000 |
| Omni Mortgage Loan | Omni Mortgage Lenders<br>601 W. Crossville Rd, Roswell, Ga 30075 | on demand | $885,638 |
| Colonial Square Operating Deficit Loan | Colonial Partners LP<br>601 W. Crossville Rd, Roswell, Ga 30075 | from cash flow after deferred fee | $759,000 |
| McMaster Loan | Robert McMaster<br>502 Leslie Court, Woodstock, GA 30188 | 8/31/05 | $1,168,543 |
| Cantrell Loan | William Cantrell<br>6710 Stillmeadow Dr, Cumming, GA 30040 | 11/30/05 | $25,212 |
| TOTAL | | | ·$2,728,393 |

BA 000071

**SCHEDULE D**
Life Insurance-Cash Surrender Value                                    12/31/05                    REDACTED

| POLICY NUMBER | NAME OF INSURANCE COMPANY ADDRESS | DEATH BENEFIT | SURRENDER VALUE |
|---|---|---|---|
| 8646 | Northwestern Mutual Life Insurance Co 720 E, Wisconsin Ave Milwaukee 53202 | $192,119 | $88,360 |
| 2087 | Northwestern Mutual Life Insurance Co 720 E, Wisconsin Ave Milwaukee 53202 | $148,055 | $51,576 |
| '265 | Northwestern Mutual Life Insurance Co 720 E, Wisconsin Ave Milwaukee 53202 | $100,000 | $24,697 |
| 2433 | Northwestern Mutual Life Insurance Co 720 E, Wisconsin Ave Milwaukee 53202 | $600,000 | $155,739 |
| TOTAL | | $940,174 | $318,362 |

**SCHEDULE E**
Stocks & Bonds

| NAME OF SECURITIES | #OF SHARES | CURRENT PRICE | PLEDGED? | CURRENT MARKET VALUE | | |
|---|---|---|---|---|---|---|
| | | | | ESTIMATE | SOURCE | DATE |
| Coca Cola Co | 175000 | $40.31 | Schedule L | $7,054,250 | Wachovia Statement | 12/31/05 |
| Southern Co | 2000 | $34.53 | Schedule L | $69,060 | Wachovia Statement | 12/31/05 |
| General Electric Co | 3000 | $35.05 | Schedule L | $105,150 | Wachovia Statement | 12/31/05 |
| Bank of America Corp | 2500 | $46.15 | Schedule L | $115,375 | Wachovia Statement | 12/31/05 |
| | | | | | | 12/31/05 |
| | | | | | | 12/31/05 |
| Alliance Bernstein Growth & Income Fund | 22917.5 | $3.84 | No | $88,003 | Statement | 12/31/05 |
| Columbia Liberty Fund | 944.3 | $8.47 | No | $7,998 | Statement | 12/31/05 |
| Massachusetts Investors Trust MIT-A | 7182.5 | $18.45 | No | $132,517 | Statement | 12/31/05 |
| TOTAL | | | | $7,572,354 | | |

**SCHEDULE F**
Personal Real Estate Owned

| DESCRIPTION | ORIGINAL ACQUISITION | | | CURRENT MARKET VALUE | | |
|---|---|---|---|---|---|---|
| | DATE | COST | ADD ONS | ESTIMATE | SOURCE | DATE |
| Mountain Cabin | 5/31/91 | $129,941 | $4,527 | $290,000 | realtor comparable | 9/1/05 |
| Alpharetta Townhouse | 10/15/02 | $537,652 | $46,659 | $562,000 | appraisal | 9/12/02 |
| | | | | | | |
| TOTAL | | $667,593 | $51,186 | $852,000 | | |

BA 000073

**SCHEDULE G**
Investment Real Estate Owned

12/31/05

| PROPERTY DESCRIPTION | OWNERSHIP ENTITY | CURRENT MARKET VALUE | | | OWNERSHIP INTEREST | | PREVIOUS YEAR INCOME FROM OPERATIONS | | | | | % LEASED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ESTIMATE | SOURCE | DATE | SHARE | VALUE | PGI | EGI | NOI | NCF | SHARE NCF | |
| Sandpiper 196 Units Apartments | Sandpiper Casselberry LLC | $6,350,000 | appraisal | 3/21/00 | 99.50% | $6,318,250 | $1,517,174 | $1,475,863 | $847,731 | $69,101 | $68,755 | 97% |
| Autumn Hills 191 Units Apartments | Autumn Hills Union City LLC | $9,000,000 | appraisal | 3/8/00 | 89.50% | $8,955,000 | $1,540,589 | $1,387,018 | $712,655 | $65,625 | $65,297 | 91% |
| Park Bridge 216 Units Apartments | Acworth LLC | $8,750,000 | appraisal | 2/13/00 | 98.50% | $8,716,200 | $1,557,380 | $1,267,892 | $606,592 | ($39,416) | ($39,369) | 89% |
| Summerdale Phase 1 136 Units Apartments | Summerdale Partners LP | $6,245,000 | appraisal | 12/5/00 | 0.0085% | $531 | $830,435 | $637,158 | $176,340 | ($344,688) | ($84) | 84% |
| Summerdale Phase 2 108 Units Apartments | Summerdale Partners LP II | $4,750,000 | appraisal | 12/5/00 | 0.0085% | $404 | $644,310 | $472,658 | $53,458 | ($172,726) | ($15) | 82% |
| Colonial Square 192 Units Apartments | Colonial Partners LP | $7,750,000 | appraisal | 12/5/00 | 0.010% | $776 | $1,585,189 | $1,540,014 | $672,247 | $117,016 | $12 | 92% |
| Dawnville Meadows 120 Units Apartments | Dalton Flats Apartments LP | $4,300,000 | appraisal | 1/17/02 | 0.005% | $215 | $308,136 | $754,751 | $373,562 | ($324,205) | ($1) | 93% |
| Springfield Crossing 120 Units Apartments | Springfield Crossing Apartments LP | $4,150,000 | appraisal | 4/3/03 | 0.005% | $208 | $767,324 | $766,235 | $354,660 | $8,777 | $0 | 98% |
| Valley Hill Senior 72 Units Apartments | Valley Hill Apartments LP | $2,800,000 | appraisal | 4/16/03 | 0.005% | $140 | $516,970 | $469,133 | $208,964 | ($51,142) | ($30) | 100% |
| Windsor Lake 72 Units Apartments | Windsor Senior Apartments LP | $5,100,000 | appraisal | 1/24/02 | 0.005% | $255 | $287,752 | $253,881 | $69,347 | ($321,708) | ($21) | 100% |
| Victory Crossing 172 Units Apartments | Victory Crossing Apartments LP | $9,785,000 | appraisal Novogradic | 10/23/03 | 0.005% | $489 | $1,100,542 | $882,533 | $544,941 | $168,614 | $8 | 15% |
| Pstsville Estates 76 Houses Subdivision | Pstsville Estates LP | $6,550,000 | appraisal Pritchett, Ball & Wise | 5/29/03 | 0.005% | $326 | $362,516 | $289,532 | $11,540 | $7,916 | $0 | 30% |
| Parkway Overlook 266 Units Apartments | NHTE Parkway LP | $18,400,000 | appraisal | 12/31/02 | 0.002% | $414 | $3,295,182 | $3,215,809 | $1,387,502 | ($151,678) | ($3) | 100% |
| Renaissance 110 Units Apartments | Renaissance Apts on Kentucky LP | $3,262,776 | development costs | 12/5/03 | 0.005% | $413 | $155,818 | $24,230 | ($10,826) | ($11,517) | ($1) | 0% |
| Park Row 40 Units Apartments | Park Row Apartments LP | $1,600,000 | appraisal CBRE | 10/6/05 | 0.005% | $80 | $210,290 | $115,859 | ($349,704) | ($291,137) | ($15) | 0% |
| Creekside 40 Units Apartments | Creekside Senior Apartments LP | $1,700,000 | appraisal CBRE | 10/6/05 | 0.005% | $85 | $222,100 | $82,283 | ($55,883) | ($251,606) | ($13) | 0% |
| Nicholasville Greens 16 Units Apartments | Nicholasville Greens LP | $960,000 | appraisal CBRE | 10/6/05 | 0.005% | $48 | $83,769 | $32,290 | ($12,412) | ($396,427) | $0 | 0% |
| Virginia Place 26 Units Apartments | Perryville Senior Apartments LP | $900,000 | appraisal CBRE | 10/6/05 | 0.005% | $45 | $0 | $0 | $0 | $0 | $0 | 0 |
| Franklin Place Senior Apts 32 Units Apartments | Franklin Place Senior Apartments LP | $970,000 | appraisal CBRE | 10/6/05 | 0.005% | $49 | $105,401 | $20,916 | ($91,176) | ($382,066) | $0 | 0 |
| Hackett Crossing Condo 2 units Offices | Hackett Crossing Partners LLC | $530,000 | appraisal | 8/15/02 | 50.0% | $265,000 | $81,600 | $81,600 | $39,963 | $7,688 | $3,844 | 100% |
| TOTAL | | $108,870,776 | | | | $24,254,928 | | | | | $123,496 | |

BA 000074

SCHEDULE H
Business Interests Owned

12/31/05

| BUSINESS NAME | BUSINESS DESCRIPTION | CURRENT MARKET VALUE | | | OWNERSHIP INTEREST | |
|---|---|---|---|---|---|---|
| | | ESTIMATE | SOURCE | DATE | SHARE | VALUE |
| Community Management Services | Apartment Property Management Company | $1,662,310 | .15 Times Gross Billing of Monthly Management Fees | 12/31/05 | 100.00% | $1,662,310 |
| Multifamily Housing Developers LLC (subsidiary of Community Mgt Svcs) | Low Income Housing Tax Credit Developer | $24,460 | present value @ 8% of deferred developer fees | 12/31/05 | 100.00% | $24,460 |
| Ironwood Development LLC | Low Income Housing Tax Credit Developer | $462,225 | present value @ 8% of deferred developer fees | 12/31/05 | 50.00% | $231,163 |
| Ironwood Group Inc | Services and Risk Provider to LIHTC Development Projects | $995,893 | present value @ 6% of deferred GP fees | 12/31/05 | 50.00% | $497,947 |
| Kentucky 5 Development Company | Low Income Housing Tax Credit Developer | $350,051 | present value @ 8% of deferred developer fees | 12/31/05 | 50.00% | $175,026 |
| Omni Mortgage Lenders LLC | Construction Lender for LIHTC Properties | ($393,467) | balance sheet | 12/31/05 | 50.00% | ($196,735) |
| Allin Construction Company | General Construction Contractor | ($300,000) | present value @15% of contract profits | 12/31/05 | 50.00% | ($150,000) |
| Anacostia Development LLC | Low Income Housing Tax Credit Developer | $397,594 | present value @ 8% of deferred developer fees | 12/31/05 | 50.00% | $198,797 |
| 2745 Naperville Rd Partners | General Partners Benefits Summerdale 1 | $0 | present value @ 8% of partnership fees | 12/31/05 | 100.00% | $0 |
| Summerdale Advisors LLC | General Partners Benefits Summerdale 2 | $0 | present value @ 8% of partnership fees | 12/31/05 | 100.00% | $0 |
| Colonial Square Associates LLC | General Partners Benefits Colonial Square | $259,499 | present value @ 9% of partnership fees | 12/31/05 | 100.00% | $259,499 |
| Whitfield Community Housing LLC | General Partners Benefits Dawnville Meadows | $758,309 | present value @ 9% of partnership fees | 12/31/05 | 50.00% | $379,155 |
| Muscogee Community Housing LLC | General Partners Benefits Springfield Crossing | $859,711 | present value @ 9% of partnership fees | 12/31/05 | 50.00% | $429,856 |
| Riverdale Community Housing LLC | General Partners Benefits Valley Hill Senior | $482,239 | present value @ 9% of partnership fees | 12/31/05 | 50.00% | $241,120 |
| Thomasville Community Housing LLC | General Partners Benefits Windsor Lake Senior | $33,967 | present value @ 9% of partnership fees | 12/31/05 | 50.00% | $16,984 |
| Victory Community Housing LLC | General Partners Benefits Victory Crossing | $1,867,568 | present value @ 9% of partnership fees | 12/31/05 | 50.00% | $933,784 |
| Cordele Community Housing LLC | General Partners Benefits Palmville Estates | $203,877 | present value @ 9% of partnership fees | 12/31/05 | 50.00% | $101,939 |
| Anacostia Community Housing LLC | General Partners Benefits Parkway Overlook | $1,023,889 | present value @ 12% of partnership fees | 12/31/05 | 50.00% | $511,945 |
| Warren County Community Housing | General Partners Benefits Renaissance on Kentucky | $68,635 | present value @ 9% of partnership fees | 12/31/05 | 50.00% | $34,318 |
| Bowling Green Community Housing | General Partners Benefits Park Row | $142,487 | present value @ 9% of partnership fees | 12/31/05 | 50.00% | $71,244 |
| Nicholasville Community Housing LLC | General Partners Benefits Nicholasville Greens | $93,365 | present value @ 9% of partnership fees | 12/31/05 | 50.00% | $46,683 |
| Jessamine Community Housing LLC | General Partners Benefits Creekside | $78,750 | present value @ 9% of partnership fees | 12/31/05 | 50.00% | $39,375 |
| Princeton Community Housing LLC | General Partners Benefits Princeton Senior | $0 | present value @ 8% of partnership fees | 12/31/05 | 50.00% | $0 |
| Hopkinsville Community Housing LLC | General Partners Benefits Virginia Place | $10,146 | present value @ 9% of partnership fees | 12/31/05 | 50.00% | $5,073 |
| TOTAL | | | | | | $5,713,938 |

BA 000075

SCHEDULE J
Personal Property & Other Assets
Loans Against Personal Property & Other Assets

12/31/05

| PROPERTY/ASSET DESCRIPTION | OWNERSHIP INTEREST | | CURRENT MARKET VALUE | | | LOANS | |
|---|---|---|---|---|---|---|---|
| | ENTITY | SHARE | ESTIMATE | SOURCE | DATE | BALANCE | LENDER |
| Corvette | Personal | 100% | $57,447 | Cost | 6/20/05 | $0 | n/a |
| Explorer | Personal | 50% | $24,094 | Edmunds | 11/27/04 | $0 | n/a |
| Suburban | Personal | 50% | $2,475 | Edmunds | 11/27/04 | $0 | n/a |
| Alpharetta House Furniture | Personal | 50% | $368,960 | Inventory | 12/31/05 | $0 | n/a |
| Mountain Cabin Furniture | Personal | 50% | $37,259 | Inventory | 12/31/05 | $0 | n/a |
| Maine Cottage Furniture | Personal | 50% | $45,876 | Inventory | 12/31/05 | | |
| | | | $536,111 | | | $0 | |

BA 000076

## SCHEDULE K
### Unpaid Taxes

| DESCRIPTION | TAXING ENTITY ADDRESS | AMOUNT | ORIGINAL TAX DUE DATE | TERM | DUE | RATE | PAYMENTS AMOUNT | FREQ | CURRENT BALANCE 12/31/05 AMOUNT | DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| Estimated Income Taxes from 1040 ES | Internal Revenue Service Atlanta, GA 39901 | $36,500 | 2005 | | 1/15/06 | | $9,600 | Quarterly | $30,000 | 12/31/05 |
| TOTAL | | $36,500 | | | | | $6,500 | | $30,000 | |

## SCHEDULE L
### Accounts & Notes Payable

| DESCRIPTION | ACCOUNT/NOTE HOLDER ADDRESS/PHONE | AMOUNT | ORIGINAL NOTE TERMS DATE | TERM | DUE | RATE | PAYMENTS AMOUNT | FREQ | CURRENT BALANCE AMOUNT | DATE | TYPE OF COLLATERAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan | Wachovia Securities | $991,980 | 03/01/03 | None | Demand | Variable | None | | $0 | 04/20/03 | Margin Account |
| TOTAL | | $991,980 | | | | | $0 | | $0 | | |

## SCHEDULE M
### Loans on Life Insurance

| POLICY NUMBER | INSURANCE COMPANY | AMOUNT | ORIGINAL NOTE TERMS DATE | TERM | DUE | RATE | PAYMENTS AMOUNT | FREQ | CURRENT BALANCE AMOUNT | DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | | $0 | | | | | $0 | | $0 | |

## SCHEDULE N
### Mortgages on Personal Real Estate

| DESCRIPTION | MORTGAGE HOLDER ADDRESS | AMOUNT | ORIGINAL LOAN TERMS DATE | TERM | DUE | RATE | PAYMENTS AMOUNT | FREQ | CURRENT BALANCE AMOUNT | DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | | | | | | | $0 | | $0 | |

BA 000077

**SCHEDULE P**
Mortgages on Investment Real Estate

12/31/05

| DESCRIPTION | MORTGAGE HOLDER ADDRESS | PAYMENTS AMOUNT | FREQ | CURRENT BALANCE AMOUNT | DATE | OWNERSHIP INTEREST SHARE | VALUE | STATUS |
|---|---|---|---|---|---|---|---|---|
| Sandpiper | Wachovia Securities Bethesda Md | $34,934 | Monthly | $4,538,541 | 12/31/05 | 99.50% | $4,515,848 | Current |
| Autumn Hills | Wachovia Securities Bethesda Md | $44,876 | Monthly | $5,830,152 | 12/31/05 | 99.50% | $5,801,001 | Current |
| Park Bridge | Wachovia Securities Bethesda Md | $45,115 | Monthly | $5,861,200 | 12/31/05 | 99.50% | $5,831,894 | Current |
| Summerdale I | Midland Mortgage / Atlanta Housing Authority | $19,688 Monthly / $0 | | $2,316,118 12/31/05 / $2,208,000 12/31/05 | | 0.0085% / 0.0085% | $197 | Current |
| Summerdale II | Midland Mortgage / Clearwater Fl | $15,375 Monthly / $0 | | $1,888,095 12/31/05 / $1,773,000 12/31/05 | | 0.0085% / 0.0085% | $160 | Current |
| Colonial Square | GMAC | $42,849 | Monthly | $5,751,228 | 12/31/05 | 0.01% | $575 | Current |
| Dawnville Meadows | Continental Wingate | $25,397 | Monthly | $3,524,914 | 12/31/05 | 0.005% | $176 | Current |
| Valley Hill | Continental Wingate | $13,895 | Monthly | $2,366,883 | 12/31/05 | 0.005% | $118 | Current |
| Springfield Crossing | Continental Wingate | $19,221 | Monthly | $2,619,550 | 12/31/05 | 0.005% | $131 | Current |
| Windsor Senior | Georgia Housing and Finance Authority | $7,739 | Monthly | $2,350,763 | 12/31/05 | 0.005% | $118 | Current |
| Victory Crossing | US Dept of HUD | $53,114 | Monthly | $6,460,985 | 12/31/05 | 0.005% | $323 | Current |
| Pateville Estates | Georgia Housing and Finance Authority | $5,127 | Monthly | $2,000,000 | 12/31/05 | 0.005% | $100 | Current |
| Parkway Overlook | Prudential Huntoon Paige | $77,500 | Monthly | $13,327,048 | 12/31/05 | 0.005% | $866 | Current |
| Renaissance on Kentucky | Bank of America | $0 | | $0 | 12/31/05 | 0.005% | $0 | Not Closed |
| Park Row | Bank of America | $0 | | $0 | 12/31/05 | 0.005% | $0 | Not Closed |
| Creekside | Bank of America | $0 | | $0 | 12/31/05 | 0.005% | $0 | Not Closed |
| Nicholasville Greens | Bank of America | $0 | | $0 | 12/31/05 | 0.005% | $0 | Not Closed |
| Pennyrile | Bank of America | $0 | | $0 | 12/31/05 | 0.005% | $0 | Not Closed |
| Franklin Place | Bank of America | $0 | | $0 | 12/31/05 | 0.005% | $0 | Not Closed |
| Hackett Crossing | Wachovia Bank | $4,500 | Monthly | $300,543 | 12/31/05 | 50.00% | $150,272 | Current |
| TOTAL | | $410,310 | | $63,122,020 | | | $16,391,580 | |

**SCHEDULE Q**
**Other Liabilities**                                    12/31/05

| DESCRIPTION | AMOUNT | CREDIT HOLDER ADDRESS, PHONE |
|---|---|---|
| American Express | 1795 | |
| Discover | 52 | |
| Wachovia Visa Card | 1568 | |
| Bank of America Visa | 519 | |
| LL Bean & Macys Visa | 0 | |
| Miscellaneous | 0 | |
| **TOTAL** | **3934** | |

BA 000078

SCHEDULE R
Sources of Income for Previous Year

12/31/05

| DESCRIPTION | SOURCE | AMOUNT |
|---|---|---|
| SALARY | CMSI | $156,000 |
| | CMSI Bonus | $0 |
| | SUBTOTAL | $156,000 |
| INTEREST | Omni Mortgage | $0 |
| | Bank of America Checking | $80 |
| | Wachovia Checking | $118 |
| | Bank of America MMF | $5,329 |
| | Wachovia MMF | $5,799 |
| | Wachovia Securities | $564 |
| DIVIDENDS | Wachovia Securities | $212,265 |
| | Alliance Mutual Fund | $340 |
| | MIT Mutual Fund | $488 |
| | Liberty Mutual Fund | $165 |
| CAPITAL GAINS | Alliance Mutual Fund | $0 |
| | MIT Mutual Fund | $0 |
| | Liberty Mutual Fund | $0 |
| | Wachovia Securities | $8,542 |
| | SUBTOTAL | $234,270 |
| IRA & PENSION | Inherited IRA | $20,000 |
| OTHER | Georgia Income Tax Refund | $7,036 |
| | SUBTOTAL | $27,036 |

| BUSINESS INCOME | |
|---|---|
| 2745 Hapeville Rd Partners GP Fees | $0 |
| Summerdale Advisors GP Fees | $0 |
| Colonial Square Associates GP Fees | $100 |
| Whitfield Comm Housing LLC GP Fees | $0 |
| Muscogee Comm Housing LLC GP Fees | $5,700 |
| Riverdale Community Housing GP Fees | $2,250 |
| Thomasville Community Housing GP Fees | $0 |
| Victory Community Housing GP Fees | $0 |
| Cordele Community Housing GP Fees | $0 |
| Anacostia Community Housing GP Fees | $0 |
| Warren County Community Hsg GP Fees | $0 |
| Bowling Green Community Hsg GP Fees | $0 |
| Nichdasville Community Housing GP Fees | $0 |
| Jessamine Community Housing GP Fees | $0 |
| Princeton Community Housing GP Fees | $0 |
| Hopkinsville Community Housing GP Fees | $0 |
| Multifamily Housing Developers LLC | $0 |
| Ironwood Group Inc | $9,274 |
| Kentucky 5 Development LLC | $0 |
| Anacostia Development | $42,000 |
| Ironwood Development | $0 |
| Omni Mortgage Lenders | $0 |
| Atin Construction | $0 |
| SUBTOTAL | $59,324 |

BA 000079

**BA 000080**

1/27/103

SCHEDULE 5
Contingent Liabilities

| PROPERTY NAME | LOCATION (City, State) | # Units | Operating Deficit Guaranty MAX $ | Beneficiary | Expiration date | Construction L___ Beneficiary | MAX $ | Tax Credit (s) Requires cash outlay for deposit Beneficiary | MAX $ | Developer Fee Notes Partnership Beneficiary | Shortfall MAX $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Summerlake Phase 1 | Atlanta, GA | 136 | $ 100,000 | Summerlake Partners, LP | Dec-04 | | | Boston Capital Tax Credit Fund VII | $ 4,076,832 | Summerlake Partners, L.P. | $ 697,020 |
| Summerlake Phase 2 | Atlanta, GA | 108 | $ 300,000 | Summerlake Partners, L.P. I | May-05 | | | Boston Capital Tax Credit Fund X | $ 2,917,235 | Summerlake Partners, L.P. II | $ 453,892 |
| Colonial Square | Atlanta, GA | 192 | No Limit | Colonial Partners, LP | 2014 | | | | $ 4,194,412 | Colonial Partners, L.P. | $ 21,853 |
| Dronville Meadows | Dalton, GA | 120 | expired | Dalton Plaza Apartments, LP | Nov-05 | | | | $ 4,392,257 | Dalton Plaza Apartments, LP | $ 632,846 |
| Surbarbled Crossing | Columbus, GA | 120 | $ 300,000 | Surbarbled Crossing Apartments, LP | Oct-06 | | | | $ 5,570,548 | Surbarbled Crossing Apartments, LP | $ - |
| Valley Hill Senior | Riverdale, GA | 72 | $ 250,000 | Valley Hill Apartments, LP | Jul-06 | | | | $ 2,304,258 | Valley Hill Apartments, LP | $ 21,776 |
| Windsor Lake | Thomasville, GA | 72 | $ 200,000 | Windsor Senior Apartments, LP | May-07 | | | | $ 2,352,208 | Windsor Senior Apartments, LP | $ - |
| Victory Crossing | Columbus, GA | 172 | | Victory Crossing Apartments, LP | | | | | | Victory Crossing Apartments, LP | |
| Palmetto Estates | Oakdale, GA | 76 | | Palmetto Estates Apartments, LP | | | | | | Palmetto Estates Apartments, LP | |
| Remillsburg on KY | Bowling Green, KY | 110 | | The Renaissance Apts on Ky, LP | | Bank of America | $ 3,543,596 | | | The Renaissance Apts on Ky, LP | |
| Park Row | Bowling Green, KY | 40 | | Park Row Senior Apartments, LP | | Bank of America | $ 1,541,721 | | | Park Row Senior Apartments, LP | |
| Creekside | Lexington, KY | 40 | | Creekside Senior Apartments, LP | | Bank of America | $ 1,105,596 | | | Creekside Senior Apartments, LP | |
| Nicholasville Greens | Lexington, KY | 16 | | Nicholasville Greens, LP | | Bank of America | $ 641,532 | | | Nicholasville Greens, LP | |
| Franklin Place | Princeton, KY | 32 | | Franklin Place Senior Apts, LP | | Bank of America | $ 791,504 | | | Franklin Place Senior Apts, LP | |
| Perryville | Hopkinsville, KY | 35 | | Perryville Senior Apartments, LP | | Bank of America | $ 533,000 | | | Perryville Senior Apartments, LP | |
| | | | | | | | | | | | |
| TOTAL | | | $1,150,000 | | | | $8,159,979 | | $25,579,696 | | $916,863 |

Pending Litigation

| ADVERSARY | ESTIMATED EXPOSURE | CURRENT STATUS |
|---|---|---|
| Nightshand Development Corporation v. Vincent J. Siciliano Realty, Corp., Boston Constructy Associates, Vincent Co., And Batley Johnson | $1,250,000 | registered corporation in Maryland is Pending. Motion to dismiss due to statute of limitations is pending. Extended discovery has been ordered. |
| Haslie Development and Sales Landley v. w/m Construction, Robert Wallace, Vincent Murphy | $300,000 | Claim for failure to complete construction contract guaranteed by defendants. Counterclaim for fraud and theft of proceeds claimed. Discovery is pending. |
| Dalton Plaza v. Dalton Plaza, Vincent Murphy and Mark Evans, Alfred Vincent Murphy, Vincent Murphy, CPA | $120,000 | Claim for currency is defined a subcontractor. Reversible ruling in arbitration. Motion to dismiss for ins pendens filed. Motion for change of venue filed. Motion to dismiss opposing attorney fled. |
| Name of Motor | $100,000 | Claim for loan from an attorney to pay his own legal fees.  Mediation ordered.  Discovery Pending. |
| | | |
| TOTAL | $1,770,000 | |

```
:PRSPAGE1~
COLQG
:PRSPAGE2~
COPQG
:PRSPAGE3~G
:PRSPAGE4~G
:PRSPAGE5~G
:PRSPAGE6~G
:PRSPAGE7~G
:PRSPAGE8~
COLQG
:PRSPAGE9~G
:PRSPAGE10~
COPQG
:PRSPAGE11~G
:PRSPAGE12~
COLQG
:PRSPAGE13~G
:PRSPAGE14~G
:PRSPAGE15~G
:PRSPAGE16~
COPQG
:PRSPAGE17~G
(GOTO)PS:A1~
```

BA 000081

# EXHIBIT H

Deed Book 33444 Pg  364
Filed and Recorded Nov-04-2002 09:05am
2002-0321513
Real Estate Transfer Tax $592.88
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

FLORENCE, ROBINSON & BENNETT, LLP
5565 GLENRIDGE CONNECTOR, 486-A
ATLANTA, GA 30342  (404) 256-7171
02-744-F

## JOINT TENANCY WITH SURVIVORSHIP WARRANTY DEED

**STATE OF GEORGIA,**
**COUNTY OF FULTON**

This Indenture made this 16th day of October, in the year Two Thousand Two, between HJH/MILTON, LLC of the County of FULTON, State of GEORGIA, as party or parties of the first part, hereinafter called Grantor, and M. VINCENT MURPHY, III and MARILYN W. MURPHY, as joint tenants with survivorship and not as tenants in common as parties of the second part, hereinafter called Grantees (the words "Grantor" and "Grantees" to include their respective heirs, successors and assigns where the context requires or permits).

W I T N E S S E T H that: Grantor, for and in consideration of the sum of TEN AND 00/100'S ($10.00) Dollars and other good and valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipts whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantees, as joint tenants and not as tenants in common, for and during their joint lives, and upon the death of either of them, then to the survivor of them, in fee simple, together with every contingent remainder and right of reversion, and to the heirs and assigns of said survivor, the following described property:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 847 OF THE 1ST DISTRICT, 2ND SECTION, FULTON COUNTY, GEORGIA RECORDS, BEING LOT 60, THE PALISADES AT MILTON PARK, UNIT ONE, PHASE ONE, AS PER PLAT RECORDED IN PLAT BOOK 229, PAGES 67-68, FULTON COUNTY, GEORGIA RECORDS, SAID PLAT IS INCORPORATED HEREIN BY REFERENCE; BEING PROPERTY KNOWN AS 410 SOCIARTY STREET, ALPHARETTA, GEORGIA.

THIS CONVEYANCE is made subject to all zoning ordinances, easements and restrictions of record effecting said bargained premises.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantees, as joint tenants and not as tenants in common, for and during their joint lives, and upon the death of either of them, then to the survivor of them in FEE SIMPLE, together with every contingent remainder and right of reversion, and to the heirs and assigns of said survivor.

THIS CONVEYANCE is made pursuant to Official Code of Georgia Section 44-6-18, and it is the intention of the parties hereto to hereby create in Grantees a joint tenancy estate with right of survivorship and not as tenants in common.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantees against the claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has hereunto set grantor's hand and seal this day and year first above written.

Signed, sealed and delivered in the presence of:

_____                                    _____ (Seal)
Witness                                                     HJH/MILTON, LLC

_____   10-16-02                         _____ (Seal)
Notary Public
My commission expires:

# EXHIBIT I

Deed Book 44707 Pg 112
Filed and Recorded Mar-27-2007 01:22pm
2007-0088862
Real Estate Transfer Tax $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Return, After Recording to:
ATTN C. Terry Blanton
Suite 700, 400 Northridge Road
Atlanta, Georgia 30030

# QUIT-CLAIM DEED

**STATE OF GEORGIA**                               **COUNTY OF FULTON**

**THIS INDENTURE**, Made this _March 23, 2007_ , by and between:

**M. VINCENT MURPHY, III**, of State of Georgia  as party or parties of the first part, hereinafter called GRANTOR, and

**MARILYN W. MURPHY**, as party or parties of the second part, hereinafter called GRANTEE (the words "GRANTOR" and "GRANTEE" to include their respective heirs, successors, transferees and assigns where the context requires or permits).

Recitals: That GRANTOR, for and in consideration of the sum of ONE DOLLAR, and LOVE AND AFFECTION, and OTHER VALUABLE CONSIDERATION-($1.00) Dollar in hand paid at and before the sealing and delivery of these presents, the receipt of which is hereby acknowledged, has bargained, sold and quit-claimed; and by these presents does bargain, sell, remise, and forever quit-claim to the said GRANTEE, and said GRANTEE'S heirs and assigns, all the right, title, interest, claim or demand which the Grantor has or may have in and to:

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 847, of the 1st District, 2nd Section, Fulton County, Georgia, and being known as Lot 60, The Palisades at Milton Park, Unit One, Phase One, as per plat of survey thereof recorded in Plat Book 229, pages 87-88, Fulton County Georgia public deed records, said Plat being incorporated herein by reference thereto; and being improved property also known as 410 Society Street, Alpharetta, Georgia.

Without limiting the generality of the foregoing, this instrument is intended to convey whatever, if any, right, title or interest the Grantors



Deed Book 44707 Pg   113
Cathelene  Robinson
Clerk of Superior Court
Fulton County, Georgia

herein may have in certain real property, known as _____ **410 Society Street, Alpharetta, Fulton County, Georgia.**

**TO HAVE AND TO HOLD** the said premises unto the said GRANTEE, so that neither the said GRANTOR, nor any person or persons claiming under GRANTOR shall at any time, claim or demand any right, title or interest to the aforesaid described premises or its appurtenances.

**IN WITNESS WHEREOF**, the GRANTOR has signed and sealed this deed, the day and year first above written.

Signed, Sealed and Delivered on the
date shown above, in the presence of:

_____          _____ [Seal]
Unofficial Witness                        M. Vincent Murphy, III

_____
Notary Public:
My Commission expires:  1/21/08

[Notary seal: SUSAN M HOUGH  MY COMMISSION EXPIRES  JAN 21 2008  FORSYTH CO. GA.  NOTARY PUBLIC]

# EXHIBIT J



Page 1 of 3    08/17/10
GA    0005148218104



800-11-01-00 17011  0 C 001 09    50 002
MICHAEL VINCENT MURPHY
410 SOCIETY ST
ALPHARETTA GA   30022-1583

# Your account statement
For 08/17/2010

## Contact us

 BBT.com

(800) BANK-BBT or
(800) 226-5228

## LIMITED TIME OFFER: We've just lowered Home Equity Loan Rates!*

### Put your home's equity to work for you!

**Benefits of a BB&T Home Equity Loan:**
- Predictable monthly payments
- Fixed rates that are the lowest in years
- Peace of mind knowing that your loan will be paid off on a certain date
- Potential tax benefits**
- Closing costs paid by BB&T†
- No origination fee ‡

**A BB&T Home Equity Loan is also great for:**
- Consolidating high interest debt
- Making home improvements
- Purchasing a new car
- Managing planned expenses

### To find out more about our low rates, stop by your local BB&T financial center or visit BBT.com today. **ACT NOW – these low rates won't last long!**

*Loans subject to credit approval.  **Consult your tax advisor regarding interest deductibility.  †BB&T will pay up to $250 in closing costs for applications received. The only exceptions will be the costs associated with title insurance or a full outside appraisal (these items typically not required for loans less than $250,000), or any intangible, county, or state taxes. If you close your BB&T Home Equity Line of Credit within 36 months from the date of loan origination, you may be required to remit the closing costs that BB&T paid on your behalf. ‡The standard 1% origination fee for a home equity loan will be waived if the client possesses a Beacon Score of 700 or greater and is approved for a loan of $15,000 or more with a term of 10 years or less.

Loans and deposit products offered through Branch Banking and Trust Company.  ⌂ Equal Housing Lender. Member FDIC.

### ▪ ELITE GOLD-MM (PRIVATE ELITE) 0005148218104

**Account summary**

| | |
|---|---|
| Your previous balance as of 07/16/2010 | $15,519.74 |
| Checks | - 8,765.38 |
| Other withdrawals, debits and service charges | - 10,459.87 |
| Deposits, credits and interest | + 4,156.54 |
| Your new balance as of 08/17/2010 | = $451.03 |

**Interest summary**

| | |
|---|---|
| Interest paid this statement period | $0.13 |
| 2010 interest paid year-to-date | $0.94 |
| Interest rate | 0.02% |
| Annual percentage yield (APY) earned | 0.02% |



**Checks**

| DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT($) |
|------|---------|-----------|------|---------|-----------|------|---------|-----------|
| 07/19 | 5089~ | | 07/26 | 5092 | 1,604.00 | 08/02 | 5095~ | |
| 07/19 | 5090 | 39.39 | 07/26 | 5093~ | | 08/02 | 5096 | 59.95 |
| 07/26 | 5091 | 62.04 | 07/23 | 5094 | 5,000.00 | 08/02 | 5097 | - 2,000.00 |
| | | | | | | **Total checks** | | **= $8,765.38** |

~ Indicates an electronically converted check. See "Other withdrawals, debits and service charges"

**Other withdrawals, debits and service charges**

| DATE | DESCRIPTION | AMOUNT($) |
|------|-------------|-----------|
| 07/19 | CONVERTED CHECK - ARC CHECKPAYMT AT&T SERVICES 05089 5089 | 58.91 |
| 07/26 | CONVERTED CHECK - ARC ARC PMT  AMERICAN EXPRESS 05093 5093 | 79.89 |
| 08/02 | CONVERTED CHECK - ARC CHECKPAYMT WELLSFARGO CARD 05095 5095 | 10,321.07 |
| | Total other withdrawals, debits and service charges | = $10,459.87 |

**Deposits, credits and interest**

| DATE | DESCRIPTION | AMOUNT($) |
|------|-------------|-----------|
| 07/21 | DEPOSIT | 2,039.35 |
| 07/22 | DEPOSIT | 689.21 |
| 08/04 | DEPOSIT | 1,427.85 |
| 08/17 | INTEREST PAYMENT | 0.13 |
| | Total deposits, credits and interest | = $4,156.54 |



Page 1 of 3    06/16/10
GA    0005148218104



800-11-01-00 17011  0 C 001 09   50 002
MICHAEL VINCENT MURPHY
410 SOCIETY ST
ALPHARETTA GA  30022-1583

# Your account statement
For 06/16/2010

## Contact us

 BBT.com

 (800) BANK-BBT or
(800) 226-5228

---

### PaperLESS is MORE with BB&T Online Statements

BB&T offers a way for you to get your monthly statement information online - no paper included! In comparison to paper statements, Online Statements are:
- **More Secure:** Keeping your statements out of your mailbox reduces your risk of identity theft.
- **More Accessible:** BB&T will save up to 24 months of history online, and you can also save your statements to your PC.
- **More Convenient:** Sign up for statement alerts and you'll be notified immediately when your statement is ready to view.
- **More Environmentally Friendly:** Zero trees are used in the creation of online statements.

Visit BBT.com/paperless to turn off your paper statements today!

---

■ ELITE GOLD-MM (PRIVATE ELITE) 0005148218104

**Account summary**

| | |
|---|---|
| Your previous balance as of 05/14/2010 | $8,453.08 |
| Checks | - 18,038.69 |
| Other withdrawals, debits and service charges | - 2,118.84 |
| Deposits, credits and interest | + 26,582.91 |
| Your new balance as of 06/16/2010 | = $14,878.46 |

**Interest summary**

| | |
|---|---|
| Interest paid this statement period | $0.21 |
| 2010 interest paid year-to-date | $0.56 |
| Interest rate | 0.02% |
| Annual percentage yield (APY) earned | 0.02% |

**Checks**

| DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT($) |
|---|---|---|---|---|---|---|---|---|
| 05/25 | 5071– | | 06/08 | 5074 | 56.49 | 06/10 | 5077 | 17,100.00 |
| 06/01 | 5072– | | 06/10 | 5075 | 177.00 | 06/09 | 5078 | 500.00 |
| 06/09 | 5073 | 145.25 | 06/10 | 5076 | 59.95 | | | |
| | | | | | | Total checks | | = $18,038.69 |

– Indicates an electronically converted check. See "Other withdrawals, debits and service charges"

**Other withdrawals, debits and service charges**

| DATE | DESCRIPTION | AMOUNT($) |
|---|---|---|
| 05/25 | CONVERTED CHECK - ARC ARC PMT   AMERICAN EXPRESS 05071 5071 | -1,154.85 |
| 06/01 | CONVERTED CHECK - ARC CHECKPAYMT WELLSFARGO CARD 05072 5072 | 963.99 |
| | Total other withdrawals, debits and service charges | = $2,118.84 |

**Deposits, credits and interest**

| DATE | DESCRIPTION | AMOUNT($) |
|---|---|---|
| 05/24 | DEPOSIT | 2,504.00 |
| 05/26 | DEPOSIT | 2,039.35 |
| 06/08 | DEPOSIT | 20,000.00 |

*continued*

001066

■ ELITE GOLD-MM 0005148218104 (continued)

| DATE | DESCRIPTION | AMOUNT($) |
|---|---|---|
| 06/09 | DEPOSIT | 2,039.35 |
| 06/16 | INTEREST PAYMENT | 0.21 |
| Total deposits, credits and interest | | = $26,582.91 |



Page 1 of 3     05/14/10
GA     0005148218104


**BB&T**

800-11-01-00 17011  0 C 001 09    S0 002
MICHAEL VINCENT MURPHY
410 SOCIETY ST
ALPHARETTA GA  30022-1583

# Your account statement
For 05/14/2010

## Contact us

 BBT.com

 (800) BANK-BBT or
(800) 226-5228

---

### PaperLESS Is MORE with BB&T Online Statements

BB&T offers a way for you to get your monthly statement information online - no paper included! In comparison to paper statements, Online Statements are:

- **More Secure:** Keeping your statements out of your mailbox reduces your risk of identity theft.
- **More Accessible:** BB&T will save up to 24 months of history online, and you can also save your statements to your PC.
- **More Convenient:** Sign up for statement alerts and you'll be notified immediately when your statement is ready to view.
- **More Environmentally Friendly:** Zero trees are used in the creation of online statements.

Visit BBT.com/paperless to turn off your paper statements today!

---

■ **ELITE GOLD-MM (PRIVATE ELITE) 0005148218104**

**Account summary**

| | |
|---|---|
| Your previous balance as of 04/16/2010 | $5,948.75 |
| Checks | - 1,154.46 |
| Other withdrawals, debits and service charges | - 2,445.42 |
| Deposits, credits and interest | + 6,104.21 |
| Your new balance as of 05/14/2010 | = $8,453.08 |

**Interest summary**

| | |
|---|---|
| Interest paid this statement period | $0.11 |
| 2010 interest paid year-to-date | $0.35 |
| Interest rate | 0.02% |
| Annual percentage yield (APY) earned | 0.02% |

**Checks**

| DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT($) |
|---|---|---|---|---|---|---|---|---|
| 04/23 | 5061 | 59.00 | 04/20 | 5065~ | | 04/28 | *5069~ | |
| 04/19 | *5063~ | | 04/20 | 5066 | 876.33 | 05/13 | 5070 | 59.00 |
| 04/19 | 5064 | 160.13 | 04/22 | 5067~ | | | | |

* Indicates a skip in sequential check numbers above this item     **Total checks      = $1,154.46**
~ Indicates an electronically converted check. See "Other withdrawals, debits and service charges"

**Other withdrawals, debits and service charges**

| DATE | DESCRIPTION | AMOUNT($) |
|---|---|---|
| 04/19 | CONVERTED CHECK - ARC CHECKPAYMT AT&T SERVICES 05063 5063 | 57.74 |
| 04/20 | CONVERTED CHECK - ARC CHECK PYMT USAA P&C PREMIUM 5065 5065 | 24.76 |
| 04/21 | 8006587727 5107 AMBODYWORK XXXXXXXXXXXC614 | 350.00 |
| 04/22 | CONVERTED CHECK - ARC PAYMENTS  DISCOVER ARC 5067 5067 | 125.25 |
| 04/28 | CONVERTED CHECK - ARC ARC PMT  AMERICAN EXPRESS 05069 5069 | 1,887.67 |
| | Total other withdrawals, debits and service charges | = $2,445.42 |

- ELITE GOLD-MM 0005148218104 (continued)

**Deposits, credits and interest**

| DATE | DESCRIPTION | AMOUNT($) |
|------|-------------|-----------|
| 04/23 | DEPOSIT | 5,000.00 |
| /29 | DEPOSIT | 1,104.10 |
| 14 | INTEREST PAYMENT | 0.11 |
| Total deposits, credits and interest | | = $6,104.21 |



Page 1 of 4    04/16/10
GA      0005148218104



**BB&T**

800-11-01-00 17011  0 C 001 09   50 002
MICHAEL VINCENT MURPHY
410 SOCIETY ST
ALPHARETTA GA   30022-1583

# Your account statement

For 04/16/2010

## Contact us

 BBT.com

 (800) BANK-BBT or
(800) 226-5228

---

### Overdraft Changes for Debit Card and ATM Usage Require Your Attention

**Beginning August 15, 2010, in accordance with federal regulations imposed on all financial institutions, BB&T will no longer be allowed to consider authorizing and paying everyday or one-time debit card transactions (such as gas, grocery, and other debit card purchases) and ATM withdrawals that overdraw your account - unless you have instructed us to do so.[1]**

What happens if you do not instruct BB&T to continue to consider authorizing and paying everyday debit card transactions and ATM withdrawals that overdraw your account? Beginning August 15, 2010, any everyday debit card transaction or ATM withdrawal that would overdraw your account will be declined at merchant or ATM locations, and you will not be able to complete your debit card purchase or ATM withdrawal.

To learn more or to participate in BB&T's overdraft review process for everyday debit card transactions and ATM withdrawals that overdraw your account:

- Call 1-800-BANK BBT (1-800-226-5228) and select option 1, then 6
- Visit BBT.com/overdraftchanges
- Stop by your local BB&T financial center

If you notify us any time prior to July 1, 2010, your decision will become effective on July 1.  After July 1, your decision will be effective the following business day.

Our goal is for you to minimize - and hopefully avoid - overdrafts and associated fees. Your BB&T relationship manager can provide details about the many options available to help you avoid fees, including overdraft protection[2] and account monitoring services.

Please review the enclosed notice on the last page of your statement, required by Federal Law, which contains information about BB&T's overdraft practices. We look forward to hearing from you, and encourage you to let us know if you have any questions about these upcoming changes.

[1]BB&T pays overdrafts at our discretion, and has the right to not pay any item.  BB&T will pay these items based on your account history, spending patterns and other factors.
[2]Subject to credit approval.

---

### ■ ELITE GOLD-MM (PRIVATE ELITE) 0005148218104

#### Account summary

| | |
|---|---|
| Your previous balance as of 03/16/2010 | $9,167.30 |
| Checks | - 5,594.43 |
| Other withdrawals, debits and service charges | - 936.53 |
| Deposits, credits and interest | + 3,312.41 |
| Your new balance as of 04/16/2010 | = $5,948.75 |

#### Interest summary

| | |
|---|---|
| Interest paid this statement period | $0.11 |
| 2010 Interest paid year-to-date | $0.24 |
| Interest rate | 0.02% |
| Annual percentage yield (APY) earned | 0.02% |

Checks

| DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT($) |
|------|---------|-----------|------|---------|-----------|------|---------|-----------|
| 03/18 | 5050 | 362.21 | 03/26 | 5054 | 259.04 | 04/07 | 5058 | 1,000.00 |
| 03/22 | 5051 | 2,734.03 | 03/29 | 5055~ | | 04/09 | 5059 | 77.52 |
| 03/23 | 5052~ | | 03/30 | 5056 | 439.60 | 04/13 | 5060 | 525.00 |
| | 5053 | 62.03 | 04/05 | 5057~ | | 04/12 | *5062 | 135.00 |
| | | | | | | Total checks | | = $5,594.43 |

* indicates a skip in sequential check numbers above this item
~ indicates an electronically converted check. See "Other withdrawals, debits and service charges"

Other withdrawals, debits and service charges

| DATE | DESCRIPTION | AMOUNT($) |
|------|-------------|-----------|
| 03/23 | CONVERTED CHECK – ARC PAYMENTS   DISCOVER ARC 5052 5052 | 291.87 |
| 03/29 | CONVERTED CHECK – ARC ARC PMT   AMERICAN EXPRESS 05055 5055 | 612.05 |
| 04/05 | CONVERTED CHECK – ARC CREDITCARD BARCLAY CARD U5 5057 5057 | 32.61 |
| Total other withdrawals, debits and service charges | | = $936.53 |

Deposits, credits and interest

| DATE | DESCRIPTION | AMOUNT($) |
|------|-------------|-----------|
| 03/18 | DEPOSIT | 1,104.10 |
| 03/31 | DEPOSIT | 1,104.10 |
| 04/15 | DEPOSIT | 1,104.10 |
| 04/16 | INTEREST PAYMENT | 0.11 |
| Total deposits, credits and interest | | = $3,312.41 |

## Important Information About BB&T's Overdraft Policy

Effective March 26, 2010, BB&T began limiting the number of overdraft fees charged for ATM and debit card transactions to a maximum of 4 per account per banking day. In addition, if the account is overdrawn by less than $5 per banking day, no overdraft charges from ATM and debit cards will apply.

If   are concerned about overdrafts and managing your account, a variety of services are available to you, including Mobile Banking, A    and Overdraft Protection.* Stop by your local BB&T financial center or visit BBT.com to learn more.

*Subject to credit approval.



Page 1 of 3    03/16/10
GA    0005148218104



800-11-01-00 17011  0 C 001 09    50 002
MICHAEL VINCENT MURPHY
410 SOCIETY ST
ALPHARETTA GA   30022-1583

# Your account statement
For 03/16/2010

## Contact us

 BBT.com

 (800) BANK-BBT or (800) 226-5228

## Get your tax refund quicker!

BB&T offers you several easy options for preparing 2009 taxes using the best-selling, #1-rated TurboTax®. Plus, get your refund in as few as 8 days when you e-file and use direct deposit. Visit BBT.com/TurboTaxEasy. It's easy to prepare, print and e-file. File now!

## ■ ELITE GOLD-MM (PRIVATE ELITE) 0005148218104

### Account summary

| | |
|---|---|
| Your previous balance as of 04/15/2009 | $0.00 |
| Checks | - 875.34 |
| Other withdrawals, debits and service charges | - 1,061.59 |
| Deposits, credits and interest | + 11,104.23 |
| Your new balance as of 03/16/2010 | = $9,167.30 |

### Interest summary

| | |
|---|---|
| Interest paid this statement period | $0.13 |
| 2010 interest paid year-to-date | $0.13 |
| Interest rate | 0.02% |
| Annual percentage yield (APY) earned | 0.02% |

### Checks

| DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT($) | DATE | CHECK # | AMOUNT($) |
|---|---|---|---|---|---|---|---|---|
| 02/22 | 5041 | 62.03 | 03/02 | 5044~ | | 03/12 | 5047 | 77.52 |
| 02/25 | 5042 | 627.83 | 03/05 | 5045~ | | 03/09 | 5048 | 59.00 |
| 03/01 | 5043~ | | 03/01 | 5046 | 48.96 | 03/15 | 5049~ | |
| | | | | | | **Total checks** | | = $875.34 |

~ Indicates an electronically converted check. See "Other withdrawals, debits and service charges"

### Other withdrawals, debits and service charges

| DATE | DESCRIPTION | AMOUNT($) |
|---|---|---|
| 03/01 | CONVERTED CHECK - ARC ARC PMT   AMERICAN EXPRESS 05043 5043 | 856.12 |
| 03/02 | CONVERTED CHECK - ARC CREDITCARD BARCLAY CARD US 5044 5044 | 20.23 |
| 03/05 | CONVERTED CHECK - ARC CREDITCARD BARCLAY CARD US 5045 5045 | 132.90 |
| 03/15 | CONVERTED CHECK - ARC CHECKPAYMT AT&T SERVICES 05049 5049 | 52.34 |
| Total other withdrawals, debits and service charges | | = $1,061.59 |

### Deposits, credits and interest

| DATE | DESCRIPTION | AMOUNT($) |
|---|---|---|
| 02/18 | COUNTER DEPOSIT | 10,000.00 |
| 03/04 | DEPOSIT | 1,104.10 |
| 03/16 | INTEREST PAYMENT | 0.13 |
| Total deposits, credits and interest | | = $11,104.23 |

## AMENDMENT TO BANK SERVICES AGREEMENT

Effective February 27, 2010 the following changes will be made to the Bank Services Agreement:

In the section entitled, FUNDS AVAILABILITY, under subsection, LONGER DELAYS MAY APPLY, the sentence in the first paragraph that reads, "Depending on the type of check that you deposit, funds may not be available until the fifth business day after the day of your sit" is hereby amended to read, "Depending on the type of check that you deposit, funds may not be available until the *second* business day after the day of your deposit."

In addition, the sentence in the last paragraph of this subsection that reads, "They generally will be available no later than the eleventh business day after the day of your deposit" is hereby amended to read, "They generally will be available no later than the *seventh* business day after the day of your deposit."

# EXHIBIT K

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

FILED IN OFFICE

JAN 0 9 2008

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

MARILYN WILCOX MURPHY,          )
                                )
          Plaintiff,            )          CIVIL ACTION
                                )
vs.                             )          FILE NO. 2007-CV-143096
                                )
MICHAEL VINCENT MURPHY,         )
                                )
          Defendant.            )

## FINAL JUDGMENT AND DECREE OF DIVORCE

Upon consideration of this case upon evidence submitted as provided by law, it is the judgment of the Court that a total divorce be granted, that is to say a divorce a vinculo matrimonii, between the parties to the above-stated case, upon legal principles.

And it is considered, ordered and decreed by the Court that the marriage contract heretofore entered into between the parties to this case, from and after this date, be and is set aside and dissolved as fully and effectually as if no such contract had ever been made or entered into, and

Plaintiff and Defendant, formerly husband and wife, in the future shall be held and considered as separate and distinct persons altogether unconnected by any nuptial union or civil contract, whatsoever, and both shall have the right to remarry.

The Agreement between the parties dated November 16, 2007, is approved in its entirety and incorporated into this Final Judgment and Decree as if fully set forth herein. Plaintiff and Defendant are ordered to comply with each and every term and provision of said Agreement and this Final Judgment and Decree.

Said Agreement between the parties dated November 16, 2007, shall not be filed of record in the within action. In the event there is ever any action instituted to enforce any of the terms or

be admitted into evidence in connection therewith.  The filing of such document in any such procedure shall be deemed nunc pro tunc or retroactive to this date.

The Judgment and Decree entered and signed in open court this the ___9th___ day of January, 2008, costs taxed against Plaintiff.

_____
JUDGE CYNTHIA D. WRIGHT, FULTON
SUPERIOR COURT, ATLANTA JUDICIAL
CIRCUIT

Presented By:

_____
EDWARD E. BATES, JR.
Attorney for Plaintiff
Ga. Bar #041900
Warner, Mayoue, Bates & Nolen, P.C.
Riverwood 100 Building
Suite 2300
Atlanta, Georgia  30339
770/951-2700

# EXHIBIT L



**KAREN HANDEL**
Secretary of State

**OFFICE OF SECRETARY OF STATE**
**CORPORATIONS DIVISION**
315 West Tower, #2 Martin Luther King, Jr. Drive
Atlanta, Georgia 30334-1530
(404) 656-2817
Registered agent, officer, entity status information via the Internet
http://www.georgiacorporations.org

**TRANSMITTAL INFORMATION**
**GEORGIA LIMITED LIABILITY COMPANY**

**IMPORTANT**

**Remember to include your e-mail address when completing this transmittal form.**

Providing your e-mail address allows us to notify you via e-mail when we receive your filing and when we take action on your filing.   Please enter your e-mail address on the line below. Thank you.

E-Mail: vince@comgtsvc.com

NOTICE TO APPLICANT: PRINT PLAINLY OR TYPE REMAINDER OF THIS FORM

| 1. | 136547,17 |
| --- | --- |
| | LLC Name Reservation Number (if one has been obtained; if articles are being filed without prior reservation, leave this line blank) |
| | Gazebo Park Apartments of Acworth LLC |
| | LLC Name (List exactly as it appears in articles) |

| 2. | M. Vincent Murphy | | 770 594-5220 |
| --- | --- | --- | --- |
| | Name of person filing articles (certificate will be mailed to this person, at address below) | | Telephone Number |
| | 5755 North Point Parkway, Suite 67 | | |
| | Address | | |
| | Alpharetta | GA | 30022 |
| | City | State | Zip Code |

| 3. | 5755 North Point Parkway, Suite 67 | | |
| --- | --- | --- | --- |
| | Principal Office Mailing Address of LLC  (Unlike registered office address, this may be a post office box) | | |
| | Alpharetta | GA | 30022 |
| | City | State | Zip Code |

| 4. | M Vincent Murphy | | | |
| --- | --- | --- | --- | --- |
| | Name of LLC's Registered Agent in Georgia | | | |
| | 5755 North Point Parkway, suite 67 | | | |
| | Registered Office Street Address of LLC in Georgia  (Post office box or mail drop not acceptable for registered office address) | | | |
| | Alpharetta | Fulton | GA | 30022 |
| | City | County | State | Zip Code |

| 5. | Name and Address of each organizer   (Attach additional sheets if necessary) | | | | |
| --- | --- | --- | --- | --- | --- |
| | M. Vincent Murphy | 5755 North Point Parkway, Ste. 67 | Alpharetta, Ga. 30022 | | |
| | Organizer | Address | City | State | Zip Code |
| | | | | | |
| | Organizer | Address | City | State | Zip Code |

| 6. | Mail or deliver the following items to the Secretary of State, at the above address:<br>1)   This transmittal form<br>2)   Original and one copy of the Articles of Organization<br>3)   Filing fee of $100.00 payable to Secretary of State.  Filing fees are NON-refundable. |
| --- | --- |

Authorized Signature                          2-22-07

Member, Manager, Organizer or Attorney-in-fact (Circle one)                 Date

Request certificates and obtain entity information via the Internet: http://www.georgiacorporations.org

FORM 231

Control No. **07025413**

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 315 West Tower
### #2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia  30334-1530

# CERTIFICATE
# OF
# ORGANIZATION

I, **Karen C Handel**, the Secretary of State and the Corporations Commissioner of the State of Georgia, hereby certify under the seal of my office that

## GAZEBO PARK APARTMENTS OF ACWORTH, LLC
### a Domestic Limited Liability Company

has been duly organized under the laws of the State of Georgia on  **03/09/2007** by the filing of articles of organization in the Office of the Secretary of State and by the paying of fees as provided by Title 14 of the Official Code of Georgia Annotated.

WITNESS my hand and official seal of the City of Atlanta and the State of Georgia on March 9, 2007



Karen C Handel
Secretary of State

# EXHIBIT M

Control No: 07026413
Date Filed: 03/09/2007 12:00 AM
Karen C Handel
Secretary of State

Articles of Organization
Of
Gazebo Park Apartments of Acworth, LLC

Article 1.

The name of the limited liability company is Gazebo Park Apartments of Acworth, LLC

Article 2.

Management of the limited liability company is vested in one or more managers whose names and addresses are as follows:

. Marilyn W. Murphy
5755 North Point Parkway, Suite 67
Alpharetta, GA 30022

IN WITNESS WHEREOF, the undersigned has executed these Articles of Organization.

This ___8___ day of ___March___, 2007. *Marilyn Murphy*
*Managing Member*

State of Georgia
Creation - Domestic Entity 2 Page(s)



T0707403608

# EXHIBIT N



**STATE OF GEORGIA**

**2008 Limited Liability Company Annual Registration**

Control No: 07025413
Date Filed: 02/13/2008 01:47 PM
Karen C Handel
Secretary of State

OFFICE OF SECRETARY OF STATE
Annual Registration Filings
P.O. Box 23038
Columbus, Georgia 31902-3038

Karen C Handel
Secretary of State

**Entity Control No.** 07025413          **Information on record as of:** 2/13/2008

GAZEBO PARK APARTMENTS OF ACWORTH, LLC
5755 NORTH POINT PARKWAY`, Suite 67
Alpharetta GA, 30022

Amount due from this entity is indicated below. Annual fee is $30. If amount is more than $30, total reflects amount(s) due from previous year(s). **Renew by April 1, 2008**

Renew at www.georgiacorporations.org or by submitting bottom portion with check payable to "Secretary of State".

Information currently on record is listed below. Please verify "county of registered office." If correct and complete, detach bottom portion, sign, and return with payment. Or, enter changes as needed and submit. Please PRINT LEGIBLY.

**Note:** Agent address must be street address in Georgia where the agent may be served personally. A mail drop or P.O. Box does not comply with Georgia law for registered office. P.O. Box may be used for principal office.

Any person authorized by the entity to do so may sign and file registration (including online filing).

Please return ONLY the original form below and fee. Other filings and correspondence should be sent to our Atlanta address: Corporations Division, 315 West Tower, #2 Martin Luther King Jr. Drive, Atlanta, GA 30334.

Visit www.georgiacorporations.org to file online or for more information on annual registration. Or, call 404-656-2817.

**Current information printed below. Review and update as needed. Detach original coupon and return with payment.**

| LIMITED LIABILITY COMPANY NAME | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|
| GAZEBO PARK APARTMENTS OF ACWORTH, LLC | 5755 NORTH POINT PARKWAY, STE. 67 | Alpharetta | GA | 30022 |
| AGT: Murphy, M. VINCENT | 5755 NORTH POINT PARKWAY SUITE 67 | Alpharetta | GA | 30022 |

**IF ABOVE INFORMATION HAS CHANGED, TYPE OR PRINT CORRECTIONS BELOW:**

| LLC Addr: | 5755 NORTH POINT PARKWAY`, Suite 67 | | Alpharetta | GA | 30022 |
|---|---|---|---|---|---|
| | | P.O. BOX NOT ACCEPTABLE | | | |
| AGT: | | | | GA | |

| I CERTIFY THAT I AM AUTHORIZED TO SIGN THIS FORM AND THAT THE INFORMATION IS TRUE AND CORRECT. | COUNTY OF REGISTERED OFFICE: | COUNTY CHANGE OR CORRECTION: |
|---|---|---|
| AUTHORIZED SIGNATURE:M Vincent Murphy          DATE:    2/13/2008 | Fulton | |
| TITLE:    Filer | | |

BR245 2008 Limited Liability Company Annual Registration          Amount Due: **$30.00**

082 070254131 0030004 GAZEBOPARKAPA

# EXHIBIT O



**STATE OF GEORGIA**

**2009 Corporation Annual Registration**

Control No. K408125
Date Filed: 02/11/2009 09:18 AM
Karen C Handel
Secretary of State

Karen C Handel
Secretary of State

OFFICE OF SECRETARY OF STATE
Annual Registration Filings
P.O. Box 23038
Columbus, Georgia 31902-3038

Entity Control No. K408125

Information on record as of: 2/11/2009

COMMUNITY MANAGEMENT SERVICES, INC.
2100 The Equitable Building, 100 Peachtree Street
Atlanta GA, 30303-1912

Amount due from this entity is indicated below. Annual fee is $30. If amount is more than $30, total reflects amount(s) due from previous year(s). **Renew by April 1, 2009**

Renew at www.georgiacorporations.org or by submitting bottom portion with check payable to "Secretary of State".

Officer, address and agent information currently of record is listed below. Please verify "county of registered office." If correct and complete, detach bottom portion, sign, and return with payment. Or, enter changes as needed and submit. Complete each line, even if the same individual serves as Chief Executive Officer, Chief Financial Officer and Secretary of the corporation. Please PRINT LEGIBLY.

**Note:** Agent address must be a street address in Georgia where the agent may be served personally. A mail drop or P.O. Box does not comply with Georgia law for registered office. P.O. Box may be used for principal office and officers.

Any person authorized by the entity to do so may sign and file registration (including online filing).

Please return ONLY the original form below and fee. Other filings and correspondence should be sent to our Atlanta address: Corporations Division, 315 West Tower, #2 Martin Luther King Jr. Drive, Atlanta, GA 30334.

Visit www.georgiacorporations.org to file online or for more information on annual registration. Or, call 404-656-2817.

**Current information printed below. Review and update as needed. Detach original coupon and return with payment.**

| CORPORATION NAME | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|
| COMMUNITY MANAGEMENT SERVICES, INC. | 5755 North Point Parkway Suite 67 | Alpharetta | GA | 30022 |
| CEO: M Vincent Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| CFO: M Vincent Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| SEC: Marilyn Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| AGT: M VINCENT MURPHY | 5755 North Point Parkway | Alpharetta | GA | 30022 |

IF ABOVE INFORMATION HAS CHANGED, TYPE OR PRINT CORRECTIONS BELOW:

| | | | | |
|---|---|---|---|---|
| Corporation Addr: 2100 The Equitable Building, 100 Peachtree Street | | Atlanta | GA | 30303 |
| CEO: | | | | |
| CFO: | | | | |
| SEC: Vincent Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| AGT: Stanley Kreimer | 2100 The Equitable Building P.O. BOX NOT ACCEPTABLE | Atlanta | GA | 30303 |

| I CERTIFY THAT I AM AUTHORIZED TO SIGN THIS FORM AND THAT THE INFORMATION IS TRUE AND CORRECT. | | COUNTY OF REGISTERED OFFICE: | COUNTY CHANGE OR CORRECTION: |
|---|---|---|---|
| AUTHORIZED SIGNATURE: M Vincent Murphy | DATE: 2/11/2009 | Fulton | Fulton |
| TITLE: Filer | | | |

BR203 2009 Corporation Annual Registration

Amount Due: **$60.00**

091 K408125¼4 006D007 COMMUNITYMANA

# EXHIBIT P

Control No: 07025413
Date Filed: 01/21/2010 04:04 PM
Wesley B. Tailor
Deputy Secretary of State

## STATE OF GEORGIA
### 2010 Limited Liability Company Annual Registration

OFFICE OF SECRETARY OF STATE
Annual Registration Filings
P.O. Box 23038
Columbus, Georgia 31902-3038

**Wesley B. Tailor**
Secretary of State

**Chauncey Newsome**
Director

### Information on record as of: 1/21/2010

**Entity Control No. 07025413**        **Amount Due: $30.00**        **Amount Due *AFTER* April 1, 2010: $55.00**

GAZEBO PARK APARTMENTS OF ACWORTH, LLC
5755 NORTH POINT PARKWAY`
Suite 67
Alpharetta GA, 30022

**Each business entity registered or filed with the Office of Secretary of State is required to file an annual registration.** Amount due for this entity is indicated above and below on the remittance form. Annual fee is $30. If amount is more than $30, the total reflects amount(s) due from previous year(s) and any applicable late fees(s). **Renew by April 1, 2010.** Your Annual Registration must be postmarked by April 1, 2010. If your registration and payment are not postmarked by April 1, 2010, you will be assessed a $25.00 late filing penalty fee.

For faster processing, we invite you to file your Annual Registration online with a credit card at www.georgiacorporations.org. The Corporations Division accepts Visa, MC, Discover, American Express and ATM/Debit Cards with the Visa or MC logo for online filings only. Annual Registrations not processed online require payment with a check, certified bank check or money order. **We cannot accept cash for payment.**

You may mail your registration in by submitting the bottom portion of this remittance with a check or money order payable to "Secretary of State". **All checks must be pre-printed with a complete address in order to be accepted by our offices for your filing. Absolutely, no counter or starter checks will be accepted. Failure to adhere to these guidelines will delay or possibly reject your filing.** Checks that are dishonored by your bank are subject to a $30.00 NSF charge. Failure to honor your payment could result in a civil suit filed against you and/or your entity may be Administratively Dissolved by the Secretary of State. [See O.C.G.A. § 13-6-15 and Title 14, respectively.]

Registered Agent information currently of record is listed below. Please verify "county of registered office." If correct and complete, detach bottom portion, sign, and return with payment. Or, enter changes as needed and submit.

**Note: Registered Agent address must be a street address in Georgia where the agent may be served personally. A mail drop or P.O. Box does not comply with Georgia law for registered office. P.O. Boxes may be used for principal office and officers' addresses.**

Any person authorized by the entity to do so may sign and file registration (including online filing). Additionally, a person who signs a document submits an electronic filing he or she knows is false in any material respect with the intent that the document be delivered to the Secretary of State for filing shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished to the highest degree permissible by law. [O.C.G.A. § 14-2-129.]

Please return ONLY the original form below and applicable fee(s). For more information on Annual Registrations or to file online, visit www.georgiacorporations.org.   Or, call 404-656-2817. **PLEASE PRINT LEGIBLY.**

⋯⋯⋯⋯ Current information printed below. Review and update as needed. Detach original coupon and return with payment. ⋯⋯⋯⋯

| LIMITED LIABILITY COMPANY NAME | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|
| GAZEBO PARK APARTMENTS OF ACWORTH, LLC | 5755 NORTH POINT PARKWAY Suite 67 | Alpharetta | GA | 30022 |
| AGT:    AFFORDABLE REALTY MANAGEMENT I, | 5755 North Point Parkway Suite 67 | Alpharetta | GA | 30022 |

| IF ABOVE INFORMATION HAS CHANGED, TYPE OR PRINT CORRECTIONS BELOW: | | | | |
|---|---|---|---|---|
| Limited Liability Company Address: | | | | |
| | | | | |
| AGT: | | | GA | |

| I CERTIFY THAT I AM AUTHORIZED TO SIGN THIS FORM AND THAT THE INFORMATION IS TRUE AND CORRECT. | P O  BOX NOT ACCEPTABLE FOR REGISTERED AGENT'S ADDRESS | COUNTY OF REGISTERED OFFICE: | COUNTY CHANGE OR CORRECTION: |
|---|---|---|---|
| AUTHORIZED SIGNATURE: Affordable Realty Management Inc     DATE: 1/21/2010 | | | **Total Due:** |
| TITLE:    Filer | EMAIL: | | **$30.00** |

BR234 2010 Limited Liability Company Annual Registration

108 070254131 0030004 GAZEBOPARKAP▮▮▮     20100401     $30.00

# EXHIBIT Q

Control No. **07084615**

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 315 West Tower
### #2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

# CERTIFICATE
# OF
# INCORPORATION

I, **Karen C Handel**, the Secretary of State and the Corporations Commissioner of the State of Georgia, hereby certify under the seal of my office that

## AFFORDABLE REALTY MANAGEMENT
## INCORPORATED
### a Domestic Profit Corporation

has been duly incorporated under the laws of the State of Georgia on **10/01/2007** by the filing of articles of incorporation in the Office of the Secretary of State and by the paying of fees as provided by Title 14 of the Official Code of Georgia Annotated.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on October 1, 2007



Karen C Handel
Secretary of State



Control No: 07084615
Date Filed: 10/01/2007 08:00 AM
Karen C Handel
Secretary of State

## ARTICLES OF INCORPORATION OF

## AFFORDABLE REALTY MANAGEMENT, INC.

### ARTICLE I

The name of the corporation is Affordable Realty Management, Inc.

### ARTICLE II

The total number of shares of stock, which the corporation has authority to issue, is One Thousand (1,000) shares of capital stock, all of which shall be designated as "Common Stock". Shares of the Common Stock shall have unlimited voting rights and shall be entitled to receive all of the net assets of the corporation upon liquidation or dissolution.

### ARTICLE III

The initial registered office of the corporation is 5755 North Point Parkway, Suite 67, Alpharetta, Georgia, 30022, and the initial registered agent for the corporation at such address is M. Vincent Murphy.

### ARTICLE IV

The incorporator is Stan Kreimer, Jr., 2100 The Equitable Building, 100 Peachtree Street, N.W., Atlanta, Fulton County, Georgia 30303.

### ARTICLE V

The mailing address of the initial principal office of the corporation is 5755 North Point Parkway, Suite 67, Alpharetta, Georgia, 30022.

### ARTICLE VI

The initial Board of Directors shall consist of 2 members, whose names and addresses are as follows:

M. Vincent Murphy
5755 North Point Parkway
Suite 67
Alpharetta, Georgia, 30022

Marilyn W. Murphy
5755 North Point Parkway
Suite 67
Alpharetta, Georgia, 30022

State of Georgia
Creation - Domestic Entity 3 Page(s)



T0727803626

## ARTICLE VII

A director of the corporation shall not be personally liable to the corporation or its stockholders for monetary damages for any breach of fiduciary duty as a director, except for liability (i) for any appropriation, in violation of his duties, of any business opportunity of the corporation, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) for the types of liability set forth in O.C.G.A. § 14-2-832, or (iv) for any transaction from which the director derived an improper personal benefit.

**IN WITNESS WHEREOF,** the undersigned does hereby execute these Articles of Incorporation.

**Stan Kreimer, Jr.,** Incorporator

2007 OCT -1   AM 11: 24
SECRETARY OF STATE
CORPORATIONS DIVISION



**KAREN HANDEL**
Secretary of State

**OFFICE OF SECRETARY OF STATE**
**CORPORATIONS DIVISION**
315 West Tower, #2 Martin Luther King, Jr. Drive
Atlanta, Georgia 30334-1530
(404) 656-2817
Registered agent, officer, entity status information via the Internet
http://www.georgiacorporations.org

**TRANSMITTAL INFORMATION**
**GEORGIA PROFIT OR NONPROFIT CORPORATIONS**

---

### IMPORTANT
**Remember to include your e-mail address when completing this transmittal form.**

Providing your e-mail address allows us to notify you via e-mail when we receive your filing and when we take action on your filing.   Please enter your e-mail address on the line below. Thank you.

E-Mail: amy@johnsonward.com

---

NOTICE TO APPLICANT: PRINT PLAINLY OR TYPE REMAINDER OF THIS FORM

---

1. 1611700

Corporate Name Reservation Number (if one has been obtained; if articles are being filed without prior reservation, leave this line blank)

**Affordable Realty Management, Inc.**

Corporate Name (List *exactly* as it appears in articles)

2. Stan Kreimer, Jr.        404-524-5626

Name of person filing articles (certificate will be mailed to this person, at address below)     Telephone Number

2100 The Equitable Building, 100 Peachtree Street, NW

Address

| Atlanta | GA | 30303 |
|---------|-----|-------|
| City | State | Zip Code |

3.

Mail or deliver the following items to the Secretary of State, at the above address:

1) This transmittal form
2) Original and one copy of the Articles of Incorporation
3) Filing fee of $100.00 payable to Secretary of State.  Filing fees are NON-refundable.

I certify that a Notice of Incorporation or Notice of Intent to Incorporate with a publication fee of $40.00 has been or will be mailed or delivered to the official organ of the county where the initial registered office of the corporation is to be located.  (List of legal organs is posted at web site; or, the Clerk of Superior Court can advise you of the official organ in a particular county.)

_____     9/27/07
Authorized signature of person filing documents       Date

**Request certificates and obtain entity information via the Internet: http://www.georgiacorporations.org**

# EXHIBIT R



Control No: 07084615
Date Filed: 02/13/2008 01:59 PM
Karen C Handel
Secretary of State

# STATE OF GEORGIA
## 2008 Corporation Annual Registration

**OFFICE OF SECRETARY OF STATE**
Annual Registration Filings
P.O. Box 23038
Columbus, Georgia 31902-3038

Karen C Handel
Secretary of State

**Entity Control No.** 07084615          **Information on record as of:** 2/13/2008

AFFORDABLE REALTY MANAGEMENT
INCORPORATED
5755 North Point Parkway
Suite 67
Alpharetta, GA 30022

Amount due from this entity is indicated below. Annual fee is $30. If amount is more than $30, total reflects amount(s) due from previous year(s). **Renew by April 1, 2008**

Renew at www.georgiacorporations.org or by submitting bottom portion with check payable to "Secretary of State".

Officer, address and agent information currently of record is listed below. Please verify "county of registered office." If correct and complete, detach bottom portion, sign, and return with payment. Or, enter changes as needed and submit. Complete each line, even if the same individual serves as Chief Executive Officer, Chief Financial Officer and Secretary of the corporation. Please PRINT LEGIBLY.

**Note:** Agent address must be a street address in Georgia where the agent may be served personally. A mail drop or P.O. Box does not comply with Georgia law for registered office. P.O. Box may be used for principal office and officers.

Any person authorized by the entity to do so may sign and file registration (including online filing).

Please return ONLY the original form below and fee. Other filings and correspondence should be sent to our Atlanta address: Corporations Division, 315 West Tower, #2 Martin Luther King Jr. Drive, Atlanta, GA 30334.

Visit www.georgiacorporations.org to file online or for more information on annual registration. Or, call 404-656-2817.

**Current information printed below. Review and update as needed. Detach original coupon and return with payment.**

| CORPORATION NAME | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|
| AFFORDABLE REALTY MANAGEMENT INCORPORATED | 5755 North Point Parkway Suite 67 | Alpharetta | GA | 30022 |
| CEO: | | | | |
| CFO: | | | | |
| SEC: | | | | |
| AGT:    M. VINCENT MURPHY | 5755 North Point Parkway | Alpharetta | GA | 30022 |

**IF ABOVE INFORMATION HAS CHANGED, TYPE OR PRINT CORRECTIONS BELOW:**

| | | | | |
|---|---|---|---|---|
| Corporation Addr: | | | | |
| CEO:   M Vincent Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| CFO:   Marilyn W Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| SEC:   Marilyn W Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| AGT:   M Vincent Murphy | 5755 Northpoint Parkway    P.O. BOX NOT ACCEPTABLE | Alpharetta | GA | 30022 |

| I CERTIFY THAT I AM AUTHORIZED TO SIGN THIS FORM AND THAT THE INFORMATION IS TRUE AND CORRECT. | COUNTY OF REGISTERED OFFICE: | COUNTY CHANGE OR CORRECTION: |
|---|---|---|
| AUTHORIZED SIGNATURE: M Vincent Murphy          DATE: 2/13/2008 | | Fulton |
| TITLE:    Filer | | |

BR203 2008 Corporation Annual Registration

Amount Due: **$60.00**

082 070846154 0060007 AFFORDABLER

# EXHIBIT S



Control No: 07084615
Date Filed: 02/06/2009 03:27 PM
Karen C Handel
Secretary of State

## STATE OF GEORGIA
## 2009 Corporation Annual Registration

### OFFICE OF SECRETARY OF STATE
Annual Registration Filings
P.O. Box 23038
Columbus, Georgia 31902-3038

Karen C Handel
Secretary of State

**Entity Control No.** 07084615          **Information on record as of:** 2/6/2009

AFFORDABLE REALTY MANAGEMENT
INCORPORATED
5755 North Point Parkway
Suite 67
~~Alpharetta, GA 30022~~

Amount due from this entity is indicated below. Annual fee is $30. If amount is more than $30, total reflects amount(s) due from previous year(s). **Renew by April 1, 2009**

Renew at www.georgiacorporations.org or by submitting bottom portion with check payable to "Secretary of State".

Officer, address and agent information currently of record is listed below. Please verify "county of registered office." If correct and complete, detach bottom portion, sign, and return with payment. Or, enter changes as needed and submit. Complete each line, even if the same individual serves as Chief Executive Officer, Chief Financial Officer and Secretary of the corporation. Please PRINT LEGIBLY.

**Note:** Agent address must be a street address in Georgia where the agent may be served personally. A mail drop or P.O. Box does not comply with Georgia law for registered office. P.O. Box may be used for principal office and officers.

Any person authorized by the entity to do so may sign and file registration (including online filing).

Please return ONLY the original form below and fee. Other filings and correspondence should be sent to our Atlanta address: Corporations Division, 315 West Tower, #2 Martin Luther King Jr. Drive, Atlanta, GA 30334.

Visit www.georgiacorporations.org to file online or for more information on annual registration. Or, call 404-656-2817.

**Current information printed below. Review and update as needed. Detach original coupon and return with payment.**

| CORPORATION NAME | | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| AFFORDABLE REALTY MANAGEMENT INCORPORATED | | 5755 North Point Parkway Suite 67 | Alpharetta | GA | 30022 |
| CEO: | M Vincent Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| CFO: | Marilyn W Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| SEC: | Marilyn W Murphy | 5755 North Point Parkway, Suite 67 | Alpharetta | GA | 30022 |
| AGT: | M. VINCENT MURPHY | 5755 Northpoint Parkway | Alphretta | GA | 30022 |

**IF ABOVE INFORMATION HAS CHANGED, TYPE OR PRINT CORRECTIONS BELOW:**

| Corporation Addr: | | | | |
|---|---|---|---|---|
| CEO: | | | | |
| CFO: | | | | |
| SEC: | | | | |
| AGT: | P O BOX NOT ACCEPTABLE | | | GA |

| I CERTIFY THAT I AM AUTHORIZED TO SIGN THIS FORM AND THAT THE INFORMATION IS TRUE AND CORRECT. | COUNTY OF REGISTERED OFFICE: | COUNTY CHANGE OR CORRECTION: |
|---|---|---|
| AUTHORIZED SIGNATURE: M Vincent Murphy          DATE: 2/6/2009 3 | Fulton | |
| TITLE:    Filer | | |

BR203 2009 Corporation Annual Registration          Amount Due: **$30.00**

091 070846154 0030004 AFFORDABLERE

# EXHIBIT T

## SECURED PROMISSORY NOTE

$986,000.00                                                    Alpharetta, Georgia

                                                              March 29, 2010

     FOR FUNDS ($440,000) TO BE RECEIVED ON March 30th 2010, the undersigned, **M. PATRICK CARROLL,** a individual resident of the State of Georgia with a residence and mailing address of 1444 Etowah Dr. Atlanta GA 30319 (hereinafter referred to as "Maker") promises and agrees to pay to the order of **MULTIFAMILY HOUSING DEVELOPERS, LLC,** an Georgia limited liability company with a mailing address of 410 Society Street, Alpharetta, Georgia 30022 ("Holder"), the aggregate principal sum of **NINE HUNDRED EIGHTY-SIX THOUSAND AND NO/100 DOLLARS ($986,000.00),** in lawful money of the United States of America. Interest on the unpaid balance of the principal due under this Note shall accrue at the rate of EIGHT PERCENT (8%) percent per annum. This Note shall be paid on the following terms:

     1.    Maker shall pay Holder equal monthly installment payments of principal and interest in the sum of TWENTY FOUR THOUSAND SEVENTY ONE AND 14/100ths Dollars ($24,071.14) per month payable on the 1st day of June, 2010, and on the 1st day of each of the next FORTY-SEVEN (47) succeeding and consecutive months. (Per Amortization Schedule Attached)The monthly payments shall be paid via automatic debit to an account designated by Holder, and if no account is designated or if the designated account closes for any reason, then said payments shall be mailed to Holder at the address above, until such time as Holder provides Maker with new account information in which case payments by automatic debit shall promptly resume. All payments shall be applied first to accrued and unpaid interest and then to the outstanding principal balance. Unless sooner paid, all principal and accrued but unpaid interest shall be due and payable in full on March 1, 2014, (the "Maturity Date"), TIME BEING OF THE ESSENCE.

     2.    Except as otherwise provided herein, Maker shall have the right at any time and from time to time to prepay this Note, in whole or in part, without penalty or premium. Prepayments shall include all accrued but unpaid interest to date. Partial prepayments shall not change the due date of the Note or the amount of each payment as required in the Note unless the Holder agrees in writing to those changes.



3.      This Promissory Note is secured by (a) a Security Agreement by Maker; (b) Guaranty Agreements by Carroll Property Management, LLC, Carroll Property Holdings, LLC, P. Carroll Properties, LLC, Carroll Organization, LLC and Affordable Realty Management, Inc. in favor of Holder; and (c) a Security Agreement by Carroll Property Management, LLC, Carroll Property Holdings, LLC, P. Carroll Properties, LLC, Carroll Organization, LLC and Affordable Realty Management, Inc.. in favor of Holder; all of which have been executed of even date herewith.

4.      The following events shall constitute an "Event of Default" hereunder: (a) the failure of Maker to make a payment due under this Note within three days following the due date; (b) the filing by Maker of a voluntary petition of bankruptcy, or a voluntary petition of or answer seeking reorganization, arrangement, or readjustment of its debts, or any other relief under any applicable bankruptcy laws or insolvency laws, state, federal, or other, of any jurisdiction, now or hereafter existing, or by agreement by Maker indicating consent to, approval or acquiescence in any such petition or proceeding; (c) the application by Maker or the consent or acquiescence of either Maker in the appointment of a receiver or trustee for all or a substantial part of his assets; (d) the making by Maker of a general assignment for the benefit of creditors; (e) the filing of an involuntary petition against Maker seeking reorganization, arrangement or readjustment of its debts or for any other relief under any applicable bankruptcy laws or insolvency laws, state, federal, or other, of any jurisdiction, now or hereafter existing, or the involuntary appointment of a receiver or trustee of Maker for all or a substantial part of its assets, or the issuance of a warrant of attachment or execution of similar process against a substantial part of the assets or property of Maker and the continuance of such for sixty (60) days undismissed or undischarged; or (f) Maker fails to perform or breaches any covenant, agreement or undertaking in any instruments or documents securing this Promissory Note. Commencing on the date of an Event of Default hereunder, regardless of whether or not there has been an acceleration of the indebtedness evidenced hereby, interest shall accrue at the rate of twelve percent (12%) per annum on the daily outstanding principal balance of this Promissory Note, such interest being due and payable together with and in the same manner as installment payments as hereinabove provided, except that, if not sooner due and payable, all such interest shall be paid at the time of and as a conditional precedent to the curing of any such Event of Default. Upon the occurrence of an Event of Default hereunder at the option of Holder or any assignee or holder of this Promissory Note and without demand, presentation, or notice of any kind, any and all of the indebtedness represented by this Promissory Note may be declared and thereupon immediately shall mature and become due and payable, and Holder may exercise any rights available to the Holder by operation of law. Maker waives the rights of demand, presentment, dishonor, protest and notice of dishonor In the event this

Promissory Note, or any part thereof, is collected by or through an attorney-at-law, Makers agree, jointly and severally, to pay all actual costs and expenses of collection, including, but not limited to, reasonable attorneys' fees and expenses but not to exceed limitations imposed by applicable law.

5.      No failure to accelerate the debt evidenced hereby by reason of an Event of Default hereunder, acceptance of a past due installment, or indulgences granted from time to time shall be construed (i) as a novation of this Promissory Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of Holder thereafter to insist upon strict compliance with the terms of this Promissory Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the State of Georgia; and Maker hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing.  No extension of the time for the payment of this Promissory Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Promissory Note, shall operate to release, discharge, modify, change, or affect the original liability of Maker under this Promissory Note, either in whole or in part unless Holder agrees otherwise in writing.  This Promissory Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought.

6.      Maker hereby waives and renounces for itself, himself, his successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided, or which may hereinafter be provided for by the laws of the United States of America and of any state thereof, both as to himself and in and to all of their property, real and personal, against the enforcement and collection of the obligations evidenced by this Promissory Note.

7.      This Promissory Note is intended as a contract under and shall be construed and enforceable in accordance with the laws of the State of Georgia.

8.      The unenforceability or invalidity of any provision of this Promissory Note shall not affect the enforceability or validity or any other provision herein.

9.    Wherever any notice or other communication is required or permitted hereunder, such notice or other communication shall be in writing and shall be delivered by hand, by nationally-recognized overnight express delivery service or by U.S. registered or certified mail, return receipt requested, postage prepaid, to the addresses of Maker and Holder set forth in the first paragraph of this Promissory Note.

10.    As used herein, the terms "Maker" and "Holder" shall be deemed to include their respective heirs, successors, administrators, executors, legal representatives, and assigns, whether by voluntary action of the parties or by operation of law; provided, however, that Maker shall not be permitted to transfer or assign this Promissory Note or any of its rights or obligations hereunder, by operation of law or otherwise (including, without limitation, in the context of the sale of all or substantially all of the assets or equity ownership interests in Carroll Property Management, LLC, Carroll Property Holdings, LLC, P. Carroll Properties, LLC, Hediger Enterprises, Inc., Carroll Organization, LLC or Affordable Realty Management, Inc.) without the prior written consent of Holder.

**IN WITNESS WHEREOF**, Maker has executed this Promissory Note under seal on the date first above written.

"MAKER":

By: _____ (SEAL)
M. Patrick Carroll, individually

Personally appeared before me 3/29/10.
Margaret M. Hiers

Witnessed by: