## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ALLIANT TAX CREDIT FUND 31-A, LTD., a Florida limited partnership et al.** )<br>)<br>)<br>)<br>) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action File No.:** |
| **v.** ) | **1:11-CV-0832-RWS** |
| ) | |
| **M. VINCENT MURPHY, III et al.** )<br>)<br>) | |
| **Defendants.** ) | |

## BRIEF IN SUPPORT OF PLAINTIFFS'
## MOTION TO COMPEL DISCOVERY
## FROM DEFENDANT MARILYN MURPHY

## I. INTRODUCTION

This is a fraudulent conveyance action arising from a multitude of transactions through which Defendant Vincent Murphy ("Vince") rid himself of substantial assets, including valuable business interests, in order to avoid liability under certain guaranty agreements. Vince effectuated all of the conveyances at issue during the time that the Plaintiffs in this case (collectively, "Alliant") were seeking and obtaining a judgment against him in Kentucky for breaching the guaranty agreements. Several of the conveyances at issue involve Vince's now ex-

wife, Marilyn Murphy ("Marilyn"). Specifically, Alliant alleges that Vince's conveyance of his interest in the Murphys' marital residence to Marilyn on March 23, 2007, just after Vince breached the guaranty agreements, was fraudulent. (Pls.' Compl. ¶¶ 42-45.)  In addition, Alliant contends that that the assets transferred to Marilyn as a result of the divorce were transferred with the intent to hinder and delay Alliant. (*Id.* at ¶¶ 46-50.)[1]

Since this is a fraudulent conveyance action, the identity and value of the assets transferred by Vince to Marilyn are at the core of this case. This is not a slip-and-fall case in which the assets of the parties would not be at issue until a judgment hs been rendered. Yet Marilyn and her counsel continue to treat this case as such, objecting to producing any information or documents that would reflect that the assets at issue were transferred to her or the value of those assets, until the post-judgment phase. For example, Marilyn continues to refuse to produce a full and complete copy of the Settlement Agreement entered into by and between

---

[1] Alliant has also learned that Marilyn is a part owner in Defendant Gazebo Park Apartments of Acworth, LLC ("Gazebo"), a limited liability company that Vince helped to incorporate, that is owned by Marilyn and certain of their children, and to which Vince transferred a valuable apartment complex after Alliant's claims against him arose. In addition, Marilyn and certain of her children were former owners in Affordable Realty Management, Inc., a company Vince helped to create after Alliant's claims against him arose, which came into possession of apartment management contracts that were previously owned by a different company exclusively controlled by Vince.

Marilyn and Vince to resolve their divorce (the "Divorce Agreement"), which specifically identifies the very assets that Alliant contends were fraudulently transferred to her by Vince. As explained below, Marilyn's refusal to disgorge relevant and discoverable information and documents is patently improper and this Court should compel Marilyn to produce responsive discovery as well as award Alliant its attorneys' fees and costs incurred in filing this motion.

## II.  RELEVANT BACKGROUND

Alliant served upon Marilyn its First Requests for Production of Documents ("First RFP") and First Continuing Interrogatories ("First Rogs") (collectively, the "Requests"), on August 3, 2011. (Doc. No. 54.) Copies of the Requests are attached hereto as Exhibit A. Shortly after Alliant served the Requests, counsel for the parties stipulated that Marilyn would have until October 3, 2011 to provide responses to the Requests.

Despite being given 60 days to prepare responses to the Requests, Marilyn served responses upon Alliant that are woefully insufficient. Copies of Marilyn's responses to the Requests are attached hereto as Exhibit B. For example, notwithstanding the significant number of document requests served by Alliant, Marilyn – in conjunction with Gazebo which is also represented by the same counsel – produced only 188 pages of documents, the vast majority of which

consist of letters and e-mails exchanged between the counsel in this matter subsequent to the filing of this lawsuit. As part of this scant document production, Marilyn produced a redacted copy of the Divorce Agreement, which has been stripped of any information that would be pertinent to this suit.

On January 10, 2012, counsel for Alliant sent to counsel for Gazebo a letter specifically outlining the deficiencies of Gazebo's discovery responses, complete with citations to specific legal authority supporting the validity of its Requests. (*See* the Letter attached hereto as Exhibit C.) Rather than specifically address the issues raised by Alliant's January 10, 2012 letter, counsel for Marilyn sent to counsel for Alliant the letter attached hereto as Exhibit D, in which counsel states that Marilyn "find[s] discovery requests seeking documents pertaining to net worth, assets or income of either defendant [] to be objectionable, based on research performed some time ago." (*See* Ex. D.) Marilyn has never specified the "research" on which she relies.

On January 30, 2012, Marilyn served upon Alliant her Amended Responses to First Interrogatories of Plaintiff and its Amended Supplemental Responses to Plaintiff's First Requests for Production of Documents (collectively, the "Amended Responses"). Copies of the  Amended Responses are attached hereto as Exhibit E. While Marilyn's Amended Responses address some of her more egregiously non-

responsive answers, the Amended Responses do not address Marilyn's refusal to produce information and documents regarding the value and nature of the assets at issue in this case.

Upon receiving and reviewing the Amended Responses, counsel for Alliant e-mailed counsel for Marilyn to request a teleconference so that counsel could further confer regarding this discovery dispute in accordance with Fed. R. Civ. P. 37(a)(2)(A)(B). (*See* e-mail correspondence attached hereto as <u>Exhibit F</u>.) Counsel for Marilyn unequivocally refused to further confer regarding these discovery issues. *Id.* Marilyn has not sought a protective order regarding any of the information or documents she continues to withhold.

### III.  ARGUMENT AND CITATION TO AUTHORITIES

**A.    The General Legal Standards Governing this Motion to Compel**.

The Federal Rules of Civil Procedure allow "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."   Fed. R. Civ. P. 26. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Because of the broad construction given to discovery requests, a party objecting to discovery bears a heavy burden to show

why discovery should be denied. *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1102 (D. N.J. 1996) (citations omitted). "Broad-based, non-specific objections . . . fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request." *Id.* (citation omitted). A sufficient objection to an interrogatory or document request must state with specificity the objection and describe how the objection relates to the particular request or interrogatory being opposed. *Id. See also Burton Mechanical Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 233 (N.D. Ind. 1992) ("An objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence."). An objection stating that the interrogatory or request is "overly broad and burdensome" does not provide a sufficient basis for refusing to answer. *Harding*, 914 F. Supp. at 1102.

> To voice a successful objection to an interrogatory [the objecting party] cannot simply intone this familiar litany. Rather, [it] must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive. . . . The burden [is upon] the party resisting discovery to clarify and explain its objections and to provide support therefore.

*Id.* (citing *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); *Trabon Engineering Corp. v. Eaton Manufacturing Co.*, 37 F.R.D. 51, 54

(N.D. Ohio 1964)). Pursuant to Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure, if a party fails to answer interrogatories submitted under Rule 33 or fails to respond to document requests submitted under Rule 34, the discovering party may move for an order compelling an answer or production in accordance with the requests.

**B.    The Interrogatory Responses at Issue**.

It is Alliant's position that Marilyn's responses to Alliant's First Rogs 1, 3, 7, 8, 9, and 12 (half of Alliant's First Rogs) are deficient. In accordance with this Court's Local Rule 37.1, Alliant addresses each of these below by (1) quoting verbatim the interrogatory at issue, the response and (if applicable) the amended response; and then (2) identifying the deficiencies of the response at issue. For purposes of efficiency, Alliant addresses some of Marilyn's responses collectively where appropriate:

1. **<u>Interrogatory No. 1</u>**:  Identify all persons whom have knowledge of or information concerning any of the facts alleged in Plaintiffs' Complaint.  For each person identified, state the facts of which that person has knowledge or information.

   **<u>Response:</u>** M. Vincent Murphy, III, and his attorney, Stanley E. Kreimer, Esq., through whom he may be contacted through Mr. Kriemer. Ms. Marilyn Murphy, and her attorney, Shawn M. Winterich, through whom she may be contacted through Mr. Winterich. Both lay witnesses are knowledgeable in varying degrees about Defendant. Ms. Murphy's former divorce attorney has

knowledge about the Murphy divorce, but attorney-client communications arising from his representation of Ms. Murphy are subject to attorney-client privilege.

**Amended Response**: M. Vincent Murphy, III, and his attorney, Stanley E. Kreimer, Esq., through whom he may be contacted. Defendant presumes Vincent Murphy's knowledge about his marriage, his divorce, the distribution of marital estate arising from divorce and past and present financial holdings. Ms. Marilyn Murphy, and her attorney, Shawn M. Winterich, through whom she may be contacted. Marilyn Murphy possesses the same or similar information as Mr. Murphy, as shown above, except his post-divorce financial circumstances. Ms. Murphy's former divorce attorney has knowledge about the Murphy divorce, but attorney-client communications arising from his representation of Ms. Murphy are subject to attorney-client privilege. Defendant understands that Stanley Kreimer has represented Vincent Murphy for years.

Marilyn's response and amended response are insufficient. First, Marilyn lists Vince and his attorney, Stanley Kreimer, but fails to identify with any specificity the factual knowledge believed to be possessed Mr. Kreimer. More importantly, Marilyn fails to identify any of her children, some of whom are members of Defendant Gazebo Park Apartments of Acworth, LLC and, therefore, certainly have knowledge relevant to this matter, including knowledge relevant to Alliant's allegations regarding the transfer of the apartment complex to Gazebo. Finally, Marilyn fails to "identify" these people in accordance with the definition of that term as stated in Alliant's First Rogs, by providing all known contact

information. Surely Marilyn possesses contact information for her children. Alliant respectfully requests that this Court compel Marilyn to amend this response.

2. **Interrogatory No. 3**: Identify any and all oral or written communications between you and any other person or entity, which in any way reflect, refer to, or relate to the subject matter of the Complaint.

    **Response:** Defense counsel conferred about discovery from the Kentucky District lawsuit from which the judgments against Mr. Murphy arose, and civil procedure in this lawsuit. Defense counsel conferred with Plaintiff's counsel.

    **Amended Response:** (same)

This answer is non-responsive and insufficient. Alliant did not request Marilyn to identify communications by and between her counsel and other counsel. Rather, Alliant requested Marilyn to identify communications by and between Marilyn and other individuals or entities reflecting or referring to the matters alleged in the Complaint, which would pre-date this lawsuit. While it is difficult to imagine that no such written or oral communications exist, Marilyn has neither identified any such communications nor produced any such communications. Alliant respectfully requests that this Court compel Marilyn to amend this response.

3. **Interrogatory No. 7**: Identify any and all documents or information in your custody, possession, or control that demonstrate, support, or

can be construed to mean that Vincent Murphy did not effectuate the Marital Asset Transfer with the actual intent to defraud his creditors, including Plaintiffs.

**Response**: Respondent objects to this discovery request no. 7, as being neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Post-judgment information, i.e., inquiries pertaining to finances and assets is not discoverable.

**Amended Response**: (same)

4.  **Interrogatory No. 8**: Identify any and all documents or information in your custody, possession, or control that demonstrate, support, or can be construed to mean that Vincent Murphy did not effectuate the CMS Asset Transfer with the actual intent to defraud his creditors, including Plaintiffs.

**Response**: Respondent objects to this discovery request no. 8, as being neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Post-judgment information, i.e., inquiries pertaining to finances and assets is not discoverable.

**Amended Response**: (same)

5.  **Interrogatory No. 9**: Identify any and all documents or information in your custody, possession, or control that demonstrate, support, or can be construed to mean that Vincent Murphy did not effectuate the Park Bridge Asset Transfer with the actual intent to defraud his creditors, including Plaintiffs.

**Response**: Respondent objects to this discovery request no. 9, as being neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Post-judgment information, i.e., inquiries pertaining to finances and assets is not discoverable.

**Amended Response**: (same)

Marilyn's responses and objections to First Rogs 7, 8 and 9 are improper and nonresponsive.  The question of Vince's intent in effectuating the transfers at issue is one of the central issues to be determined by a jury in this matter. *See* O.C.G.A. § 18-2-74(a)(1). If Marilyn is in possession of documents or information that she intends to introduce to show that Vince did not effectuate these transfers with fraudulent intent, she must produce such information or documents.

Marilyn's objection that these interrogatories improperly request post-judgment information related to finances or assets is misplaced, first because this interrogatory does not expressly request financial information. Second, even if these interrogatories did request financial information, such information is discoverable because this is a fraudulent transfer case in which the "finances or assets" of the Defendants are necessarily involved. *Investment Properties Co., Inc. v. Watson*, 278 Ga. App. 81, 85 (2006) ("The general rule [is] that evidence of wealth or worldly circumstances of a party litigant is never admissible, <u>except in those cases where position or wealth is necessarily involved</u>.") (emphasis added). *See also Daniel v. Smith*, 266 Ga. App. 637, 642, 597 S.E.2d 432, 438-39 (2004) (affirming trial court's allowance of testimony that plaintiff did not complete physical therapy because treatment was too expensive); *Kolb v. Holmes*, 207 Ga.

App. 184, 185, 427 S.E.2d 562, 563-64 (1993) (holding that evidence of wealth was relevant to show the unreasonableness of an alleged promise to pay).  For these reasons, Alliant respectfully requests that this Court compel Marilyn to amend these responses.

6. **Interrogatory No. 12**: Identify all assets transferred to you as a result of the Divorce and pursuant to the Property Settlement Agreement and for each asset identified, state whether that asset was the separate property of Vincent Murphy or a marital asset and state the current estimated value of that asset. If you identify any shares of stock, outline in detail the type and number of shares received and current estimated value.

**Response**: By her divorce, Defendant received her distribution of a marital estate that had accumulated for over 30 years, and no "transfer" in the sense Plaintiff seems to suggest.

**Amended Response**: By her divorce, Defendant received her distribution of a marital estate that had accumulated for over 30 years, and no "transfer" in the sense Plaintiff seems to suggest. Defendant did receive, as part of her distribution, two pieces of real estate: the marital residence at 410 Society Street, Alpharetta, GA 30022, and a cabin at 346 Ridge Circle, Blue Ridge, Georgia 30513. These deed transfers were recorded. Distribution of personal property has been kept private.

Marilyn's refusal to identify the personal property transferred to her by Vince pursuant to the divorce is not only improper, it is egregious. In its Complaint, Alliant contends that Vince's divorce from Marilyn was a sham and that the assets transferred to Marilyn as a result of the divorce were transferred with the intent to hinder and delay Alliant. (*Id.* at ¶¶ 46-50.) Alliant is entitled to

obtain discovery regarding any non-privileged matter that is relevant to this claim. *See* Fed. R. Civ. P. 26(b). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* "Rule 401 of the Federal Rules of Evidence broadly defines relevant evidence as that evidence having 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Arnold v. Rayonier, Inc.*, 181 F.R.D. 549, 554 (S.D. Ga. 1998) (quoting Fed. R. Evid. 401).

The full and complete copy of the Divorce Agreement would specifically identify the assets transferred and may also serve as evidence of the value of the assets transferred. While Alliant alleges in its Complaint that certain assets were transferred, the Divorce Agreement may identify other assets transferred by Vince to Marilyn of which Alliant is not presently aware. Such information is relevant and, therefore, discoverable. Marilyn's failure to state a basis for withholding the full and complete Divorce Agreement, other than to say that it has "been kept private," illustrates the egregiousness of her refusal to produce a full and complete copy of this document.

**C.    The Requests for Production at Issue**.

In response to Alliant's First RFPs, Marilyn has produced 188 pages of documents consisting almost entirely of communications between counsel in this matter. Marilyn has produced no communications between her and the other Defendants during the time period at issue. While it is difficult to believe that no such communications exist, Alliant limits this motion to seeking an order compelling documents responsive to Alliant's First RFPs 6, 23, 28. As with its First Rogs, Alliant addresses each of these below by (1) quoting verbatim the RFP at issue, the response and (if applicable) the amended response; and then (2) identifying the deficiencies of the response at issue and stating the basis for Alliant's belief that the information requested is discoverable:

1.    **Request to Produce No. 6**: A copy of the Property Settlement Agreement.

**Response:** Defendant objects to this discovery request on the grounds that the information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant specifically objects to inquiries about her net worth and value of assets at time of divorce from Vincent Murphy and since, for at least three reasons: (1) Net worth and asset information in general is not discoverable on a prejudgment basis. (2) Plaintiffs made very specific allegations in their complaint about the value of marital property distributed to Marilyn Murphy through the process of divorce, and any changes in the value or nature of her holdings since then come within the scope of this objection. (3) If Plaintiffs' allegations about the dollar value of Marilyn Murphy's portion of the marital estate are correct, there is no need for verification; if these allegations are

14

incorrect, the difference between the values projected by Plaintiff and what property Defendant actually received are insignificant as Defendant is either liable to Plaintiff, or not, without regard to how much money and property Defendant received as a result of divorce, or gained or lost since. Without waiving this objection, a redacted copy of the Property Settlement Agreement is being forwarded to all other parties contemporaneously herewith.

**Amended Response**: (same)

2.     **Request to Produce No. 23**: Your federal and state tax returns from 2005 to present, including any tax returns filed jointly with Vincent Murphy.

**Response:** Defendant objects to this discovery request on the grounds that the information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant specifically objects to inquiries about her net worth and value of assets at time of divorce from Vincent Murphy and since, for at least three reasons: (1) Net worth and asset information in general is not discoverable on a prejudgment basis. (2) Plaintiffs made very specific allegations in their complaint about the value of marital property distributed to Marilyn Murphy through the process of divorce, and any changes in the value or nature of her holdings since then come within the scope of this objection. (3) If Plaintiffs' allegations about the dollar value of Marilyn Murphy's portion of the marital estate are correct, there is no need for verification; if these allegations are incorrect, the difference between the values projected by Plaintiff and what property Defendant actually received are insignificant as Defendant is either liable to Plaintiff, or not, without regard to how much money and property Defendant received as a result of divorce, or gained or lost since. Without waiving this objection, a redacted copy of the Property Settlement Agreement is being forwarded to all other parties contemporaneously herewith.

**Amended Response**: (same)

**3.**     **Request to Produce No. 28**: Any and all financial affidavits given by you or any other document reflecting your assets and the value of those assets subsequent to the Divorce, including but not limited to any applications made to a lending institution for a revolving line of credit or otherwise, subsequent to the Divorce.

**Response:** Defendant objects to this discovery request on the grounds that the information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant specifically objects to inquiries about her net worth and value of assets at time of divorce from Vincent Murphy and since, for at least three reasons: (1) Net worth and asset information in general is not discoverable on a prejudgment basis. (2) Plaintiffs made very specific allegations in their complaint about the value of marital property distributed to Marilyn Murphy through the process of divorce, and any changes in the value or nature of her holdings since then come within the scope of this objection. (3) If Plaintiffs' allegations about the dollar value of Marilyn Murphy's portion of the marital estate are correct, there is no need for verification; if these allegations are incorrect, the difference between the values projected by Plaintiff and what property Defendant actually received are insignificant as Defendant is either liable to Plaintiff, or not, without regard to how much money and property Defendant received as a result of divorce, or gained or lost since. Without waiving this objection, a redacted copy of the Property Settlement Agreement is being forwarded to all other parties contemporaneously herewith.

**Amended Response**: (same)

Marilyn first objects to the above-outlined requests on the basis that they are not relevant or reasonably calculated to lead to the discovery of admissible evidence. This objection is improper. Alliant contends that Vince fraudulently transferred his interest in his and Marilyn's marital residence to Marilyn, (Pls.'

Compl. ¶¶ 42-45), and that Vince's divorce from Marilyn was a sham employed to transfer certain assets to Marilyn with the intent to hinder and delay Alliant, (*id.* at ¶¶ 46-50). Alliant is entitled to obtain discovery regarding any non-privileged matter that is relevant to these claims. *See* Fed. R. Civ. P. 26(b). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* "Rule 401 of the Federal Rules of Evidence broadly defines relevant evidence as that evidence having 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Arnold v. Rayonier, Inc.*, 181 F.R.D. 549, 554 (S.D. Ga. 1998) (quoting Fed. R. Evid. 401).

Each of the above-outlined RFPs requests financial documents that may: (1) serve as direct evidence to establish that the transfers complained of took place; (2) serve as direct evidence of the value of the assets and/or business interests transferred by Vince and, thus, of the damages suffered by Alliant; (3) provide a full financial and asset picture of Marilyn, including the income derived by business interests and property transferred to her by Vince, again evidencing the damages suffered by Alliant; and (4) lead to the discovery of other assets that Vince may have transferred to Marilyn. The information and documents requested

are at the core of this case because they go directly to Alliant's damages and to several of the badges of fraud listed in O.C.G.A. § 18-2-74(b). Accordingly, these requests are relevant and reasonably calculated to lead to the discovery of admissible evidence.

Marilyn objects to RFPs 6, 23 and 28 on the basis that evidence of a litigant's wealth or worldly circumstances is inadmissible. But this objection is inapplicable to this case. *See Investment Properties Co., Inc. v. Watson*, 278 Ga. App. 81, 85 (2006) ("The general rule [is] that evidence of wealth or worldly circumstances of a party litigant is never admissible, <u>except in those cases where position or wealth is necessarily involved</u>.") (emphasis added). *See also Daniel v. Smith*, 266 Ga. App. 637, 642, 597 S.E.2d 432, 438-39 (2004) (affirming trial court's allowance of testimony that plaintiff did not complete physical therapy because treatment was too expensive); *Kolb v. Holmes*, 207 Ga. App. 184, 185, 427 S.E.2d 562, 563-64 (1993) (holding that evidence of wealth was relevant to show the unreasonableness of an alleged promise to pay). This is a fraudulent transfer case, the core  of which involves the assets transferred among and currently owned by – or in other words the worldly circumstances of – the Defendants and the value of those assets. This case is not a slip-and-fall case in which the assets of the parties are not at issue until a judgment has been rendered.

Accordingly, evidence establishing that the transfers complained of by Alliant (or other transfers) took place, the amount by which Alliant has been damaged as a result of these transfers, and evidence that would establish the so-called "badges of fraud" could not be more "necessarily involved." Marilyn's objection is misplaced.

Marilyn further objects to these requests on the basis that "[Alliant] made very specific allegations in [its] complaint about the value of property distributed" and that "any changes in the value or nature of her holdings since then, come within the scope of this objection." While it is difficult to comprehend what is meant by this objection, documents evidencing the value of the assets that are the subject of Alliant's claims are, again, entirely discoverable because they serve as proof of the nature and amount of the money damages to which Alliant may be entitled against Marilyn as a fraudulent transferee.

Finally, Marilyn objects RFPs 6, 23 and 28, stating that "if [Alliant's] allegations about the dollar value of Ms. Murphy's portion of the marital estate are correct, there is no need for verification." This objection is absurd. Alliant is entitled to the production of documents that support or that may support its allegations in this matter. If this objection were valid, the discovery process would not exist and trials would proceed solely upon the allegations set forth in the litigants' pleadings. For all of the reasons set forth above, Alliant respectfully

requests that this Court compel Marilyn to produce the documents requested by the above-listed requests.

**D.     Alliant is entitled to the fees incurred in filing this motion and in attempting to obtain the discovery requested**.

The Court should award Alliant its attorneys' fees and expenses incurred in attempting to obtain responsive answers and documents and in filing this Motion. Rule 37(a)(5) of the Federal Rules of Civil Procedure provides:

> If the motion [to compel] is granted or if the disclosure or requested discovery is provided after the motion was filed, the court <u>shall</u>, after affording and opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(4)(A) (emphasis added). *See also Equal Employment Opportunity Commission v. Klockner H & K Machines, Inc.*, 168 F.R.D. 233, 236 (E.D. Wisc. 1996) (losing party was not substantially justified in its refusal to produce requested information and was required to pay the movant's expenses, including attorneys' fees). "A reading of the rule leads to the inescapable conclusion that the award of expenses is mandatory against a party whose conduct necessitated a motion to compel discovery. . . unless the court finds the opposition to the motion was substantially justified. . . .'" *Cal Dive International, Inc. v. M/V*

*Tzimin*, 127 F.R.D. 213, 217 (S.D. Ala. 1989) (quoting *Merit v. International Board of Boiler Makers*, 649 F.2d 1013, 1019 (5th Cir. 1981)).  The circumstances of a particular case dictate whether a motion to compel is "substantially justified." *Transcontinental Fertilizer Co. v. Samsung Co, Ltd.*, 108 F.R.D. 650, 653 (E.D. Pa. 1985).

With these principles in mind, this Court should require Marilyn to reimburse Alliant for its attorneys' fees and expenses incurred in preparing this motion.  Marilyn's refusal to produce the financial information and documents at issue is not substantially justified. In fact, the opposite is true; Marilyn's continued refusal to produce information and documents relative to the very assets that are involved in this litigation, including a full and complete copy of the Divorce Agreement, is clearly unjustified because information and documents relative to these assets is necessarily involved in this litigation. To contend that information related to the nature and value of the assets at issue in a fraudulent transfer case is not discoverable until post-judgment is disingenuous at best. In support of an award, Alliant will submit a declaration outlining its attorney's fees and expenses incurred to file this motion within ten days after the date of the Court's order granting this motion to compel.

## IV.   CONCLUSION

For the foregoing reasons, Alliant respectfully requests that this Court compel Marilyn to provide responsive answers to the interrogatories outlined above and to provide the documents requested.

Respectfully submitted this 7th day of February, 2012.

**PARKER, HUDSON, RAINER & DOBBS LLP**

By:   */s/ V. Justin Arpey*
David B. Darden
Georgia Bar No. 250341
V. Justin Arpey
Georgia Bar No. 023753

1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303
(404) 523-5300 (telephone)
(404) 522-8409 (facsimile)
ddarden@phrd.com
jarpey@phrd.com

*Attorneys for Plaintiffs, Alliant Tax Credit Fund 31-A, Ltd., Alliant Tax Credit 31, Inc., Alliant Tax Credit Fund XXVII, Ltd., Alliant Tax Credit Fund XXVII, Inc., Alliant Tax Credit Fund XI, Inc., and Alliant Tax Credit XI, Ltd.*

## CERTIFICATE OF GOOD FAITH EFFORTS

Pursuant to Federal Rules of Civil Procedure 37(a)(1), Local Rule 37.1, and Rule 11 of the Guidelines for Discovery and Motion Practice Upon Referral to the Magistrate Judge, the undersigned counsel hereby certifies that counsel for the Alliant sent to counsel for Marilyn Murphy the correspondence attached hereto as Exhibit C in a good faith effort to confer regarding the discovery matters at issue in this motion. Counsel for Alliant also made a good faith attempt to confer with counsel for Marilyn Murphy in person regarding these discovery matters but counsel for Ms. Murphy refused, as illustrated by the e-mail exchange attached hereto as Exhibit F. Although the parties minimally narrowed their discovery-related issues, they did not resolve the issues raised in the this motion to compel. Accordingly, Alliant files this motion to compel.

*/s/ V. Justin Arpey*
V. Justin Arpey

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with LR 7.1D, N.D. Ga., I certify that the foregoing **BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM DEFENDANT MARILYN MURPHY** has been prepared in conformity with LR 5.1, N.D. Ga. This memorandum was prepared with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch. This memorandum is proportionately spaced, and is no longer than 25 pages.

*/s/ V. Justin Arpey*
V. Justin Arpey

I hereby certify that I have this day served a copy of the within and foregoing **BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM DEFENDANT MARILYN MURPHY** with the Clerk of Court using the CM/ECF system which automatically sent e-mail notification of such filing to the all attorneys of record, each of whom is a registered participant in the Court's electronic notice and filing system:

Michael A. Dunn
Sedki & Dunn, LLC
3399 Peachtree Road
Lenox Building
Suite 2100
Atlanta, GA  30326
mdunn@sedkidunn.com

Stanley Kreimer
Johnson & Ward
2100 The Equitable Building
100 Peachtree St., N.W.
Atlanta, GA  30303
stan@johnsonward.com

Shawn M. Winterich
The  Winterich  Law  Firm,
LLC
P.O. Box 29713
Atlanta, GA  30359-0713
swinterich@winterichlaw.com

This 7th day of February, 2012.

*/s/ V. Justin Arpey*
V. Justin Arpey

2270528_1