**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ALLIANT TAX CREDIT FUND 31-A, LTD., *et al.*, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:11-CV-832-RWS |
| | : | |
| M. VINCENT MURPHY, *et al.*, | : | |
| Defendants. | : | |
| | : | |
| | : | |

## ORDER

This case comes before the Court on Plaintiffs' Motion to Dismiss

Marilyn Murphy's Counterclaim [62], Defendant Marilyn Murphy's Second

Motion to Dismiss Counts I and II [72], Plaintiffs' Motion to Compel Discovery

from Gazebo Park Apartments of Acworth, LLC [76], Plaintiffs' Motion to

Compel Discovery from Marilyn Murphy [77], Plaintiffs' Motion to Compel

Discovery from Defendant M. Vincent Murphy [79], and Counsel Michael

Dunn's Motions to Withdraw as Attorney for Patrick Carroll and ARMI [89,

90]. After a review of the record, the Court enters the following order.

## I.  Brief Factual Summary

Several entities under the umbrella name Alliant Tax Credit Fund ("Alliant" or "Plaintiffs") conduct business in Florida. Dkt. No. [1] at ¶¶ 6–11. From 2003 through 2005, Alliant entered into six partnership agreements ("Partnerships") with, *inter alios*, Defendant M. Vincent Murphy, III ("Mr. Murphy" or "Judgment Debtor") to "acquire, develop, construct, own, and operate apartments as tax credit qualifying low income housing" for senior citizens in Kentucky. Id. at ¶¶ 1, 22–24. As a condition for its entry into the Partnerships and to secure its investment, Alliant required Mr. Murphy to enter into personal guaranty agreements on each of the Partnerships. Id. at ¶ 25. From 2004 through 2006, Mr. Murphy provided Alliant certified financial information that showed his net worth to be in excess of $25 million, and Alliant relied on this information to make decisions regarding its investment. Id. at ¶¶ 35–38.

Five projects were completed in September 2005 and subsequently managed by Defendant Community Management Services, Inc. ("CMS"), a Georgia corporation wholly-owned by Mr. Murphy. Id. at ¶¶ 15, 26–27. One project, however, remained uncompleted after Mr. Murphy sought and was

denied loan modifications. Id. at ¶¶ 26, 28. Beginning in 2007, Judgment

Debtor refused to pay interest and other expenses on all Partnership loans, and

he advised his lender that he would not honor his personal guarantees and that

he no longer possessed the previously disclosed guarantee assets. Id. at ¶¶ 29,

31. Because the loans were in default, Alliant then sued Mr. Murphy, *inter*

*alios*, on November 20, 2007, in the United States District Court for the Eastern

District of Kentucky, where he was found jointly and severally liable for

$8,946,643 ("Judgment") on March 22, 2010. Id. at ¶¶ 19, 34. The Judgment

was registered in the Northern District of Georgia on November 12, 2010. Id. at

¶ 20.

By the time of the Judgment, however, Alliant says that "Judgment

Debtor's claimed net worth decreased from over $27 million in assets to

practically nothing, as a result of … fraudulent acts." Id. at ¶ 39. Generally,

Alliant alleges that "Judgment Debtor, with the assistance of [his family] and

affiliates, liquidated and divested his assets in such a way so as to allow [Mr.

Murphy] to maintain continued direct control … and enjoyment of the assets at

his discretion, while permitting him to disclaim … ownership in the assets and

avoid auditors." Id. at ¶ 41. Plaintiffs go on to specifically allege several fraudulent acts.

Relevant to this order, Plaintiffs first allege that Mr. Murphy transferred his interest in his marital residence at 410 Society Street, Alpharetta, Georgia to his then-wife Defendant Marilyn Murphy ("Ms. Murphy") on March 23, 2007, despite Ms. Murphy giving no consideration in return. Id. at ¶¶ 42–44. Alliant claims, upon information and belief, that Mr. Murphy still lives at the marital residence although Mr. Murphy and Ms. Murphy divorced in late 2007. Id. at ¶¶ 45–46.

Second, Plaintiffs allege that Mr. Murphy and Ms. Murphy's divorce "was a sham" because Defendants continue to jointly operate businesses, share property, and reside at the same residence. Id. at ¶ 50. The Property Settlement Agreement executed in connection with the divorce transferred Mr. Murphy's interest in, *inter alia*, furniture, stock, and other real property. Id. at ¶¶ 47–48. Alliant claims these ownership transfers were made without consideration. Id. at ¶ 49.

Third, Plaintiffs allege that Mr. Murphy tried to hide assets via a fraudulent transfer through Park Bridge Acworth LLC ("Park Bridge"), which

AO 72A
(Rev.8/82)

was 99.9% owned by Mr. Murphy and consisted of a large apartment complex ("Apartment Complex") worth an estimated $8,760,000. Id. at ¶ 51. CMS served as Park Bridge's property manager. Id. at ¶¶ 15, 51. After Mr. Murphy defaulted on his obligations to Alliant, he filed an application of incorporation for Defendant Gazebo Park Apartments of Acworth, LLC ("Gazebo Park"), which was formally incorporated on March 9, 2007. Id. at ¶¶ 52–53. Ms. Murphy became Gazebo Park's managing member. Id. at ¶ 53. On April 30, 2007, Mr. Murphy effectuated a transfer of the Apartment Complex from Park Bridge to Gazebo Park, which removed his ownership interest in the Apartment Complex although he continued to act as the Apartment Complex's agent. Id. at ¶¶ 15, 51, 55. In 2009 "the Judgment Debtor replaced himself and listed [ARM] as Gazebo Park's registered agent, which also shared the same address as CMS, Park Bridge, and Gazebo Park." Id. at ¶ 56. Alliant claims Mr. Murphy "has continued to exercise an unbroken chain of control over" the Apartment Complex despite these transfers. Id. at ¶ 57.

On March 17, 2011, Plaintiffs sued Defendants in federal court, alleging civil conspiracy and multiple violations of the Georgia Uniform Fraudulent Transfers Act ("UFTA"), O.C.G.A. § 18-2-70 et seq. Id. at ¶¶ 74–168. Each

5

Defendant filed a motion to dismiss. Dkt. Nos. [3], [10], [12], [17], [23], [25], and [26]. Mr. Murphy and CMS each filed a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), Dkt. Nos. [4, 13], and Plaintiffs filed two motions to strike ARM and Carroll's replies in support of the Defendants' motions to dismiss. Dkt. Nos. [35–36].

Prior to the Court ruling on those motions, Plaintiffs and Ms. Murphy joined in a motion for a consent order which was entered by this Court. Dkt. No. [52]. The order specified that Plaintiffs would remove the *lis pendens* it had placed on the marital residence so that Ms. Murphy could effectuate its sale. <u>Id.</u> It was additionally agreed that the entire proceeds from that sale would be placed in Ms. Murphy's attorney's IOLTA account "until such time as the claims raised by Plaintiffs against Marilyn Murphy in the above-captioned matter are resolved and upon an Order of this Court providing instructions for disbursement of the Net Sale Proceeds." <u>Id.</u> at 2.

Eleven days later, the Court denied the Defendants' Motions for More Definite Statements and Motions to Dismiss, except for ordering that the civil conspiracy–inasmuch as it was raised as a separate cause of action–would be dismissed. Dkt. No. [53]. Defendant Marilyn Murphy then filed her answer,

bringing a claim for declaratory judgment. Dkt. No. [56] at 34. Specifically, Ms. Murphy requests that the Court declare and adjudge that 1) Plaintiffs' *lis pendens* on the marital residence was improper, 2) Plaintiffs improperly attempted to thwart the martial residence sale, 3) Plaintiffs' refusal to only encumber half of the marital residence constitutes unclean hands, and 4) that Ms. Murphy is entitled to money damages. Id. at 35-36. The Plaintiffs have now moved to dismiss Ms. Murphy's counterclaim. Dkt. No. [62].

In a second attempt to dismiss claims against her, Ms. Murphy has also filed a Motion to Dismiss for lack of subject matter jurisdiction as to Counts I-II. Dkt. No. [62]. This motion requests that the Court rule either: 1) that only the Superior Court of Georgia is the proper venue to challenge the legality of a divorce decree, 2) that the domestic relations exception to federal jurisdiction applies here, or 3) that it should abstain under the Burford abstention doctrine. Dkt. No. [72].

Additionally, the Plaintiffs have moved to compel discovery from three of the Defendants. Dkts. No. [76, 77, 79]. And counsel to Patrick Carroll and ARMI has moved to withdraw as counsel for these Defendants [89, 90]. The Court will consider each motion in turn.

7

## II. Ms. Murphy's Judgment on the Pleadings

Ms. Murphy moves this Court to dismiss Counts I and II for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3). However, Rule 12(b) states that a Rule 12(b)(1) motion must be filed "before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b).  And, Ms. Murphy has already filed a previous motion to dismiss and an answer.  Therefore, under Rule 12(b), Ms. Murphy's  motion is untimely. See FED. R. CIV. P. 12(b).

However, while the motion may be untimely as a motion to dismiss, the defense raised is an appropriate one for a judgment on the pleadings. See FED. R. CIV. P. 12(c), (h)(3); Skrtich v. Thornton, 280 F.3d 1295, 1307 n.13 (11th Cir. 2002)  (noting that "a motion [to dismiss] *may* be construed as a request for judgment on the pleadings pursuant to [Rule] 12(c)") (emphasis in original); see also Dorsey v. Georgia Dept. of State Road and Tollway Authority SRTA, No. 1:09-CV-1182-TWT, 2009 WL 2477565, *3 (N.D. Ga. Aug. 10, 2009) ("courts routinely construe a Rule 12(b)(1) or Rule 12(b)(6) motion filed after the close of pleadings as a Rule 12(c) motion for judgment on the pleadings."). Therefore, the Court construes Ms. Murphy's  motion as a motion for judgment on the pleadings.

While the Court will operate under Rule 12(c), the Rule 12(b)(1) standards apply to this construed 12(c) motion.  See Dorsey, 2009 WL 2477565, at *3 n.1 (citing Wright & Miller, 5C FED. PRACT. & PROC. § 1367). Rule 12(b)(1) attacks on subject matter jurisdiction can come in two forms. "Facial attacks" require the court to evaluate the complaint to see whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction; the allegations are taken as true for purposes of the motion. Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A., 104 F.3d 1256, 1261 (11th Cir. 1997); Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir.1990). "Factual attacks" challenge subject matter jurisdiction in fact, irrespective of the pleadings. Garcia, 104 F.3d at 1261.

Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Id. (quoting Lawrence, 919 F.2d at 1529). While Ms. Murphy expressly

states that her challenge is only a facial one, Dkt. No. [72] at 2, she has attached

various documents in support of her motion. Thus, the Court will construe her

actions as an intent to pursue a factual challenge.

### A.  Challenge to the Legitimacy of her Divorce Decree[1]

First, Ms. Murphy argues that only the Superior Court of Georgia may

determine the legitimacy of its own decree. Dkt. No. [72] at 5. In support of this

proposition, Ms. Murphy cites to Akin v. PAFEC, Ltd., 991 F.2d 1550, 1558

(11th Cir. 1993). In Akin, the plaintiffs were minority shareholders in PEC, a

corporation who paid royalties to the majority shareholder, PAFEC. When the

plaintiffs became an annoyance, PAFEC decided that they would call in PEC's

outstanding royalties owed, extinguish PEC's assets to pay the debt, and then

transfer PEC's sales operation to a new company without the plaintiffs'

involvement. In order to effectuate this action, PAFEC filed suit against PEC in

Georgia state court, and a default judgment against PEC was entered. The

plaintiffs were never given notice of the suit until final judgment was entered

---

[1]Inasmuch as Ms. Murphy argues in her Reply Brief that Plaintiffs did not respond to this argument, the Court finds that the Plaintiffs did not leave this argument unopposed as they discuss that their action is not a collateral attack in Part III(D) of their opposition. See Pl.s' Resp., Dkt. No. [78] at 14-15 (specifically referring to page five of Ms. Murphy's brief which discusses Akin).

10

against PEC. The plaintiffs then filed a lawsuit in federal court, asserting, *inter alia*, claims for fraud, civil conspiracy, and unjust enrichment. The district court granted summary judgment for defendants on two grounds: that the claims were barred by *res judicata*, and that the claims failed to state a claim upon which relief could be granted as the court construed plaintiffs' action as a collateral attack on the underlying judgment.

The Eleventh Circuit affirmed the district court on the second ground–that plaintiffs' tort claims did not state a claim for relief as the exclusive method of attacking the prior Georgia state court judgment was by motion in the state court for equitable relief pursuant to O.C.G.A. § 9-11-60. The Circuit noted that "Georgia law provides various forms of relief which can be pursued by one who believes that a judgment has been wrongly entered. However, a cause of action for damages based upon the fraudulent securing of the judgment is not among them." Id. Thus, the rationale for the Circuit's decision was that plaintiffs were attempting to use a civil conspiracy and unjust enrichment vehicle to collaterally attack the underlying judgment–an action which is not authorized under Georgia law.

11

Here, the Court first notes that Ms. Murphy's challenge does not appear to be an appropriate 12(b)(1) challenge. The Eleventh Circuit in <u>Akin</u> ruled that–at summary judgment–plaintiffs failed to state a claim, not that the district court did not have subject matter jurisdiction to hear the matter. Second, Plaintiffs are not seeking this Court to invalidate or otherwise attack the Superior Court's divorce decree. Dkt. No. [78] at 14; <u>Whitney Nat'l Bank v. Air Ambulance by B&C Flight Mgmt., Inc.</u>, No. H-04-2220, 2006 WL 3782857, at *4-5 (S.D. Tex. Dec. 19, 2006) (finding that calling the defendants' divorce a "sham" and seeking to "avoid" transactions made pursuant to that divorce under the Texas' UFTA was not a request to set aside or declare invalid the divorce decree). Rather, Plaintiffs are seeking money damages under the UFTA for fraudulent transfers, an action expressly authorized by statute. <u>See</u> O.C.G.A. § 18-2-70, *et seq.* Whether the Murphys remain divorced is of no concern to Plaintiffs–they simply want damages for transfers that they allege were made to shield them from Mr. Murphy's assets.

**B. Domestic Relations Exception**

Ms. Murphy next argues that Plaintiffs' Counts I-II are barred by the domestic relations exception to federal subject matter jurisdiction. In response,

12

Plaintiffs argue that they do not seek issuance of a divorce decree and only seek money damages for fraudulent conveyances; therefore, subject matter jurisdiction is proper.

In Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992), the Supreme Court concluded "that the domestic relations exception, as articulated by [that] court since Barber, divests federal courts of power to issue divorce, alimony, and child custody decrees." But the Court found that this is a limited exception, and ultimately held that the plaintiff's claim against her ex-husband and his girlfriend for committing torts against her minor children was not barred by the doctrine as the plaintiff did not seek the issuance of a domestic decree. Id. at 703-704.

Similarly, the Court does not find that Plaintiffs' claims seek the issuance of a divorce decree here. In so doing, the Court finds Whitney, 2006 WL 3782857 at *3-4 persuasive. In Whitney, a creditor sued a debtor and his former spouse under the Texas UFTA for fraudulent transfers which were made pursuant to a divorce decree. The creditor plead that the defendants' divorce was a "sham" and sought to "avoid" the fraudulent transfers. Like here, the defendants moved to dismiss the action under the domestic relations exception.

13

After reviewing <u>Ankenbrandt</u>**,** the Southern District of Texas found that the

domestic relations exception did not apply to that case. The court found:

> The fraudulent transfer claim is not part of an ongoing series of
> disputes about the marital relationship. Nor is the third-party tort
> so intertwined with the validity of the divorce decree that it cannot
> be separated. The fact that the challenged transfers may have been
> included in a divorce decree does not preclude federal
> subject-matter jurisdiction over the claim that as to a third-party
> creditor, the transfers were fraudulent. When the focus is on the
> nature of the asserted claims, as required, it is clear that such
> claims are based not on the defendants' former marital status, but
> instead on [the creditor's] interests under Texas law as a creditor,
> [the husband's] status under Texas law as a debtor, and [the ex-
> wife's] status as a transferee. [The creditor's] claims do not trigger
> application of the domestic relations exception because they are
> based on Texas fraudulent conveyance law and do not seek
> issuance or modification of a divorce or alimony decree. The fact
> that [the husband] and [his ex-wife] allegedly used a state-issued
> divorce decree to effect the challenged conveyances does not
> remove this case from federal diversity jurisdiction; it is not the
> origin of the parties' interests and duties that matters for
> jurisdictional purposes but the nature of the claims. [The
> creditor's] claims are based on the Texas Uniform Fraudulent
> Transfer Act and do not seek the issuance or modification of a
> divorce or alimony decree, a determination of entitlement to
> custody, or any other adjustment of family status.

<u>Id.</u> at *5.

Here, the Court finds that Plaintiffs do not seek the issuance of a divorce

decree. Rather, Plaintiffs seek to recover under the UFTA for fraudulent

transfers. Therefore, the Court holds that the domestic relations exception to subject matter jurisdiction does not apply.[2]

### C. __Burford__ Abstention

Last, Ms. Murphy asks this Court to abstain under Burford v. Sun Oil Co., 319 U.S. 315 (1943). However, as the Supreme Court noted in Ankenbrandt, while Burford might apply when a federal suit was filed before a divorce decree and the federal suit depended on the divorce's resolution, it is not appropriate "[w]here, as here, the status of the domestic relationship has been determined as a matter of state law, and in any event has no bearing on the underlying torts alleged." 504 U.S. at 706. Here, there are not "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Id. at 705. Thus, the Court declines

---

[2]Additionally, the Court notes that at least one circuit has expressly held, based on the reasoning in Ankenbrandt, that the domestic relations exception only applies to cases brought in diversity and does not apply to § 1331 actions, even when both diversity and "arising under" jurisdiction are plead together. Atwood v. Fort Peck Tribal Court Assiniboine, 513 F.3d 943, 947 (9th Cir. 2008); see Marshall v. Marshall, 547 U.S. 293, 307-08 (2006) (affirming that the Supreme Court in Ankenbrandt recognized the domestic relations exception as a statutory exception based upon the diversity statute's wording). Thus, the Court notes that this is another reason why the domestic relations exception would not be proper in this case as Plaintiffs have also brought this action under § 1331, as they are attempting to enforce another district court's judgment.

to abstain under <u>Burford</u>,and Ms. Murphy's Motion for Judgment on the

Pleadings [72] is **DENIED**.

### III.  Plaintiffs' Motion to Dismiss Ms. Murphy's Counterclaim

Plaintiffs next move to dismiss Ms. Murphy's counterclaim which seeks a

declaratory judgment that 1) Plaintiffs' *lis pendens* on the marital residence was

improper, 2) Plaintiffs improperly attempted to thwart the martial residence

sale, 3) Plaintiffs' refusal to only encumber half of the marital residence

constitutes unclean hands, and 4) that Ms. Murphy is entitled to money

damages. Dkt. No. [56] at 35-36. Plaintiffs have alleged, *inter alia*, that Ms.

Murphy fails to state a declaratory judgment claim as the rights of the parties

have already accrued in this matter, the claim is moot as the *lis pendens* has

already been removed from the property, and the legal issues which would need

to be resolved–whether Ms. Murphy is entitled to one-half of the sales

proceeds–are already set to be resolved in the primary claims. Pls.' Br., Dkt.

No. [62-1] at 13-16.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to

relief."  While this pleading standard does not require "detailed factual

allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  <u>Id.</u>

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint.  <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing <u>Iqbal</u>, 129 S. Ct. at 1949).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949.  The court does not need to "accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

The Court finds that Ms. Murphy has failed to state a proper declaratory judgment claim. The Court notes that Ms. Murphy did not substantively respond to Plaintiffs' arguments that a declaratory judgment is an improper vehicle for Ms. Murphy's claims or that the declaratory judgment is moot–citing no law to support her argument to the contrary. See Def.'s Opp., Dkt. No. [63]. Thus, this argument is deemed unopposed. LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").

However, the Court notes that even if Ms. Murphy had responded to this argument, the Court would still hold that her claim is improper. The *lis pendens* has been removed, Ms. Murphy consented to her funds being placed in her counsel's IOLTA account until this matter has been resolved, and Ms. Murphy faces no uncertainty about any future conduct which would not be resolved by the primary claims–i.e., who is entitled to her funds. See Morgan v. Guaranty Nat'l Cos., 489 S.E.2d 803, 805 (Ga. 1997) ("where the rights of the parties have already accrued and there are no circumstances showing any necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which

18

is properly incident to his alleged rights and which if taken without direction

might reasonably jeopardize his interest, the plaintiff is not entitled to a

declaratory judgment. [Cit.] The declaratory judgment action makes no

provision for a judgment which is advisory.**");** <u>Fortson v. Kiser</u>, 373 S.E.2d

842, 842 (Ga. Ct. App. 1988) (""It is well established that '(w)here the

questions to be answered are legal ones determinable in another proceeding

then in progress between the same parties, in a court having jurisdiction to

determine them, the court will ordinarily refuse to entertain a declaratory

judgment proceeding.'"). Thus, Plaintiffs' Motion to Dismiss Ms. Murphy's

Counterclaim [62] is **GRANTED**.

**IV.  Motions to Compel**

    <u>A. Motion to Compel Ms. Murphy</u>

    Plaintiffs first move this Court to compel Ms. Murphy to produce

discovery which is responsive to Interrogatories Nos. 1, 3, 7, 8, 9, and 12 and

Request to Produce Nos. 6, 23, and 28. Additionally, the Plaintiffs request

attorneys' fees for the costs of filing the motion.

    As to Interrogatory No. 1, if there are no other witnesses that Ms. Murphy

would have testify in this matter outside of herself, her former husband, and

their counsel, then the Court finds that her response is sufficient. But if that is not what Ms. Murphy intends, and she does have additional witnesses who have knowledge as to the subject-matter of Plaintiffs' Complaint, then she is required to amend her response. If she does not amend, then the Court will hold Ms. Murphy to her interrogatory response and will limit her witness list accordingly.

As to the other Interrogatories and Requests for Production of Documents, the Court finds that these responses are insufficient, and the information requested–including Ms. Murphy's financial information and an unredacted copy of the divorce settlement agreement–is clearly relevant to whether fraudulent transfers occurred in this matter. If Ms. Murphy wishes to claim privilege regarding any of this information, she should follow the Federal Rules of Civil Procedure and produce a privilege log. Thus, Plaintiffs' Motion [77] is **GRANTED**.  Plaintiffs' counsel should file their statements of fees and costs within 10 days of this order for having to file this motion to compel. See FED. R. CIV. P. 37(a)(5) (stating that the Court <u>must</u> order attorneys' fees if a motion to compel is granted and the responsive party's objections were not substantially justified).

B. Motion to Compel Gazebo Park

Plaintiffs have also filed a motion to compel Defendant Gazebo Park to produce discovery responsive to Interrogatory Nos. 1, 8, 9, and 10 and Request to Produce Nos. 9, 10, 11, 12, 13, 14, 18, 19, 21, and 24. Plaintiffs have also asked for their attorneys' fees in filing this motion.

Like Ms. Murphy, if the only witnesses on Gazebo Park's behalf are the Murphys and their counsel, then its response to Interrogatory No. 1 is sufficient. If not, Gazebo Park is required to amend or it will be limited to those four witnesses.

As well, the Court finds that the remainder of the Interrogatories and the Requests for Production are relevant to Plaintiffs' UFTA claims, and that Gazebo Park's objections were unwarranted. Plaintiffs' Motion [76] is **GRANTED**. Plaintiffs' counsel should file their statements of fees and costs within 10 days of this order for having to file this motion to compel. See FED. R. CIV. P. 37(a)(5) (stating that the Court <u>must</u> order attorneys' fees if a motion to compel is granted and the responsive party's objections were not substantially justified).

AO 72A
(Rev.8/82)

C. Motion to Compel Mr. Murphy

Plaintiffs finally file a motion to compel Mr. Murphy to produce additional information as to Interrogatory Nos. 1, 6, and 10 and Request to Produce Nos. 2, 21, 22, and 35. The Court finds that all of these requests are relevant, and the Court does not find that they are unduly burdensome as the information is limited to the transfers alleged in the Complaint. And, Mr. Murphy's financial situation is the ultimate subject of this case, specifically his transfers of assets. Thus, Plaintiffs' Motion [79] is **GRANTED**. Plaintiffs' counsel should file their statements of fees and costs within 10 days of this order for having to file this motion to compel. See FED. R. CIV. P. 37(a)(5) (stating that the Court must order attorneys' fees if a motion to compel is granted and the responsive party's objections were not substantially justified).

**V.  Motions to Withdraw**

Counsel Micheal Anthony Dunn has moved to withdraw as counsel to Defendant Patrick Carroll and Defendant Affordable Realty Management Incorporated ("ARMI"). As Mr. Dunn has followed the local rules, and the Defendants have not objected, Mr. Dunn's Motions [89, 90] are **GRANTED**. ARMI is reminded that it must be represented by counsel in this matter. Thus,

ARMI must have new counsel enter an appearance on its behalf within 14 days of the entry of this Order.  Failure to comply will result in the striking of ARMI's Answer and entry of a default judgment against it.

## VI.  Conclusion

Based on the foregoing, Plaintiffs' Motion to Dismiss Marilyn Murphy's Counterclaim [62] is **GRANTED**, and Defendant Marilyn Murphy's Second Motion to Dismiss Counts I and II [72] is **DENIED**.  Plaintiffs' Motion to Compel Discovery from Gazebo Park Apartments of Acworth, LLC [76], Plaintiffs' Motion to Compel Discovery from Marilyn Murphy [77], and Plaintiffs' Motion to Compel Discovery from Defendant M. Vincent Murphy [79] are all **GRANTED**. Plaintiffs' Counsel should produce its statements of costs and fees as to the Motions to Compel within 10 days of this order. Finally, Counsel Michael Dunn's Motions to Withdraw as Attorney for Patrick Carroll and ARMI [89, 90] are **GRANTED**.

**SO ORDERED**, this   14th   day of March, 2012.

**RICHARD W. STORY**
United States District Judge

23